# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TRUTEK CORP.,

       Plaintiff,

v.                                                          Case No. 2:21-cv-10312

BLUEWILLOW BIOLOGICS, INC.;              Hon. Stephen J. Murphy, III
ROBIN ROE 1 through 10, gender           Mag. R. Steven Whalen
neutral fictitious names, and; ABC
CORPORATION 1 through 10 (fictitious
names).

       Defendants.

## COMPENDIUM OF UNPUBLISHED CASES

1. *CryoLife, Inc. v. C.R. Bard, Inc.*, No. 14-559-SLR, 2015 WL 1069397 (D. Del. Mar. 10, 2015)

2. *Elan Pharma Intern. Ltd. v. Lupin Ltd.*, No. 09-1008 (JAG), 2010 WL 1372316 (D.N.J. Mar. 31, 2010)

3. *Evolve Techs., LLC v. Coil Winding Specialist, Inc.*, Case No. 3:18-cv-00671 BEN-BGS, 2019 WL 1383272 (S.D. Cal. Mar. 27, 2019)

4. *Finalrod IP, LLC v. Endurance Lift Solutions, Inc.*, Case No. 2:20-cv-00189-JRG-RSP, 2020 WL 7222803 (E.D. Tex. Oct. 30, 2020)

5. *Hand Held Prods. v. Code Corp.*, No. 17-167-RMG, 2017 WL 2537235 (D.S.C. June 9, 2017)

6. *Roland Corp. v. inMusicBrands, Inc.*, No. 16-cv-06256-DBM-AJWx, 2017 WL 3473928 (C.D. Cal. Apr. 5, 2017)

7. *Teirstein v. AGA Med. Corp.*, No. 6:08cv14, 2009 WL 704138 (E.D. Tex. Mar. 16, 2009)

8. *Teva Pharm. Indus., Ltd. v. Apotex, Inc.,* No. 07-5514 (GEB)(JJH), 2008 WL 3413862 (D.N.J. Aug. 8, 2008)

Case 4:21-cv-10312-FKB-RSW ECF No. 12-2, PageID.136 Filed 06/25/21 Page 4 of 46

CryoLife, Inc. v. C.R. Bard, Inc., Not Reported in Fed. Supp. (2015)

2015 WL 1069397
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

CRYOLIFE, INC., Plaintiff,
v.
C.R. BARD, INC., Davol, Inc.
and Medafor, Inc., Defendants.

Civ. No. 14–559–SLR
|
Signed March 10, 2015

**Attorneys and Law Firms**

Mary W. Bourke, Esquire and Dana K. Severance, Esquire of Womble Carlyle Sandridge & Rice, LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: John W. Cox, Esquire and Chittam U. Thakore, Esquire of Womble Carlyle Sandridge & Rice, LLP.

Jack B. Blumenfeld, Esquire, Maryellen Noreika, Esquire, and Michael J. Flynn, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Steven Cherny, Esquire, Joseph A. Loy, Esquire, Steven T. Skelley, Esquire, Leslie M. Schmidt, Esquire, Amanda Hollis, Esquire, and Elizabeth A. Cutri, Esquire, Michael A. Pearson, Esquire, and John C. O'Quinn, Esquire of Kirkland & Ellis LLP.

### MEMORANDUM OPINION

Sue L. Robinson, District Judge

## I. INTRODUCTION

 **\*1** On April 28, 2014, plaintiff CryoLife, Inc. ("CryoLife") filed this declaratory judgment action against defendants C.R. Bard, Inc. ("Bard"), Davol, Inc. ("Davol"), and Medafor (collectively, "defendants") seeking a declaration that U.S. Patent No. 6,060,461 ("the '461 patent") is invalid and not infringed. (D.I. 1) On June 19, 2014, defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim (D.I. 10) and on June 26, 2014, CryoLife filed an amended complaint (D.I. 17). On August 25, 2014, Medafor filed a counterclaim for infringement. (D.I. 37) Presently before the court is defendants' motion to dismiss. [1] (D.I. 19) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

CryoLife is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Kennesaw, Georgia. (D.I. 17 at ¶¶ 1–2) Bard is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in Murray Hill, New Jersey. (*Id.* at ¶¶ 3–4) Davol is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Warwick, Rhode Island. Davol is a wholly-owned subsidiary of Bard. (*Id.* at ¶¶ 5–6) Medafor is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in Minneapolis, Minnesota. Medafor is a wholly owned subsidiary of Davol. (*Id.* at ¶ 7) The parties are each biomedical companies. (*Id.* at ¶¶ 1–7)

The '461 patent, titled "Topically Applied Clotting Material," was filed on February 8, 1999 and issued May 9, 2000. Representative independent claim 32 recites:

> A method for enhancing the formation of clots in a wound of an animal where blood is present, the method comprising the steps of: applying porous particles having average diameter dimensions of from about 0.5 to 1000 micrometers to at least a portion of said wound where blood is present in said wound; applying pressure to said porous particles in said wound; and allowing said porous particles to remain in contact with said blood in said wound while clotting initiates in said wound.

Medafor received FDA approval in 2006 for ARISTA® AH ("Arista"), an innovative hemostatic powder that is used to control bleeding when conventional methods are ineffective. (D.I. 22, ex. 2 at 1) In April 2014, CryoLife received FDA clearance to market PerClot Topical ("PerClot"), its powdered hemostat product for topical use. (D.I. 80 at ¶ 2) CryoLife is seeking FDA approval to market PerClot for surgical indications ("PerClot Surgical") and received FDA approval of its Investigational Drug Exemption application on March 27, 2014. (*Id.* at ¶ 3)

## III. SUBJECT MATTER JURISDICTION

### A. Standard

Not only may the lack of subject matter jurisdiction be raised at any time, it cannot be waived and the court is obliged to address the issue on its own motion. *See Moodie v. Fed. Reserve Bank of N.Y.,* 58 F.3d 879, 882 (2d Cir. 1995). Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.,* 227 F.3d 62, 69 (3d Cir. 2000). Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). *See* 2 James W. Moore, *Moore's Federal Practice* § 12.30[4] (3d ed. 1997). Under a facial challenge to jurisdiction, the court must accept as true the allegations contained in the complaint. *See id.* Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.' " *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir. 1991) (quoting *Bell v. Hood,* 327 U.S. 678, 682 (1946)).

**\*2** Under a factual attack, however, the court is not "confine[d] to allegations in the ... complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891–92 (3d Cir. 1977). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group,* 227 F.3d at 69 (quoting *Mortensen,* 549 F.2d at 891).

### B. Analysis

A "suit for infringement must ordinarily be brought by a party holding legal title to the patent." *Enzo APA & Son, Inc. v. Geapag A.G.,* 134 F.3d 1090, 1093 (Fed. Cir. 1998) (citing *Arachnid, Inc. v. Merit Indus., Inc.,* 939 F.2d 1574, 1578–79 (Fed. Cir. 1991). A court, therefore, lacks jurisdiction over a declaratory judgment action if the patent holder is not a defendant. *Enzo,* 134 F.3d at 1094. CryoLife does not dispute that Medafor is the assignee of record of the '461 patent. (D.I. 29 at 3) However, CryoLife avers that "[s]ince its acquisition by Bard and Davol in 2013, [Medafor's] commercial and

financial operations, including control over the manufacture, distribution, and sale of [Arista] have been subsumed by Bard and Davol...." (*Id.* at 3–4) According to CryoLife, this makes Davol the implied exclusive licensee of the '461 patent. (*Id.* at 7–8) Therefore, CryoLife insists that Bard and Davol are necessary parties to this action, to "ensure meaningful relief" and "are the real parties in interest in this action." (*Id.* at 1) Defendants have put into evidence the declaration of the Assistant General Counsel of Bard, stating that there are no exclusive licenses of the '461 patent and, more specifically, Bard and Davol are not assignees or exclusive licensees and do not have the right to sue for infringement of the '461 patent. (D.I. 22, ex. 1)

As explained by the Federal Circuit,

> [t]here are three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits: those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit. The first category includes plaintiffs that hold all legal rights to the patent as the patentee or assignee of all patent rights—the entire bundle of sticks.

*Morrow v. Microsoft Corp.,* 499 F.3d 1332, 1339 (Fed. Cir. 2007). In the case at bar, the question presented is whether Bard and Davol have standing and must remain in the action, even though Medafor, the assignee, is a defendant. [2] In analyzing whether a licensor or a licensee by itself has sufficient standing to bring an action against alleged third party patent infringers, the Federal Circuit has stated that:

> When a sufficiently large portion of [a patent's] bundle of rights is held by one individual, we refer to that individual as the owner of the patent, and that individual is permitted to sue for infringement in his own name. When a plaintiff lacking a sufficiently

large portion of rights brings suit, that plaintiff does not have standing to sue on his own, and the suit must be dismissed, or additional holders of rights under the patent must be joined as parties to the suit, as appropriate given the plaintiff's status as either an exclusive or a nonexclusive licensee.

**\*3** *Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.,* 604 F.3d 1354, 1360 (Fed. Cir. 2010). "[A] license may be written, verbal, or implied, [however,] if the license is to be considered a virtual assignment to assert standing, it must be in writing." *Enzo,* 134 F.3d at 1093.

There is no dispute that Medafor is the assignee of the *'461 patent* and that Medafor has not granted a written license to Bard or Davol. Even though CryoLife argues that Davol an implied exclusive licensee, it has offered no evidence that Medafor transferred any of its rights to either Bard or Davol. CryoLife's identification of certain facts [3] is insufficient to establish that Medafor could not sue CryoLife for infringement without joining Bard and/or Davol. The court does not have subject matter jurisdiction over Bard and Davol in the case at bar.[4] Defendants' motion to dismiss is granted in this regard.

## IV. MOTION TO DISMISS

### A. Standard

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.,* 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions.

*Fowler,* 578 F.3d at 210–11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.' " *Id.* at 211 (quoting *Iqbal,* 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Christopher v. Harbury,* 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384–85 n.2 (3d Cir. 1994).

**\*4** The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.,* 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 663–64.

### B. Analysis

CryoLife does not dispute that the pleading standards set forth in *Twombly* and *Iqbal* apply to counterclaims of invalidity. *See e.g., Senju Pharm. Co. v. Apotex, Inc.,* 921 F.Supp.2d 297, 303 (D. Del. 2013). CryoLife's amended complaint alleges:

The claims of the *'461 patent* are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 102 and/or 103. For example, the claims of the *'461 patent* are invalid under 35 U.S.C. §§ 102 and/or 103, at least in view of U.S. Patent No. 4,225,580 to Rothman, et al., alone or in combination with other prior art;

Case 4:21-cv-10312-FKB-RSW ECF No. 12-2, PageID.139 Filed 06/25/21 Page 7 of 46

CryoLife, Inc. v. C.R. Bard, Inc., Not Reported in Fed. Supp. (2015)

U.S. Patent No. 4,002,173 to Manning et al., alone or in combination with other prior art; and/or U.S. Patent No. 5,707,972 to Shimizu, alone or in combination with other prior art. Additionally, certain claims of the '461 patent are invalid under 35 U.S.C. § 112 for lack of written description.

(D.I. 17 at ¶ 57) CryoLife identifies the specific statutory sections regarding invalidity (§§ 102, 103, and/or 112) and provides examples of invalidating prior art. CryoLife also alleges a lack of written description. *Senju,* 921 F.Supp.2d at 303; *see also EMC Corp. v. Zerto, Inc.,* Civ. No. 12–956, 2014 WL 3809365 (D. Del. July 31, 2014)(citations omitted). The court concludes that CryoLife has sufficiently pleaded invalidity.

As to infringement, CryoLife alleges:

> The use, offer for sale, and/or sale of CryoLife's PerClot products has not infringed, does not infringe, and would not, when marketed and sold, directly or indirectly infringe any valid claim of the '461 patent, either literally or under the doctrine of equivalents, when CryoLife's PerClot products are used in a manner consistent with that set forth in the Proposed Instructions for Use (IFU). More particularly, the use of CryoLife's PerClot products has not infringed, does not infringe, and would not infringe, directly or indirectly, any valid claim of the

'461 patent, either literally or under the doctrine of equivalents, because CryoLife's PerClot products behave in use like the prior art which was argued by the patentee to be fundamentally different during prosecution.

(D.I. 17 at ¶ 53) CryoLife argues that the amended complaint makes clear that it seeks a declaration of "no direct infringement under 35 U.S.C. § 271(a), no induced infringement under § 271(b), and no contributory infringement under § 271(c)." (D.I. 29 at 15–16) While the amended complaint does not identify the relevant statutory sections for indirect infringement or use the terms "induced infringement" or "contributory infringement," CryoLife has pled that there is no direct or indirect infringement. This is sufficient to proceed to discovery.

**V. CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part defendants' motion to dismiss (D.I. 19). An appropriate order shall issue.

**ORDER**

*5 At Wilmington this 10 th day of March 2015, consistent with the memorandum issued this same date;

IT IS ORDERED that defendants' motion to dismiss (D.I. 19) is granted in part and denied in part.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 1069397

**Footnotes**

1    Defendants' motion to transfer (D.I. 14) was withdrawn in court during oral argument on January 23, 2015.
2    In contrast to the question presented in the cases cited by the parties, i.e., whether a licensee has standing without joining the patent holder. *See e.g., Atmel Corp. v. Authentec, Inc.,* 490 F.Supp.2d 1052 (N.D. Cal. 2007) (holding that a parent corporation had sufficient rights in its wholly-owned subsidiary's patent to have standing to prosecute infringement suit).

3       A news release reporting that Bard and Davol acquired Medafor because its products, including Arista, "represent[ ] an important building block for [Bard's] surgical specialty product offering and provide[ ] a global footprint for continued expansion." (D.I. 17, ex. F); Medafor appears to exist in name only as its website redirects to a Davol webpage (D.I. 24 at ¶ 16); Medafor's Minnesota facility now bears the signage of Bard and Davol (D.I. 17, exs. I & J); and only two former Medafor employees remain, and they are now employees of Davol (D.I. 26 at ¶¶ 5).

4       Should the assignment of the #461 patent change, CryoLife would be able to join any other party required for standing through a proper motion practice.

---

**End of Document**                                            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:21-cv-10312-FKB-RSW ECF No. 12-2, PageID.141 Filed 06/25/21 Page 9 of 46
Elan Pharma Intern. Ltd. v. Lupin Ltd., Not Reported in F.Supp.2d (2010)

2010 WL 1372316

2010 WL 1372316
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

ELAN PHARMA INTERNATIONAL LTD. and
Fournier Laboratories Ireland Ltd., Plaintiffs,

v.

LUPIN LIMITED and Lupin
Pharmaceuticals, Inc., Defendants.

Civil Action No. 09–1008 (JAG).

|

March 31, 2010.

**Attorneys and Law Firms**

Gerald Krovatin, Krovatin Klingeman LLC, William J.
Heller, Jonathan M.H. Short, Mark H. Anania, McCarter &
English, LLP, Newark, NJ, for Plaintiffs.

Arnold B. Calmann, Geri Lauren Albin, Jeffrey S. Soos,
Saiber LLC, Newark, NJ, for Defendants.

**OPINION**

GREENAWAY, JR., Chief Judge. [*]

**\*1** This matter comes before this Court on the motion
by the plaintiffs, Elan Pharma International Ltd. and
Fournier Laboratories Ireland Ltd. (collectively, "Plaintiffs"
or "Elan"), seeking to dismiss the defendants', Lupin Limited
and Lupin Pharmaceuticals, Inc. (collectively, "Defendants"
or "Lupin") counterclaims, pursuant to Federal Rule of Civil
Procedure 12(b)(6) and to strike certain defenses, pursuant
to Federal Rule of Civil Procedure 12(f). (Docket Entry No.
22.) For the reasons set forth below, Elan's Motion to Dismiss
Defendants' Counterclaims and its Motion to Strike Certain
Defenses are denied.

**PROCEDURAL HISTORY**

These motions concern the alleged failure by Lupin to
provide, in their responsive pleading, sufficient factual
support for their counterclaims and affirmative defenses.

On March 6, 2009, Elan filed a Complaint which avers
that Lupin infringed U.S. Patent Nos. 7,276,249 ("the ′249
patent") and 7,320,802 ("the ′802 patent") by filing an
Abbreviated New Drug Application ("ANDA"). [1] (Docket
Entry No. 1.) On May 8, 2009, Lupin filed its "Answer,
Defenses, and Counterclaims" ("Answer"), and included U.S.
Patent No. 6,375,986 ("the ′986 patent") because the ′986
patent is also listed in FDA's Orange Book in connection with
TRICOR®. [2] (Docket Entry No. 12.)

In its counterclaims asserting non-infringement of the ′986,
′249 and ′802 patents, Lupin avers that "the manufacture,
use, sale, offer for sale or importation of the fenofibrate
tablets have not infringed, do not infringe, and would not, if
marketed, infringe any valid and enforceable claim" of the
′ 986, ′249 or ′802 patents. (Answer at 13–16). Specifically,
Lupin states that the claims of the ′986, ′249, and ′802 patents
respectively, are "invalid under one or more provisions of 35
U.S.C. §§ 101–105." (Id.)

On June 12, 2009, Elan filed its "Memorandum in Support
of Plaintiffs' Motion to Dismiss Defendants' Counterclaims
and Strike Certain Defenses". (Docket Entry No. 22.) Elan
argues that Lupin "generically asserted in its defenses and
counterclaims that the ′249, ′802 and ′986 patents were
invalid under one or more provisions of 35 U.S.C. §§
101–105." (Memorandum in Support of Plaintiffs' Motion
to Dismiss Defendants' Counterclaims and Strike Certain
Defenses at 2.) Elan contends that Lupin alleged the
counterclaims and affirmative defenses without pleading facts
that, if true, would entitle Defendants to relief. (Id. at 1.)
Elan moves this Court to dismiss Lupin's counterclaims and to
strike certain affirmative defenses asserted by Lupin. [3] (Id.)

**LEGAL STANDARDS**

**A. Rule 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides that a party
may move to dismiss a claim for relief in any pleading for
failure to state a claim upon which relief can be granted.

"Federal Rule of Civil Procedure 8(a)(2) requires only a short
and plain statement of the claim showing that the pleader is
entitled to relief, in order to give the defendant fair notice of
what the ... claim is and the grounds upon which it rests." Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955,
167 L.Ed.2d 929 (2007) (internal quotations omitted). "[A]

Case 4:21-cv-10312-FKB-RSW ECF No. 12-2, PageID.142 Filed 06/25/21 Page 10 of 46

Elan Pharma Intern. Ltd. v. Lupin Ltd., Not Reported in F.Supp.2d (2010)

2010 WL 1372316

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need attached factual allegations. [However,] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* A court must "draw all reasonable inferences in [the non-movant's] favor." *See Capogrosso v. Supreme Court of N.J.,* 588 F.3d 180, 184 (3d Cir.2009).

**\*2** "When there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.; see also Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir.2009) (articulating a two-part test applicable post-*Iqbal* wherein factual and legal elements are separated and the district court determines whether a plaintiff has shown a "plausible claim for relief").

A motion to dismiss for failure to state a claim should be granted only if the party asserting the claim is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir.2005).

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 259 (3d Cir.1998). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.' " *Id.* (emphasis in original)

### B. *Rule 12(f) Motion to Strike*

Federal Rule of Civil Procedure 12(f) provides, *inter alia,* that the court may strike from the pleading an insufficient defense or immaterial matter. A motion to strike, pursuant to Rule 12(f), will be granted only where "the insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 188 (3d Cir.1986) (internal quotation omitted); *see also In re Gabapentin Patent Litig.,* 648 F.Supp.2d 641, 647–48 (D.N.J.2009) (a court may only strike a defense where that defense "is insufficient at law and it cannot succeed under any circumstances").

The standard used to evaluate a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is also used to evaluate a motion to strike. *See Eisai Co., Ltd. v. Teva Pharm. USA, Inc.,* 557 F.Supp.2d 490, 493 (D.N.J.2008) ("[A] motion to strike an affirmative defense challenges the legal sufficiency of the pleading and is therefore governed by the same standard as a 12(b)(6) motion to dismiss."). An affirmative defense is insufficient as a matter of law if it cannot succeed under any circumstances. *Id.*

Accordingly, to determine whether Defendants' affirmative defenses are insufficient, the Court must accept all factual allegations in the Answer as true, construe the Answer in the light most favorable to Defendants, and determine whether, under any reasonable reading of the pleadings, Defendants may be entitled to relief. *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008).

### C. *Local Patent Rules for the District of New Jersey*
**\*3** On January 1, 2009, New Jersey adopted Local Patent Rules ("L.Pat. R."), which apply to all civil actions filed in, or transferred to, this Court which allege infringement of a patent in a complaint, counterclaim, cross-claim or third party claim, or which seek a declaratory judgment that a patent is not infringed, is invalid or is unenforceable. L. Pat. R. 1.2. The Local Civil Rules of this Court shall also apply to such actions, except to the extent that they are inconsistent with these Local Patent Rules. *Id.*

Local Patent Rule 3.1 requires that within 14 days of the initial scheduling conference, the patent holder must serve the alleged infringer a "Disclosure of Asserted Claims and Infringement Contentions", which must contain, *inter alia:*

1. Each claim of each patent in suit that is allegedly infringed including the applicable statutory subsections of 35 U.S.C. § 271 asserted;

2010 WL 1372316

2. The identification of defendant's "Accused Instrumentality";

3. A chart identifying where each limitation of each asserted claim is found in each "Accused Instrumentality";

4. Whether the alleged infringement is literal or under the doctrine of equivalents;

5. The priority date to which each asserted claim allegedly is entitled; and

6. The basis for any willful infringement claims.

L. Pat. R. 3.1.

Local Patent Rule 3.3 also requires that 45 days after service of the Disclosure of Asserted Claims and Infringement Contentions, each party opposing a claim of patent infringement, shall serve on all parties its "Invalidity Contentions," which must contain, *inter alia,* the following information:

1. The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious;

2. Whether each item of prior art anticipates each asserted claim or renders it obvious;

3. A chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found, including for each limitation that each party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), and material(s) in each item of prior art that performs the claimed function; and

4. Any grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims.

L. Pat. R. 3.3.

## ANALYSIS

These motions raises the issue of how the Supreme Court's recent pronouncements in *Twombly* and *Iqbal* regarding the threshold for pleading sufficient facts to defeat a motion to dismiss apply in ANDA actions. Specifically, these motions raise the question of whether the application of those cases reorders the burdens and obligations of the parties at the pleading stage. Here, Elan posits that Lupin must provide a quantum of facts in its answer that far exceeds the 'bare and naked assertions' Lupin, according to Elan, has provided thus far. As such, Elan asserts that Lupin's counterclaims must be dismissed, and two of Lupin's defenses must be struck. In this Court's view, the requirements of ANDA actions, and adherence to our local patent rules, do not mandate the result Elan seeks.

**\*4** Lupin asserts six counterclaims in its answer—three counterclaims asserting invalidity on each of the three patents at issue, and three counterclaims asserting non-infringement on each of the three patents at issue. Elan moves to dismiss all six counterclaims, and moves to strike two identified affirmative defenses.

Elan contends that Lupin's counterclaims do not meet the pleading requirements because Lupin merely asserts that "the ′249,′802 and the ′986 patents are invalid under one or more provisions of 35 U.S.C. §§ 101–105," without identifying which possible provision(s) would be applicable to its invalidity defense. (Brief in Support of Defendants' Opposition to Motion to Dismiss Counterclaims and Strike Certain Defenses at 2). Lupin responds that its counterclaims and defenses comply with the Rule 8 notice pleading standard, and that there is no need for supplementing the facts through an amended pleading.

Federal Civil Rule 8(a)(2) requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the opposing party notice of what the claim is and the grounds upon which it rests. *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1356 (Fed.Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1964). In *McZeal,* the Federal Circuit considered whether the Supreme Court's decision in *Twombly* changed the pleading requirements of Rule 8(a) in patent infringement actions, and concluded that it did not. *See McZeal,* 501 F.3d at 1357 n. 4 ("[t]his does not suggest that *Twombly* changed the pleading requirement of Federal Rule of Civil Procedure 8"); *see also Twombly,* 127 S.Ct. at 1974 (Rule 8 does "not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face").

The Court of Appeals for the Third Circuit has provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to meet the Rule 8

*Elan Pharma Intern. Ltd. v. Lupin Ltd., Not Reported in F.Supp.2d (2010)*

2010 WL 1372316

pleading standard, stating, "a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. *Cummings v. Henn,* Civ. Action No. 09–747, 2009 U.S. Dist. LEXIS 21065 at *3 (D.N.J. March 17, 2009) (quoting *Phillips,* 515 F.3d at 234 (internal citations omitted)). This "does not impose a probability requirement at the pleading stage," but rather "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.*

Lupin's six counterclaims for non-infringement and invalidity of the three patents adhere to the pleading standard enunciated in Rule 8(a)(2). Elan has full notice of Lupin's claims of non-infringement and invalidity, and Lupin has stated the grounds for these claims. Based on this assessment, the *Phillips* standard is met.

More important, it is Elan that has the burden of proof in establishing infringement of the patents at issue. "A party asserting infringement must be able to prove by a preponderance of the evidence that a product meets each and every limitation of the asserted claims either literally or under the doctrine of equivalents." *In re Gabapentin Patent Litig.,* 393 F.Supp.2d 278, 290 (D.N.J.2005).

**\*5** Elan's motion to dismiss Lupin's counterclaims and motion to strike certain affirmative defenses for lack of factual information is without a sound foundation. Lupin's language in its counterclaims and affirmative defenses mirrors the language Elan employed in its own Complaint. There is no basis for this Court to, on the one hand, allow Elan to plead as it has while, on the other hand, require Lupin, inexplicably, to provide more detailed factual support for its counterclaims and defenses. The notion that Lupin must identify what theories of invalidity it intends to pursue, and the facts supporting such theories at this stage is not plausible.

Additionally, the Local Patent Rules require specificity at a later stage than Elan argues is required, pursuant to *Twombly* and *Iqbal.* Both Elan and Lupin will have to disclose their respective theories and the accordant facts in order to comply with Local Patent Rules 3.1 and 3.3. [4] This motion suggests a factual disclosure that the Federal Circuit does not require, and a disclosure that, if required here, would make Rules 3.1 and 3.3 superfluous. [5] This Court cannot rule in a manner that undermines logic, the Federal Rules, and the District of New Jersey Local Patent Rules.

Elan suffers no strategic disadvantage from this Court not ordering further factual support for Lupin's counterclaims. Elan's ability to provide the Local Civil Rule 3.1 disclosure is not hampered or inhibited as a result of this ruling. The crux of *Twombly* and *Iqbal* is to ensure that the defendant (here, Elan, the counterclaim defendant) has fair notice of what is being pled. Elan has that notice.

Finally, Plaintiff urges this Court to follow and apply the rationale set forth in a District of Nevada case—*Duramed Pharmaceuticals v. Watson Laboratories,* Civ. Action No. 08–00116, 2008 U.S. Dist. LEXIS 103389 (D.Nev. December 12, 2008). In the first instance, this Court is not obligated to follow a District of Nevada precedent. In *Duramed,* the court, when addressing a motion to dismiss on grounds similarly argued here, ruled that the motion to dismiss should be granted. In the terse opinion, the court noted that the defendants' counterclaims and affirmative defenses failed to specify the grounds for the invalidity and infringement claims asserted, and that such deficiencies warranted dismissal. Notably, this ruling lacks sufficient analysis to be helpful to the resolution of the motions before this Court. There is no discussion of the nature and timing of disclosure regarding the facts and theories relevant to ANDA claims. Further, unlike the District of New Jersey, there are no local patent rules in the District of Nevada. [6] Based on these distinctions, *Duramed* is not persuasive.

### Elan's Motion to Strike

The rationale employed in denying Elan's motion to dismiss Lupin's counterclaims leads to the same conclusion regarding Elan's motion to strike two affirmative defenses. [7] Lupin's second defense states that "the claims of the '249 patent are invalid under one or more provisions of 35 U.S.C. §§ 101–105", while its third defense states that "the claims of the '802 patent are invalid under one or more provisions of 35 U.S.C. §§ 101–105." (Answer at 10.) The disclosure requirements of the local patent rules mandate the provision of specific factual and theoretical disclosures by both sides in short order. As noted in the counterclaim discussion above, Elan is put on notice of Lupin's defenses and suffers no strategic disadvantage by not obtaining a more detailed answer. There is no basis to grant Elan's motion to strike at such an early stage of this litigation. [8]

**\*6** Equally important, this Court cannot determine that these defenses could not succeed as a matter of law or that Lupin is

Elan Pharma Intern. Ltd. v. Lupin Ltd., Not Reported in F.Supp.2d (2010)

2010 WL 1372316

not entitled to relief. The inability to reach this determination is in essence, the death knell of Elan's motion to strike.

### CONCLUSION

Based on the foregoing, Plaintiff's motion to dismiss defendant's counterclaims, pursuant to Federal Rule of Civil Procedure 12(b) (6), and Plaintiff's motion to strike certain defenses, pursuant to Federal Rule of Civil Procedure 12(f), are denied, without prejudice. Lupin's motion to amend is denied, as moot.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 1372316

## Footnotes

\* Sitting by designation on the District Court.

1 Lupin filed ANDA No. 90–856, seeking approval to sell generic copies of TRICOR® 48 mg and 145 mg products (Elan's patented product).

2 Lupin claims that the #986 patent is also invalid, and that it (the #986 patent) is not infringed by Defendants' generic product.

3 Lupin requests leave to file an amended answer, should this Court grant Elan's motion.

4 The District Court of New Jersey Local Patent Rules are designed to require parties to crystallize their theories of the case early in the litigation. Local Patent Rule 3.1 (Patent Disclosures) requires that a party claiming patent infringement shall serve a "Disclosure of Asserted Claims and Infringement Contentions" on all parties. Within the Disclosure, the party must provide, among other information, each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted. L. Pat. R. 3.1(a). Forty-five days after service of the disclosure, each party opposing a claim of patent infringement shall serve on all parties its "Invalidity Contentions", which identifies, among other things, "any grounds of invalidity based on 35 U.S.C. § 101 ..." L. Pat. R. 3.3(d).

5 Lupin also states that the Plaintiffs fail to reveal what additional detail is required to provide Elan with sufficient information to formulate a response. The level of detail Elan seeks from Lupin will be obtained during discovery, as elucidated in the Local Patent Rules.

6 In the District of Nevada, no local patent rules have been published. *District of Nevada Local Rules,* http://www.nvd.uscourts.gov/LocalRules.aspx (Last visited March 31, 2010).

7 Lupin alleges nine separate defenses.

8 In its opposition to Plaintiffs' motion, Lupin contends that Elan should have moved for a more definite statement under Federal Rule of Civil Procedure 12(e), before moving to dismiss under Rule 12(b)(6). This argument is without merit. Lupin does not cite to a rule or any case law for this proposition. A Rule 12(e) motion establishes that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definitive statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e).

These motions are "directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading" *Schaedler v. Eagle Publications, Inc.,* 370 F.2d 795, 798 (3d Cir.1967); *see also Pitcavage v. Mastercraft Boat Co.,* 632 F.Supp. 842, 850 (M.D.Pa.1985) ( [M]otions for more definite statements are not viewed with favor and are to be granted only if the allegations contained in the pleading are so vague that defendant cannot reasonably be expected to frame a response to it.) However, when a Rule 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. *Viola v. Village of Throop,* Civ. Action No. 06–1930, 2007 U.S. Dist. LEXIS 56181 at \*5 (M.D.Pa. August 2, 2007). The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. *Id.* This Court has not identified any requirement under the Federal Rules of Civil Procedure

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 5

that a party must first move under Rule 12(e) for a more definite statement before moving to dismiss under Rule 12(b)(6).

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1383272
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

EVOLVE TECHNOLOGIES, LLC, a Delaware limited
liability company, Plaintiff/Counter Defendant,

v.

COIL WINDING SPECIALIST, INC., a California
corporation, Defendant/Counter-Claimant.

Case No.: 3:18-cv-00671BEN-BGS
|
Signed 03/27/2019

**Attorneys and Law Firms**

Adam Davenport, Pro Hac Vice, Patterson & Sheridan, LLP, Houston, TX, James L. Williams, Pro Hac Vice, Schmitt Schneck Smyth Casey & Even, P.C., Phoenix, AZ, Jerry Robin Selinger, Pro Hac Vice, Patterson + Sheridan, LLP, Dallas, TX, Nicholas R. Transier, Patterson + Sheridan LLP, San Diego, CA, for Plaintiff/Counter Defendant.

Stephen M. Lobbin, Sml Avvocati P.C., La Jolla, CA, for Defendant/Counter-Claimant.

**ORDER DENYING PLAINTIFF'S
MOTION TO DISMISS DEFENDANT'S
FIRST AMENDED COUNTERCLAIMS**

HON. ROGER T. BENITEZ, United States District Judge

 **\*1** Before the Court is Plaintiff EVOLVE TECHNOLOGIES, LLC's ("Evolve") Motion to Dismiss Defendant COIL WINDING SPECIALIST, INC.'s ("CWS") First Amended Counterclaims. For the reasons set forth below, Evolve's motion is DENIED.

## I. BACKGROUND [1]

Evolve initiated the present action in April 2018. ("Complaint" Doc. No. 1.) In the Complaint, Evolve alleged that CWS infringed U.S. Patent Nos. 7,878,417 ("the '417 Patent"), 8,434,693 ("the '693 Patent"), 9,309,655 ("the '655 Patent"), 9,611,629 ("the '629 Patent"), and 9,927,042 ("the '042 Patent") (collectively, the "Patents-in-Suit"). (Doc. 1 ¶¶ 6-10.) The Patents-in-Suit relate to a multifunctional

restrictive valve for controlling the flow of water. [2] *Id.* ¶ 11. Evolve makes and sells valve products covered by the Patents-in-Suit throughout California and the United States. *Id.* ¶ 13.

CWS manufactures and sells a similar shower valve used for saving water and energy. One model of this valve product is branded under the name "Hot-Start!" [3] *Id.* ¶ 15.

Evolve alleges that the Hot-Start! valve product embodies the claims of Evolve's multifunctional restrictive valve patents.

Claim 1 of the 417' Patent covers a "valve for controlling the flow of water therethrough." The valve comprises a flow control assembly which includes a temperature sensor. The flow control assembly "adapted to substantially block and unblock the flow of water in the channel responsive to the temperature sensor." Evolve alleges CWS's Hot-Start! valve product is infringing because CWS's website advertises that the Hot-Start! valve product "reads water temperature and tells the valve to automatically close and pause water flow at 95º F." Evolve's remaining patents are alleged to have been infringed for similar reasoning.

On June 1, 2018, CWS filed its Answer to the Complaint and asserted counterclaims. (Doc. No. 8.) Shortly thereafter on July 13, 2018, CWS filed a First Amended Answer to the Complaint and asserted Counterclaims. (Doc. No. 15.)

On July 27, 2018, Evolve filed the present Motion to Dismiss. (Doc. No. 16.) CWS responded to which Evolve replied. (Doc. Nos. 24, 26.)

Pursuant to civil local rule 7.1.d.1, this Court finds the Motion fully briefed and suitable for determination without oral argument.

## II. DISCUSSION

### A. Evolve's Motion to Dismiss CWS's Counterclaims.

 **\*2** A court will grant a motion to dismiss if the complaint does not allege claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to provide the opposing party notice of the claim and the grounds upon which it rests. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "The rule applies equally to a counterclaim. *Hana*

*Fin. Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1232 (C.D. Cal. 2007).

To survive a motion to dismiss, a counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681. Rather, to state a plausible claim for relief, the counterclaim "must contain sufficient allegations of underlying facts" to support its legal allegations. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Evolve argues that the Court should dismiss amended counterclaims one, two, four, five and six of the Amended Answer. On August 23, 2018, CWS submitted a notice of dismissal of the third counterclaim for "Infringement of U.S. Patent 10,006,552." (Doc. No. 23.) The Court addresses each remaining argument in turn.

### 1. *Counterclaim for Declaratory Judgment of Non-Infringement*.

Evolve argues that CWS's First Amended Counterclaim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to provide adequate factual support of CWS's allegations on non-infringement. (Doc. No. 14 at 2.)

Unlike the requirement with invalidity contentions, the Standing Patent Rules do not mandate a subsequent, more extensive disclosure of non-infringement positions. For the Defendant to provide Plaintiff with fair notice and a basis for asserting the non-infringement counterclaim, the pleadings must contain the factual basis necessary to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 561. The defendant is not required to give every detail of its counterclaim. *See Iqbal*, 556 U.S. 678. That is, it need not set forth every permutation of its non-infringement theories on an element-by-element basis. *See, e.g., Infineon Tech. AG v. Volterra Semiconductor Corp.*, No. 3:11-cv-06239-MMC at 2-3 (N.D. Cal. May 1, 2013) (finding an identification of non-infringing products for each asserted patent to be sufficient). But it must provide "enough facts to state a claim to relief that is plausible on its face." *See Twombly* at 1960.

In this case, the Court agrees with CWS. Numerous California district courts have found general denials of infringement sufficient to sustain declaratory judgment claims for patent non-infringement at the pleading stage. *See MIS Scis. Corp. v. Rpost Commc'ns Ltd.*, No. 14-CV-00376-VC, 2016 WL 2931659, at *1 (N.D. Cal. May 19, 2016) (finding non-infringement claims sufficiently pleaded where the accusing party "described in general terms the accused products," and the accused party broadly denied those allegations, because the accuser "should typically already be on notice of the patent infringement questions posed by the lawsuit"); *Am. Soc'y of Anesthesiologists v. BevMD, LLC*, No. 15-CV-600-BAS(JLB), 2016 WL 4257448, at *4 (S.D. Cal. Mar. 31, 2016) (finding adequate a "scantly" alleged claim that the accused product did "not infringe, has not infringed directly, indirectly, willfully, or otherwise" any claim of the asserted patent); *accord ASUSTeK Computer Inc. v. AFTG-TG LLC*, No. 5:CV 11-00192-EJD, 2011 WL 6845791, at *13 (N.D. Cal. Dec. 29, 2011) (holding that a non-infringement claim must at least identify the disputed products to satisfy *Twombly* and *Iqbal* ).

**\*3** Here, Evolve asserts that CWS is contending that it has not infringed the patents because (1) the cam, shaft, and handle in the patents are not a "bypass pin" and (2) no part of the "override assembly" of the patents operates directly on the valve in the way that the cam of the CWS valve does. (Doc. No. 16 at 2-3.)

Evolves infringement allegations, in turn, reference the accused products, their components, and the corresponding patent claims. Though somewhat minimalist, CWS's non-infringement counterclaims provided Evolve with enough detail to put them on notice of CWS non-infringement contentions. (*See* Doc. No. 15 at 7-8.) That is sufficient for CWS's counterclaims to survive beyond the pleading stage.

That conclusion is reinforced by CWS's subsequent discovery disclosures. Heightened discovery obligations make patent cases "unique with respect to pleading," in that "arguments for more specificity in a complaint are not always warranted."

Accordingly, the Court **DENIES** Evolve's Motion to Dismiss with respect to CWS's first counterclaim for non-infringement.

Case 4:21-cv-10312-FKB-RSW ECF No. 12-2, PageID.149 Filed 06/25/21 Page 17 of 46

Evolve Technologies, LLC v. Coil Winding Specialist, Inc., Not Reported in Fed. Supp....

### 2. *Counterclaim for Declaratory Judgment of Patent Invalidity*.

Evolve argues that CWS's invalidity counterclaim should be dismissed for failing to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 16 at 3.)

Various district courts have weighed in on the level of factual detail required for an invalidity counterclaim to survive a motion to dismiss for failure to state a claim. Some courts have concluded that threadbare recitals that a patent is invalid under various sections of the U.S. Code without further factual detail regarding the grounds for this invalidity are insufficient to satisfy the heightened pleading standards of *Iqbal* and *Twombly*. *See, e.g., Sliding Door Co. v. KLS Doors, LLC*, 2013 WL 2090298, at *4 (C.D. Cal. 2013); *PageMelding, Inc. v. ESPN, Inc.*, 2012 WL 3877686, at *3 (N.D. Cal. 2012). Other courts, however, have found the pleading of such counterclaims to be sufficient in light of the subsequent, detailed invalidity contentions required by local patent rules. *See, e.g., Deckers Outdoor Corp. v. Rue Services Corp.*, No. CV 13–6303 JVS (VBKx), Dkt. 28 at 2–3 (C.D. Cal. Dec. 23, 2013); *ASUSTeK Computer Inc. v. AFTG–TG LLC*, 2011 WL 6845791, *13–14 (N.D. Cal. Dec. 29, 2011); *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010). This analysis is further complicated by the abrogation of Rule 84 and Form 18 pleading standard for direct infringement patent claims.

CWS alleges that the Asserted Patents are invalid for failing to comply with the specific statutory subparts of "§§ 101, 102, 103 and/or 112." (Doc. No. 15 ¶¶ 9-11.) CWS is therefore not asserting all grounds of invalidity and unenforceability under the Patent Act. Additionally, CWS explains these grounds of invalidity in detail in its affirmative defenses. As such, Evolve has sufficient notice of the grounds underlying CWS's counterclaim. In the present posture, greater specificity cannot be demanded, as Evolve has yet to identify the specific patent claims it intends to assert against CWS. *Tetsuya v. Amazon.com, Inc.*, No. C11-01210 HRL, 2011 WL 10632812, at *2 (N.D. Cal. Nov. 8, 2011); *Vistan Corp. v. Fadei USA, Inc.*, No, C-10-4862 JCS, 2011 WL 1544796 (N.D. Cal. Apr. 25, 2011).

**\*4** Accordingly, the Court **DENIES** Evolve's Motion to Dismiss with respect to CWS's second counterclaim for declaratory judgment on Patent Invalidity.

### 3. *Preemption of State Law Counterclaims Pursuant to Federal Law*.

Evolve argues that in response to its Motion to Dismiss (Doc. No. 14), CWS merely added to its state law counterclaims the conclusory statement that "Evolve had no good faith basis to believe that its patents were being infringed by CWS, and thus had no protected right to notify Eclipse Efficiencies of any potential infringement." (Doc. No. 16 at 4.)

CWS argues that Evolve has failed to produce evidence that CWS acted in bad faith. The Court agrees with CWS and denies that part of Evolve's Motion to Dismiss Counterclaims.

The United States Court of Appeals for the Federal Circuit has concluded that its law applies to cases in which unfair competition or similar business torts are asserted as counterclaims in a patent infringement action. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347 (Fed. Cir. 1999). "[A] patentee's statements regarding its patent rights are conditionally privileged under the patent laws so that such statements are not actionable unless made in bad faith." *Id.* at 1353. *685. With respect to federal unfair competition claims, "before a patentee may be held liable under § 43(a) [of the Lanham Act] for marketplace activity in support of its patent ... the marketplace activity must have been undertaken in bad faith." *Id.* With respect to state law claims, "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Matthews Int'l Corp. v. Biosafe Eng'g*, 695 F.3d 1322, 1332 (Fed. Cir. 2012). Such state law claims survive preemption by federal patent law "only to the extent that those claims [are] based on a showing of bad faith action in asserting infringement." *Matthews Int'l*, 695 F.3d at 1332 (state law claims for tortious interference with contractual relations); *see also Hunter Douglas Inc. v. Harmonic Design Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998) *overruled on other grounds by Midwest Indus. Inc. v. Karavan Trailers Inc.*, 175 F.3d 1356, 1358–59 (Fed. Cir. 1999) (state law claims of unfair competition).

"A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004).

Case 4:21-cv-10312-FKB-RSW ECF No. 12-2, PageID.150 Filed 06/25/21 Page 18 of 46

Evolve Technologies, LLC v. Coil Winding Specialist, Inc., Not Reported in Fed. Supp....

Plaintiff must prove bad faith by clear and convincing evidence. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002).

The crux of CWS's claim of wrongful conduct stems from Evolve's intentional communication with a CWS vendor, "Eclipse Efficiencies," in order to put Eclipse Efficiencies on notice of the potential infringement issues related to CWS's valve assembly and Evolve's patents-in-suit. Evolve argues that CWS has failed to meet its burden of demonstrating that Evolve acted in bad faith. At most, CWS alleges that "Evolve had no good faith basis to believe that its patents were being infringed," and "Evolve knew that Eclipse Efficiencies had not made, used, offered to sell, sold or imported the accused infringing products," however such allegations, even if taken as true, are not sufficient to demonstrate bad faith, and instead amount to unsupported (if not controverted) legal conclusions. (Doc. No. 26 at 5-6.)

**\*5** The Court rejects Evolve's bad faith arguments. First, the Court finds CWS's litigation position reasonable and Evolve's attempt to demonstrate CWS's bad faith based on these arguments is unpersuasive. Second, even if the Court were to find the patents invalid or not infringed as a matter of law, this would not constitute bad faith unless CWS's litigation position was objectively baseless or CWS believed that the patents were invalid, unenforceable, or not infringed when it sent the letters to Evolve's customers. *Golan*, 310 F.3d at 1371. ("[P]atentees ... are allowed to make representations that turn out to be inaccurate...."). Evolve has identified no other evidence that CWS knew the patents were invalid or not infringed to establish bad faith.

Because there is no evidence, at least at this early stage of the proceedings, that CWS's claims of infringement were made in bad faith, were objectively baseless, or even that the claims were unreasonable, the Court denies Evolve's Motion to Dismiss the Counterclaims as Preempted by Federal law.

**4. *Dismissal of State Law Claims Pursuant CA Code of Civil Proc. §§ 425.16.***

Evolve moves to dismiss CWS's intentional interference with prospective business advantage claim pursuant to California Civil Procedure Code § 425.16. Evolve argues that CWS's claim should be dismissed insofar as it is based on Evolve's communications with CWS's customer Eclipse Efficiencies.

California Civil Procedure Code § 425.16 allows a defendant to gain early dismissal of causes of action aimed at chilling the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. Cal. Civ. Proc. Code § 425.16(a); *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180 (2005). These suits are often referred to as "strategic lawsuits against public participation" or "SLAPP" suits; hence § 425.16 is often referred to as the "anti-SLAPP statute." *See Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325 (2009).

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). First, the defendant must make an initial prima facie showing "that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 29 Cal. 4th 82 (2002). "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.15, subdivision (e)." *Id.* (quoting *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036 (1997)) (internal quotation marks omitted).

Second, once the defendant has made a prima facie showing of protected activity, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* A plaintiff has a probability of prevailing if "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811 (2002) (quoting *Matson v. Dvorak*, 40 Cal. App. 4th 539 (1995)) (internal quotation marks omitted). "The plaintiff's showing of facts must consist of evidence that would be admissible at trial." *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337 (2007). Indeed, "[t]he plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence." *Paiva v. Nichols*, 168 Cal. App. 4th 1007 (2008).

Only when a defendant shows that a claim is based on protected conduct and the plaintiff fails to show a likelihood of success on that claim is it subject to dismissal. *Varian Med. Sys.*, 25 Cal. Rptr. 3d 298 (2005).

*Commercial Speech Exception*

Case 4:21-cv-10312-FKB-RSW   ECF No. 12-2, PageID.151   Filed 06/25/21   Page 19 of 46

Evolve Technologies, LLC v. Coil Winding Specialist, Inc., Not Reported in Fed. Supp....

**\*6** California Civil Procedure Code § 425.17 lays out several exemptions from anti-SLAPP liability. Among them is § 425.17(c), the "commercial speech exemption." *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1142 (C.D. Cal. 2009). Under this exemption, causes of action arising from commercial speech are exempt from the anti-SLAPP law when:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;

> (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;

> (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and

> (4) the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

*See* Simpson Strong–Tie Co. v. Gore, 49 Cal. 4th 12, 30 (2010).

CWS opposes Evolve's anti-SLAPP motion on the basis that Evolve's communications, and thus CWS's cause of action, is subject to the commercial speech exemption. (Doc. No. 24 at 6.) Given the parties' postures, the Court's analysis begins with assessing whether CWS's communications are subject to the commercial speech exemption. If it is, the anti-SLAPP analysis ends. If not, the Court continues with the § 425.16 analysis.

First, Evolve is a manufacturer of renewables and environmental products, primarily engaged in the business of selling goods (*thermostatic shut-off valves for water conservation*). (Doc. No. 24 at 6.) Second, CWS's three California state law counterclaims arise from Evolve's statements and representations of fact about the business operations and goods of CWS, Evolve's competitor. *Id.* As alleged, Evolve touted (*what CWS alleges are baseless*) infringement allegations against CWS to its vendor and partner Eclipse Efficiencies ("Eclipse"). *Id.* Third, the statements made by Evolve to Eclipse clearly were for a "commercial purpose" and specifically to promote Evolve's own business and goods at the expense of CWS. And finally, fourth, Evolve's audience, Eclipse was "an actual or potential buyer or customer."

Having demonstrated that all four factors are met, Evolve's statements to Eclipse about the alleged infringement of its patents should be classified as commercial speech and thus not protected by California's anti-SLAPP statute.

Accordingly, the Court **DENIES** Evolve's Motion to Dismiss the counterclaims.

## III. CONCLUSION

Evolve's Motion to Dismiss CWS's Counterclaims is **DENIED.**

**IT IS SO ORDERED.**

## All Citations

Not Reported in Fed. Supp., 2019 WL 1383272

## Footnotes

1    The following overview of the facts are drawn from the relevant allegations of the Complaint for resolving the instant motion to dismiss. The Court is not making findings of fact.

2    More particularly, a multifunctional restrictive valve permits water to pass through the valve until the water reaches a predetermined temperature and then stops the water flow. The multifunctional restrictive valve allows a user to run water unattended to clear the cold water from the water line because the user knows the valve will shut off when the water heats up to minimize wasted hot water. *Id.* ¶ 11.

3    CWS markets and sells this product under trade names Eclipse Efficiencies, Inc. and CWS Bytemark. *Id.* ¶ 16.

**Evolve Technologies, LLC v. Coil Winding Specialist, Inc., Not Reported in Fed. Supp....**

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 4:21-cv-10312-FKB-RSW ECF No. 12-2, PageID.153 Filed 06/25/21 Page 21 of 46
Finalrod IP, LLC v. Endurance Lift Solutions, Inc., Slip Copy (2020)

2020 WL 7222803

2020 WL 7222803
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas, Marshall Division.

FINALROD IP, LLC, Plaintiff,

v.

ENDURANCE LIFT SOLUTIONS, INC., Defendant.

Case No. 2:20-cv-00189-JRG-RSP

|

Signed 10/30/2020

**Attorneys and Law Firms**

Terry Blaine Joseph, John Davis Holman, Matthews Lawson McCutcheon & Jospeh, PLLC, Houston, TX, Deron R. Dacus, The Dacus Firm, PC, Tyler, TX, for Plaintiff.

Timothy J. Carroll, Dentons US LLP, Chicago, IL, Grace Michelle Dickson, Dentons US LLP, Dallas, TX, Katherine Ramlose McMorrow, Manny J. Caixeiro, Dentons US LLP, Los Angeles, CA, for Defendant.

## REPORT AND RECOMMENDATION

ROY S. PAYNE, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court is the Motion to Dismiss Pursuant to FRCP 12(b)(6) and to Strike Pursuant to FRCP 12(f) ("Motion"), filed by Plaintiff Finalrod IP, LLC ("Finalrod"). Dkt. No. 17.

Finalrod contends that the non-infringement counterclaim by Defendant Endurance Lift Solutions, Inc. ("Endurance") should be dismissed for failing to state a claim upon which relief can be granted. Finalrod further argues that Endurance's First, Third, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses should be struck as insufficient and failing to meet the *Iqbal/Twombly* pleading standard. Finally, it requests Endurance's invalidity counterclaim be struck as redundant to its Second Affirmative Defense.

After consideration, the Court finds that Finalrod's Motion should be **DENIED**.

## I. BACKGROUND

Finalrod sued Endurance, alleging that it infringed United States Patent No. 10,385,625 ("the '625 Patent"). Dkt. No. 1 at § IV. Endurance filed an answer, alleging multiple defenses and counterclaims. *See generally* Dkt. No. 10. Finalrod filed its Motion, contending that Endurance's counterclaims for declaratory judgment of non-infringement and invalidity of the '625 Patent are improper. Motion at 3–4, 7–9. Finalrod also seeks to strike some of Endurance's affirmative defenses, alleging that they are insufficiently pleaded. Motion at 4–7. After Finalrod filed the Motion, Endurance amended its answer. *See* Dkt. No. 25 ("Answer").

## II. LEGAL STANDARD

### a. Rule 12(b)(6)

A party may move to dismiss an action when the complaint fails "to state a claim upon which relief can be granted...." FED. R. CIV. P. 12(b)(6). A complaint states a sufficient claim if it gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (citations omitted).

When considering a Rule 12 motion to dismiss, a court accepts "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted). The court must then decide whether those facts "state a claim that is plausible on its face." *Id.* "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl.*, 550 U.S. at 556).

### b. Rule 12(f)

2020 WL 7222803

A party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, ... motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." 5C Charles Alan Wright *et al.*, FEDERAL PRACTICE & PROCEDURE § 1380 (3d ed.) (collecting cases); *see also U.S. v. Coney*, 689 F.3d 365, 379–80 (5th Cir. 2012). "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) (citations omitted). To find that an affirmative defense is insufficient as a matter of law, the Court considers whether the defense is applicable to the instant case and whether the pleadings give plaintiff fair notice of the defense. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). This standard prevents a plaintiff from being a victim of "unfair surprise." *Id.* (citations omitted).

## III. ANALYSIS

### a. Counterclaims

**\*2** Finalrod raises two issues with Endurance's counterclaims. First, it argues that Endurance's non-infringement counterclaim does not state a claim upon which relief can be granted. Second, it argues Endurance's invalidity counterclaim is redundant to its Second Affirmative Defense and should, accordingly, be struck.

As part of its Answer, Endurance alleges:

2. In Plaintiff's Original Complaint, Finalrod has accused Endurance of infringing the 10,385,625 (the "'625 Patent"), including specifically that Defendant's Series 300 sucker rod end fitting ("S300") allegedly infringes the '625 Patent.

3. Endurance denies that it has infringed the '625 Patent, and denies that the '625 Patent is valid and enforceable. Accordingly, an actual and justiciable controversy exists between Endurance and Finalrod regarding the alleged infringement, validity and enforceability of the '625 Patent.

...

## COUNT I

### Declaration of Non-Infringement of U.S. Patent No. 10,385,625

10. Endurance incorporates the preceding paragraphs by reference, as though fully set forth herein.

11. Finalrod has asserted that Endurance's S300 directly and/or indirectly, either literally or under the doctrine of equivalents, infringes the '625 Patent and has done so since April 25, 2020.

12. Endurance's S300 has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '625 patent; it is not the case that the each and every limitation of Claims 13-15 of the '625 patent are present directly and/or indirectly, either literally or under the doctrine of equivalents, in the S300.

13. Accordingly, there exists an actual and justiciable controversy between Endurance and Finalrod with respect to infringement of the '625 Patent.

14. Endurance is thus entitled to a declaratory judgment that it does not infringe any claim of the '625 patent.

Answer at 7, 9. Endurance will certainly need to provide, and prove, more to succeed at trial if it comes to that. However, the standard at this stage is far lower. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d at 587 (quoting *Bell Atl.*, 550 U.S. at 556). After reviewing Endurance's Answer, the Court is convinced that it has provided enough. [1] Finalrod does not explain what is missing or why the above statements are not enough to provide it fair notice. Finalrod has, therefore, not met its burden and Endurance's non-infringement counterclaim should not be dismissed.

Finalrod also contends that the Court should strike Endurance's non-infringement and invalidity counterclaims as redundant of Endurance's First and Second Affirmative Defenses. However, the corresponding counterclaims and defenses are not identical. *Compare* Answer at 4–6 *with id.* at 9–11.

Second, affirmative defenses and counterclaims have a key distinction. An affirmative defense can only survive as long

2020 WL 7222803

as the underlying claim is still active. Counterclaims, on the other hand, can survive independently. Finalrod does not address the possibility that if its claim is dismissed—due to settlement, motion practice, or any number of other reasons—Endurance may still want to pursue its claims that it does not infringe the '625 Patent or that the '625 Patent is not valid. Such a situation is quite possible and, thus, provides the counterclaim a useful purpose despite the existence of a similar affirmative defense. Finally, Finalrod does not explain how having both adds to its burden. If they truly are the same, its added burden would be minimal. In sum, this is not one of those infrequent situations where the Court will choose to strike a party's pleadings.

### b. Affirmative Defenses

**\*3** Finalrod also contends that Endurance's First, Third, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses from its original answer should be struck as insufficient. As an initial matter, Endurance's amended Answer no longer contains the Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses. Finalrod's request is thus moot as to those.

As for Endurance's First and Third Affirmative Defenses, Finalrod does not persuade this Court that the defenses are insufficient as a matter of law. The defenses—non-infringement and prosecution history estoppel and disclaimer

—are applicable to the instant case. Finalrod does not explain why the pleadings do not give it fair notice of the defense. Regardless, after reviewing the defenses in the Answer, they provide enough information to prevent Finalrod from being a victim of unfair surprise. Thus, the defenses are sufficient.

### IV. CONCLUSION

For the reasons set forth herein, the Court recommends that Finalrod's Motion be **DENIED**. Dkt. No. 17.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); see also *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

### All Citations

Slip Copy, 2020 WL 7222803

## Footnotes

1    The Court notes that Endurance's Answer is, of course, in response to Finalrod's complaint and, thus, implicitly includes the facts provided in Finalrod's complaint.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2537235
Only the Westlaw citation is currently available.
United States District Court, D.
South Carolina, Charleston Division.

HAND HELD PRODUCTS, INC., d/
b/a Honeywell Scanning & Mobility,
Intermec Technologies Corporation;
and Intermec IP Corporation, Plaintiffs,
v.
The CODE CORPORATION, Defendant.

Civil Action No. 17-167-RMG
|
Signed 06/09/2017

**Attorneys and Law Firms**

Eric Christopher Rusnak, K and L Gates, Washington, DC, James Walker Coleman, IV, Jennifer Hess Thiem, Richard Ashby Farrier, Jr., K&L Gates, Charleston, SC, Mark George Knedeisen, Patrick McElhinny, K&L Gates, Pittsburgh, PA, Ranjini Acharya, K and L Gates, Palo Alto, CA, for Plaintiffs.

Douglas Aaron Cawley, Richard Alan Kamprath, McKool Smith PC, Dallas, TX, Jason Alan Pittman, Tim F. Williams, Dority and Manning, Greenville, SC, Sally Corbette Newman, Charleston, SC, for Defendant.

**ORDER AND OPINION**

Richard Mark Gergel, United States District Court Judge

*1 This matter is before the Court on Plaintiffs' motion to dismiss Defendant's counterclaims and to strike in part Defendant's affirmative defenses (Dkt. No. 51). For the reasons set forth below, the Court denies the motion.

## I. Background

Plaintiffs Hand Held Products, Intermec Technologies, and Intermec IP (collectively "Honeywell") and Defendant The Code Corporation ("Code") compete in the 2D healthcare barcode reader market. In the present action, Honeywell asserts Code's CR2600 barcode reader infringes six patents (U.S. Patent Nos. 6,607,128, 8,096,472, 6,249,008, 6,538,413, 6,039,258, 6, 491,223) held by Honeywell. Code asserts that Honeywell's potential recovery from this action is

small because two of the asserted patents expired before the filing of the complaint (the '413 Patent and the '223 Patent), because a third expired before Code's answer to the complaint (the ''008 Patent), because a fourth expires on July 17, 2017 (the '258 Patent), and because Code redesigned the CR2600 to distinguish it from Honeywell's '128 Patent and '472 Patent promptly upon service of the complaint. (Dkt. Nos. 38 ¶¶ 208-13, 52 at 4.) Honeywell's true purpose in bringing this action, according to Code, is as a pretense to disparage Code with false statements and to interfere with Code's contractual relationships with its customers, thereby driving Code from the market. (Dkt. Nos. 38 ¶¶ 214-36, 52 at 4.)

Honeywell filed an amended complaint on April 14, 2017 and Code filed an amended answer on April 27, 2017. On May 11, 2017, Honeywell moved to dismiss Code's counterclaims and to strike certain of Code's affirmative defenses. Honeywell argues the amended answer fails to provide a sufficient factual basis for those counterclaims and affirmative defenses.

## II. Legal Standard

### A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.... Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A

complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**\*2** The standard for ruling on a motion to dismiss a counterclaim is the same as the standard for ruling on a motion to dismiss a claim. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

**B. Motion to Strike**
Rule 12(f) of the Federal Rules of Civil Procedure permits striking an "insufficient defense" from a pleading. To grant a Rule 12(f) motion, the court must determine that the challenged allegations are "so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (2d ed. 1990)). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.' " *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001) (quoting *id.).* "Traditionally, it imposes a sizable burden on the movant, and courts typically strike defenses only when they have no possible relation to the controversy." *Lopez v. Asmar's Mediterranean Food, Inc.,* Civ. No. 1:10-1218, 2011 WL 98573, at \*1 (E.D. Va. Jan. 10, 2011) (citation and internal quotation marks omitted). "Nevertheless, a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Waste Mgmt. Holdings,* 252 F.3d at 347 (internal quotation marks omitted). "[W]henever granted, the defendant should generally be given leave to amend." *Palmer v. Oakland Farms, Inc.,* Civ. No. 5:10-29, 2010 WL 2605179, at \*2 (W.D. Va. June 24, 2010).

**III. Discussion**

**A. Invalidity and Non-Infringement Counterclaims**
To survive a motion to dismiss, a complaint (or counterclaim) must "show"—not merely "state"—that the pleader is entitled to relief. *Iqbal,* 556 U.S. at 678. Entitlement to relief is shown by alleging facts sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Honeywell argues Code's invalidity and non-infringement counterclaims fail to meet that standard (and that *Twombly* and *Iqbal* provide the pleading standard

for affirmative defenses and that Code's invalidity and non-infringement affirmative defenses likewise fail to meet that standard). The counterclaims state

> 252. The Code Corporation does not infringe and has not infringed, literally or by the doctrine of equivalents, any valid and enforceable claim of the '258, '008, '223, '413, '128, and '472 patents, either directly, contributorily, by inducement, jointly, or in any other manner.
>
> ...
>
> 254. On information and belief, each and every claim of the '258, '008, '223, '413, '128, and '472 patents is invalid for failure to comply with the conditions and requirements for patentability specified in, but not limited to, 35 U.S.C. §§ 101-103, 111-113, and 116 in effect at the time the patent issued.

(Dkt. No. 38 at 48.) Those isolated statements indeed are conclusory, but the amended answer provides ample factual support for Code's counterclaims. In its 52-page amended answer, Code provides extensive factual allegations regarding its bar code scanner technology and Honeywell's claims regarding that technology. (Dkt. No. 38 ¶¶ 161-213.)

**\*3** Honeywell's objection appears to regard not the adequacy of Code's factual allegations but rather the adequacy of the presentation of the legal theory supporting Code's counterclaims. (*See* Dkt. No. 51 at 6 ("Indeed, the seven sections of the Patent Act that Code has recited in its invalidity counterclaim set out more than twelve distinct legal bases for rendering a patent invalid, but Honeywell—and the Court —are left to guess at which, if any, actually form the basis of Code's claim." (footnote omitted)).) Failure to provide the legal basis for a claim, however, is not a basis for a motion to dismiss. *Twombly* and *Iqbal* "concern the *factual* allegations a complaint must contain to survive a motion to dismiss." *Johnson v. City of Shelby, Miss.,* 135 S. Ct. 346, 347 (2014) (emphasis in original). A pleader is not required to provide a perfect "statement of the legal theory supporting the claim asserted." *Id.* at 346. In *Johnson,* the Supreme Court held the *Twombly* and *Iqbal* standard satisfied where plaintiffs "stated simply, concisely, and directly events that, they alleged, entitled them to damages" even though they did not cite the appropriate statute at all. *Id.* at 347. That reasoning applies equally where a claimant purportedly cites too many statutes.

The adequacy of the factual allegations in the amended answer is a sufficient cause to deny Honeywell's motion as to Code's invalidity and non-infringement counterclaims. But even if, *arguendo,* Code's invalidity and non-infringement counterclaims were examined as standalone statements, "after *Twombly* and *Iqbal,* courts have upheld such pleadings as sufficient" in patent cases where the parties are required to make early disclosure of infringement and invalidity contentions. *Wistron Corp. v. Phillip M. Adams & Assocs., LLC,* No. C-10-4458 EMC, 2011 WL 1654466, at *11 (N.D. Cal. Apr. 28, 2011).* This is because early disclosure of invalidity and infringement contentions satisfies the purpose of *Twombly* and *Iqbal* "to weed out frivolous litigation where insufficient facts are alleged to form the basis for a claim." *In re S. Tex. Oil Co.,* No. 09-52433-C, 2010 WL 1903750, at *2 (Bankr. W.D. Tex. May 10, 2010)* (spelling error corrected). In this case, the parties are required to make early disclosure of infringement and invalidity contentions. After service of the amended answer but before the present motion to dismiss, Honeywell and Code jointly moved for scheduling and discovery orders that require Honeywell to provide details of its infringement contentions by May 15, 2017, Code to provide details of its invalidity contentions by July 31, 2017, and both parties to exchange preliminary claim constructions by August 18, 2017. (Dkt. Nos. 42 & 43.)

Honeywell argues that early disclosure does not affect the pleading standard applicable to Code's counterclaims because the cases holding early disclosure of invalidity and infringement contentions satisfies the purpose of *Twombly* and *Iqbal* generally are from districts having local patent rules developed to deal with heavy patent-litigation caseloads, and those cases reason that requiring a more fulsome factual statement in initial pleadings would circumvent those local rules. (*See* Dkt. No. 53 at 2-4.) According to Honeywell, those cases are inapposite because this District has no local patent rules and, even if it did, " '[u]sing local patent rules to alter a defendant's pleading obligations, while perhaps practical given the very unique nature of federal patent litigation, offends the trans-substantive character of federal procedure,' and that 'even when local patent rules are adopted, they cannot modify a defendant's pleading standard for counterclaims under the national rules.' " (*Id.* at 2 (quoting *RAH Color Techs. LLC v. Ricoh USA Inc.,* 194 F. Supp. 3d 346, 351 (E.D. Pa. 2016).)

While there are no local patent rules in this District, there is an order in this case—an order for which Honeywell jointly moved after service of the amended answer—requiring

early disclosure of invalidity contentions. (Dkt. No. 50.) The logic of cases holding that a heightened pleading standard would circumvent local patent rules requiring early disclosure applies even more persuasively where applying that standard on a motion to dismiss would circumvent an early-disclosure order that the movant agreed to. Even if local patent rules cannot modify a defendant's pleading standard for counterclaims, the parties certainly can agree to relax the pleading standard. Here, the parties agreed Code would provide Honeywell a statement of its invalidity contentions that is far beyond what is required by *Twombly* and *Iqbal* (*see* Dkt. No. 43 (describing the level of detail required in disclosure of invalidity contentions)), but that Code would do so about ten weeks after the service of the amended answer. If Honeywell felt it needed more details about Code's invalidity contentions by April 14th (when the amended answer was filed) then it should not have moved the Court to order disclosure of those details by July 31st.

**\*4** Indeed, given that Honeywell agreed to disclosure of Code's invalidity contentions in July, the Court struggles to imagine what purpose the motion to dismiss Code's invalidity counterclaim serves. It is especially difficult to imagine a valid purpose because the Court has granted leave to amend the complaint and the answer any time before September 18, 2017 so long as the amended pleading asserts no new patents. (Dkt. No. 50.) Honeywell agreed to that as well. (Dkt. No. 42.) So even if the Court were to grant Honeywell's motion, Honeywell *has already agreed* that Code may reassert its invalidity counterclaim simply by pasting its July 31st disclosures into an amended answer. That is equally true of Code's non-infringement counterclaim—Honeywell has agreed Code may reassert the counterclaim after receiving Honeywell's infringement contentions and after preliminary claim construction. (Dkt. No. 50.)

The Court therefore denies Honeywell's motion to dismiss Code's invalidity and non-infringement counterclaims.

**B. State Law and Lanham Act Counterclaims**

Code asserts counterclaims for injurious falsehood and tortious interference under Utah and South Carolina law, based on Honeywell's post-suit communications about its claims of infringement against Code. (Dkt. No. 38 ¶¶ 215-36.) Honeywell argues the Patent Act preempts these state-law counterclaims. The Federal Circuit has held that "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about

potential litigation." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.,* 362 F.3d 1367, 1374 (Fed. Cir. 2004). Preemption occurs because

> "A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers." Accordingly, a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction. *Va. Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 869 (Fed. Cir. 1997); *see also Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal."). The federal patent laws thus bar state-law liability for communications concerning alleged infringement so long as those communications are not made in "bad faith."

*Id.* at 1374-75 (parallel citations and subsequent history omitted). In this context, "bad faith" is an objective standard. To avoid preemption, the infringement claim must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 1376 (citing *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60 (1993)). It is insufficient merely to allege that "a subjective expectation of success does not motivate the litigant." *Id.* at 1375.

Code concedes that "[h]ad Honeywell limited its conduct to notifying The Code Corporation's customers about their potential infringement and warning about possible litigation, then The Code Corporation's state law claims might well be preempted." (Dkt. No. 52 at 20.) But Honeywell, according to Code, went further and included assertions about Code's viability, like telling Code's customers that this lawsuit would "bury Code" and "put Code out of business." (Dkt. No. 38 ¶¶ 235-36.) Code argues preemption is inapplicable because Honeywell's conduct extends beyond the scope of *Globetrotter.*

Code's argument is persuasive. Preemption applies only where communications made by a patentee "make its rights known to a potential infringer." *See Globetrotter,* 362 F.3d at 1374. Comments about Code's viability as a going concern and the economic impact of a patent suit on Code have nothing to do with Honeywell's patent rights, and so the

Patent Act does not preempt state laws that may make those comments actionable.

**\*5** Code also asserts a counterclaim under section 43 of the Lanham Act, alleging Honeywell made false statements of fact in commercial advertisements about Code. (Dkt. No. 38 ¶¶ 269-74.) Honeywell argues Code's Lanham Act counterclaim is barred by the *Noerr-Pemington* doctrine, which protects parties engaged in activity incidental to the First Amendment right to petition the government for redress, including litigation and, in some instances, demand letters. *See Allied Tube & Conduit Corp. v. Indian Head,* 486 U.S. 492, 499 (1988); *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510-11 (1972). That argument fails for the same reason Honeywell's preemption argument fails— Code alleges conduct unrelated to Honeywell's patent rights. If Honeywell merely notified Code's customers of patent infringement and warned of possible legal action, then a Lanham Act counterclaim might well be barred. But the *Noerr-Pemington* doctrine does not immunize knowingly making false statements to a competitor's customers that a pending lawsuit will put the competitor out of business, which is what Code alleges Honeywell has done here.

## C. Affirmative Defenses

Honeywell argues that the *Twombly* and *Iqbal* standard for pleading claims also applies to affirmative defenses and that, because the amended answer does not meet that standard regarding five of Code's affirmative defenses, those affirmative defenses should be struck under Rule 12(f) of the Federal Rules of Civil Procedure. Before considering that argument, the Court finds that even under *Twombly* and *Iqbal,* two of the challenged affirmative defenses— invalidity and non-infringement—are adequately pleaded for the reasons given above regarding the nearly identically worded invalidity and non-infringement counterclaims. The issue of what pleading standard therefore applies only to three affirmative defenses: contractual limitation of damages; laches, waiver, and estoppel; and failure to mark.

Rule 8(b)(1)(A) of the Federal Rules of Civil Procedure provides that "a party must ... state in short and plain terms its defenses to each claim asserted against it" and Rule 8(c)(1) provides that "a party must affirmatively state any avoidance or affirmative defense." One court in this Circuit has noted

To date, no appeals courts have considered whether this standard should apply to affirmative defenses as well as claims for relief. A slight majority of district courts, including those in the Fourth Circuit, have found that *Twombly/Iqbal* should apply to affirmative defenses, though a sizeable minority has found otherwise.

*Grant v. Bank of Am., N.A.,* No. 2:13-CV-342, 2014 WL 792119, at *3 (E.D. Va. Feb. 25, 2014) (internal quotation marks and citations omitted); *see also Monster Daddy LLC v. Monster Cable Prod, Inc.,* Civ. No. 6:10-1170-HMH, 2010 WL 4853661, at *7 (D.S.C. Nov. 23, 2010) ("[T]he majority of district courts that have confronted the issue have concluded that affirmative defenses are subject to the heightened pleading requirements enunciated in *Twombly* and *Iqbal*."). The "recent trend," however, is "finding the *Twombly-Iqbal* standard inapplicable to affirmative defenses." *Cohen v. SunTrust Mortg., Inc.,* Civ. No. 3:16-2513-CMC, 2017 WL 1173581, at *3 (D.S.C. Mar. 30, 2017); *compare Baron v. Directv, LLC,* No. CV JKB-16-3145, 2017 WL 68688, at *1 (D. Md. Jan. 6, 2017) ("The Court reaffirms its earlier holding that a defendant's affirmative defenses need not be pleaded according to the *Iqbal-Twombly* standard.") *with Bradshaw v. Hilco Receivables, LLC,* 725 F. Supp. 2d 532, 536 (D. Md. 2010) ("This Court agrees with the reasoning employed by the courts that have applied the [*Iqbal-Twombly*] plausibility standard to affirmative defenses.").

Decisions of the District of South Carolina on this issue are split. *Compare Cohen,* 2017 WL 1173581, at *3 *with Monster Daddy,* 2010 WL 4853661, at *7. In the more recent *Cohen* case, Judge Cameron McGowan Currie found compelling the reasoning of the Middle District of Florida in *Ability Hous. of Ne. Florida, Inc. v. City of Jacksonville,* No. 3:15-CV-1380-J-32PDB, 2016 WL 816586, at *1 (M.D. Fla. Mar. 2, 2016). 2017 WL 1173581. *In Ability Housing,*

the district court reasoned that *Twombly* and *Iqbal* should not apply to affirmative defenses for two reasons: "First, the text of Rule 8 does not support the extension. Whereas its pleading provision uses 'showing,' its response and affirmative-defense provisions use "state," and the analyses in *Iqbal* and *Twombly* relied on 'showing.' Second, the 21-day response period is insufficient to gather information to include supporting factual allegations." 2016 WL 816586, at *2 (adopting analysis provided in Stephen Mayer, Note, *An Implausible Standard for Affirmative Defenses,* 112 Mich. L. Rev. 275, 285-87 (2013)). This Court also finds that reasoning persuasive, and like the *Cohen* court notes that the recent trend has been against the application of *Twombly* and *Iqbal* to affirmative defenses, which is now the minority position. *See* 2017 WL 1173581, at *3; Mayer, *supra,* at 285 & n.65 (noting that "although 'a majority of early cases applied the heightened standard, this is now the minority approach' ").

**\*6** The Court therefore holds that *Twombly* and *Iqbal* do not provide the pleading standard applicable to affirmative defenses. "Prior to the Supreme Court's decisions in *Twombly* and *Iqbal,* the United States Court of Appeals for the Fourth Circuit held that general statements of affirmative defenses were sufficient provided they gave plaintiffs fair notice of the defense." *Francisco v. Verizon S., Inc.,* Civ. No. 3:09-737, 2010 WL 2990159, at *6 (E.D. Va. July 29, 2010) (citing *Clem v. Corbeau,* 98 Fed.Appx. 197, 203 (4th Cir. 2004)). The amended answer's general statements of Code's affirmative defenses provide Honeywell fair notice of Code's defenses. The Court therefore denies the motion to strike Code's contractual limitation of damages, laches, waiver, and estoppel, and failure to mark affirmative defenses.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to dismiss Defendant's counterclaims and to strike in part Defendant's affirmative defenses (Dkt. No. 51).

## AND IT IS SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2017 WL 2537235

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3473928
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

ROLAND CORPORATION, a
Japanese Corporation, Plaintiff,

v.

INMUSICBRANDS, INC., a
Florida Corporation, Defendant.

Case No.: 2:16–cv–06256–CBM–AJWx
|
Signed 04/05/2017

**Attorneys and Law Firms**

Victor De Gyarfas, Sandeep Deol, Foley and Lardner LLP, Los Angeles, CA, for Plaintiff.

Gregory L. Doll, Paul M. Torres, Doll Amir and Eley LLP, Los Angeles, CA, Christine K. Bush, Pro Hac Vice, Craig M. Scott, Pro Hac Vice, Rebecca E. Briggs, Pro Hac Vice, Hinckley Allen and Snyder LLP, Providence, RI, for Defendant.

**ORDER RE: PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS AND STRIKE INVALIDITY AFFIRMATIVE DEFENSE AND DEFENDANT'S MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIM**

CONSUELO B. MARSHALL, UNITED STATES DISTRICT JUDGE

**\*1** The matters before the Court are: (1) Plaintiff Roland Corporation's ("Plaintiff's") Motion to Dismiss Amended Counterclaims and Strike Invalidity Affirmative Defense (Dkt. No. 46); and (2) Defendant inMusic Brands, Inc.'s ("Defendant's") Motion For Leave To File Second Amended Counterclaim (Dkt. No. 52).

## I. BACKGROUND

This is a patent infringement action brought by Plaintiff based on Defendant's alleged infringement of eight patents related to electronic musical instruments (collectively, the "Asserted Patents"). On January 26, 2017, the Court granted Plaintiff's

motion to dismiss Defendant's counterclaims with leave to amend, and granted in part and denied in part Plaintiff's motion to strike Defendant's affirmative defenses. (Dkt. No. 40.) Defendant filed an Amended Answer to the Complaint on February 3, 2017 (the "Amended Answer"), which asserts patent invalidity as its First Affirmative Defense (the "Invalidity Defense"). (Dkt. No. 44.) The Amended Answer also includes Amended Counterclaims seeking declaratory judgment that each of the Asserted Patents is invalid (the "Amended Counterclaims"). (*Id.*)

## II. STATEMENT OF LAW

### A. Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Pursuant to the Supreme Court's decisions in *Iqbal* and *Twombly*, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts are split on whether *Iqbal* and *Twombly* apply to patent invalidity counterclaims, [1] and neither the Supreme Court nor the Ninth Circuit has issued a published opinion on the matter. Notwithstanding *Iqbal* and *Twombly*, the Ninth Circuit has stated that "allegations in a ... counterclaim may not simply recite the elements of a ... cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Fed. R. Civ. P. 12(f)

Under Rule 12(f), a court "may order stricken from any pleading any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). In determining whether to grant a motion to strike, a district court views the pleadings in a light most favorable to the non-moving party, and "resolves any doubt as to the relevance of the challenged allegations" in that party's favor. *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (9th Cir. 2002).

## C. Fed. R. Civ. P. 8(c)

**\*2** "If a party seeks to assert an affirmative defense, the party 'must affirmatively state' that defense in a responsive pleading." *Corbin v. Time Warner Entm't–Advance/Newhouse P'ship*, 821 F.3d 1069, 1079 (9th Cir. 2016).

Courts are split on whether *Iqbal* and *Twombly* apply to affirmative defenses. *See Schwarz v. Meinberg*, 2016 WL 4011716, at \*3 (C.D. Cal. July 15, 2016) (noting split). Notwithstanding *Iqbal/Twombly*, the Ninth Circuit has stated "[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (citation omitted); *see also U–Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 348 Fed.Appx. 208, 210 (9th Cir. 2009).

## III. DISCUSSION

### A. Plaintiff's Motion To Dismiss Amended Counterclaims and Defendant's Motion for Leave To File Second Amended Counterclaim

For each of the eight Asserted Patents at issue, Defendant's Amended Counterclaims alleges: "The [Asserted] Patent fails to meet statutory requirements for patentability and all of the limitations of the purported invention claimed in the [Asserted] Patent are present in prior art references, including, without limitation, [Reference 1] alone or in combination with [Reference 2],[2] that were available sufficiently prior so as to render each asserted claim of the [Asserted] Patent invalid [sic] anticipated under 36 U.S.C. § 102 or obvious under 35 U.S.C. § 103." (Amended Counterclaims ¶¶ 9, 11, 13, 15, 17, 19, 21, 23.) Defendant's allegations identify the prior art references that invalidate the claims asserted in Plaintiff's Complaint, as well as the basis of invalidity Defendant plans to assert (i.e., anticipation and obviousness). Therefore, Defendant pleads sufficient facts in its Amended Counterclaims to provide Plaintiff with fair notice of the basis of the counterclaims.[3]

Accordingly, the Court denies Plaintiff's Motion to dismiss Defendant's Amended Counterclaims. Since the Court finds Defendant's Amended Counterclaims provide Plaintiff with fair notice, the Court denies Defendant's Motion For Leave To File Second Amended Counterclaim as moot.

### B. Plaintiff's Motion To Strike Invalidity Affirmative Defense

Defendant's Invalidity Defense asserted in its Amended Answer alleges the Asserted Patents are invalid for failure to meet statutory requirements for patentability and pleads specific facts as to how the Asserted Patents are invalid as "anticipated" or "obvious" based on prior art references. (Amended Answer at 8:11–9:18.) Therefore, Defendant provides Plaintiff with fair notice of the basis of its Invalidity Defense.[4]

**\*3** Accordingly, the Court denies Plaintiff's Motion to strike Defendant's Invalidity Defense (First Affirmative Defense).

## IV. CONCLUSION

For the forgoing reasons, the Court:

(1) **DENIES** Plaintiff's Motion to Dismiss Amended Counterclaims and Strike Invalidity Affirmative Defense; and

(2) **DENIES** Defendant's Motion For Leave To File Second Amended Counterclaim **AS MOOT**.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2017 WL 3473928

## Footnotes

1    *See Sliding Door Co. v. KLS Doors, LLC*, 2013 WL 2090298, at \*4 (C.D. Cal. May 1, 2013) (noting split).

2    Reference 1 and Reference 2 refer to specific references to prior art identified by Defendant in its Amended Counterclaims.

Roland Corporation v. InMusicBrands, Inc., Not Reported in Fed. Supp. (2017)

---

3    *See, e.g., ACCO Brands USA LLC v. Hewlett–Packard Co.*, 2011 WL 11745707, at *3 (C.D. Cal. Sept. 27, 2011). *Cf. Sliding Door Co.*, 2013 WL 2090298, at *4; *Qarbon.com Inc. v. eHelp Corp*, 315 F. Supp. 2d 1046, 1049–51 (N.D. Cal. Feb. 26, 2004).

4    *See, e.g., Network Caching Tech., LLC v. Novell, Inc.*, 2001 WL 36043487, at *2 (N.D. Cal. Dec. 31, 2001). *Cf. Qarbon.com Inc.*, 315 F. Supp. 2d at 1050–51; *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 1996 WL 467273, at *3 (N.D. Cal. July 24, 1996).

---

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

2009 WL 704138
Only the Westlaw citation is currently available.
United States District Court,
E.D. Texas,
Tyler Division.

Dr. Paul TEIRSTEIN, Plaintiff,
v.
AGA MEDICAL CORPORATION, Defendant.

Civil Action No. 6:08cv14.
|
March 16, 2009.

**Attorneys and Law Firms**

David W. Carstens, Vincent Jerome Allen, Carstens & Cahoon, Anthony Joseph Magee, Grady Michael Gruber, Michael Justin Lang, Gruber Hurst Johansen & Hail LLP, Dallas, TX, Andrew Wesley Spangler, Spangler Law PC, Longview, TX, for Plaintiff.

John Michael Pickett, Young Pickett & Lee, Texarkana, TX, Kevin Shaw, Raymond A. Kurz, Robert J. Weinschenk, Hogan & Hartson, Washington, DC, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

LEONARD DAVIS, District Judge.

**\*1** The above entitled and numbered civil action was referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636. The Report and Recommendation of the Magistrate Judge (Doc. No. 46), which contains his proposed findings of fact and recommendations for the disposition of Plaintiff's Motion to Strike, Dismiss, or For a More Definite Statement and Brief in Support Thereof (Doc. No. 7), has been presented for consideration. No objections have been filed. Having carefully considered the parties' arguments, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Therefore, the Court adopts the Report and Recommendation of the United States Magistrate Judge as the findings of this Court.

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Strike, Dismiss, or For a More Definite Statement and Brief in Support Thereof (Doc. No. 7) be **DENIED.**

**So ORDERED.**

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

JOHN D. LOVE, United States Magistrate Judge.

Before the Court is Plaintiff Dr. Paul Teirstein's ("Teirstein") Motion to Strike, Dismiss, or For a More Definite Statement and Brief In Support Thereof ("Motion"). (Doc. No. 7). Defendant AGA Medical Corporation ("AGA") has filed a Response in Opposition to Plaintiff's Motion to Strike, Dismiss, or for a More Definite Statement ("Resp."). (Doc. No. 14). Additionally, Plaintiff filed a Reply to Defendant's Response in Opposition to Plaintiff's Motion to Strike, Dismiss, or for a More Definite Statement (Doc. No. 15), and Defendant filed a Sur–Reply in Opposition to Plaintiff's Motion to Strike, Dismiss, or a for More Definite Statement ("Sur–Reply"). (Doc. No. 17). Having fully considered the parties' arguments and for the reasons set forth herein, the Court **RECOMMENDS** that Plaintiff's Motion to Dismiss be **DENIED.**

## BACKGROUND

On January 15, 2008, Plaintiff Dr. Paul Teirstein ("Teirstein") filed the instant action against Defendant AGA Medical Corporation ("AGA"), alleging infringement of U.S. Patent No. 5,499, 995 ("the '995 patent"). On February 11, 2008, Defendant filed its Answer, Affirmative Defenses, and Counterclaims. (Doc. No. 5). Defendant raises five affirmative defenses and three counterclaims. On March 3, 2008, Plaintiff filed the instant Motion to Strike, Dismiss, or For a More Definite Statement and Brief In Support Thereof, arguing that 1) Defendant's second counterclaim for a declaratory judgment of invalidity of the '995 patent should be dismissed because it fails to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure;[1] 2) alternatively, the Court should require Defendant to amend its second counterclaim pursuant to Rule 12(e); 3) four of Defendant's affirmative defenses should be stricken because they are also insufficiently pled; and 4) the Court

2009 WL 704138

should require Defendant to admit or deny the allegation of paragraph 3 of the Complaint pursuant to Rule 8(b).

## *LEGAL STANDARDS*

### A. Motion to Dismiss for Failure to State a Claim

 **\*2** Dismissal pursuant to Rule 12(b)(6) is appropriate where a party fails to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, a court construes the complaint in favor of the plaintiff and takes all pleaded facts as true. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (*"Twombly"* ); *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 204 (5th Cir.2007). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 127 S.Ct. at 1965. However, such factual allegations much be specific and not mere conclusory allegations. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000). A court "will [ ] not accept as true conclusory allegations or unwarranted deductions of fact." *Id.*

### B. Motion to Strike

Rule 12(f) provides that, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Counterclaims and affirmative defenses are subject to the same pleading requirements as complaints. *Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir.1999) (noting that Rule 8 requires "all pleadings to be simple, concise, and direct"); *see also* FORM 30, ANSWER PRESENTING DEFENSES UNDER RULE 12(b), FORMS APP., FED. R. CIV. PRO. ("Form 30") (noting that counterclaims should be "[s]et forth ... in the same way a claim is pleaded in a complaint"). [2] The Fifth Circuit has explicitly acknowledged that "in some cases, merely pleading the name of the affirmative defense ... may be sufficient" to give the plaintiff fair notice of the defense being advanced. *Id.* As such, Rule 12(f) motions are generally disfavored and the challenged claim or defense should be struck only when insufficient as a matter of law. *Federal Trade Commission v. Think All Publishing, L.L.C.,* 564 F.Supp.2d 663, 665 (E.D.Tex.2008) (citing *Kaiser Aluminum & Chem. Sales,*

*Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir.1982)).

### C. Motion for a More Definite Statement

Rule 12(e) provides that, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." A Rule 12(e) motion should be assessed in light of the minimal pleading requirements of Rule 8. *Source Data Acquisition, LP v. Talbot Group, Inc.,* No. 4:07–cv–294, 2008 WL 678645, *2 (E.D.Tex. Mar.11, 2008)*. In *Source Data Acquisition,* the Court quoted the Fifth Circuit's holding that "in view of the great liberality of F.R. Civ. P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Id.* ( quoting *Mitchell v. E–Z Way Towers, Inc.,* 269 F.2d 126, 132 (5th Cir.1959)).

## *DISCUSSION*

 **\*3** Plaintiff challenges Defendant's second counterclaim for invalidity, as well as four of Defendant's five affirmative defenses. MOTION at 3–6. Plaintiff also asserts what it characterizes as a motion to strike under 8(b), where Plaintiff requests that the Court "require that Defendant admit or deny the allegation of paragraph 3 of Teirstein's Complaint." MOTION at 6. The Court will address each of these arguments in turn.

### I. Rule 12(b)(6) Motion to Dismiss Defendant's Second Counterclaim Requesting a Declaratory Judgment of Invalidity of the '995 Patent

Plaintiff argues that Defendant's second counterclaim requesting a declaratory judgment of invalidity of the '995 patent should be dismissed because it does not meet the requirements of Rule 8(a)(2). MOTION at 5. Plaintiff also asserts that Defendant has failed to put forth any factual allegations supporting this counterclaim and therefore these "conclusory allegations" fail to meet the factual pleading requirements set forth in *Twombly.* MOTION at 5–6.

Defendant responds that the "crux of Rule 8(a)(2) is [ ] whether the pleadings give an opposing party fair notice of the claim against which it must defend." RESP. at 4. Thus, Defendant contends that "AGA is not required under Rule

Teirstein v. AGA Medical Corp., Not Reported in F.Supp.2d (2009)

2009 WL 704138

8(a)(2) to plead with particularity the facts showing which prior art references invalidate the claims of the '995 patent and why" because these contentions are crystallized during discovery. RESP. at 6–7.

Rule 8(a)(2) requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the opposing party notice of what the claim is and the grounds upon which it rests. *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1356 (Fed.Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1964). In *McZeal,* the Federal Circuit considered whether the Supreme Court's decision in *Twombly* changed the pleading requirements of Rule 8(a) in actions for patent infringement and came to the conclusion that it did not. [3] *McZeal,* 501 F.3d at 1357 n. 4 ("[t]his does not suggest that *Twombly* changed the pleading requirement of Federal Rule of Civil Procedure 8"); *see also Twombly,* 127 S.Ct. at 1974 (citing favorably to *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and noting that Rule 8 does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face").

A motion to dismiss under Rule 12(b)(6) is purely procedural—not pertaining to patent law—and therefore the law of the regional circuit controls. *McZeal,* 501 F.3d at 1355–56 (citing *C & F Packing Co., Inc. v. IBP, Inc.,* 224 F.3d 1296, 1306 (Fed.Cir.2000)). Therefore, this Court will apply the law of the Fifth Circuit to the instant Motion. Counterclaims and affirmative defenses are subject to the same pleading requirements as complaints. *Woodfield,* 193 F.3d at 362 (noting that Rule 8 requires "all pleadings to be simple, concise, and direct"); *see also* FORM 30, (noting that counterclaims should be "[s]et forth ... in the same way a claim is pleaded in a complaint"). Thus, a plaintiff in a patent infringement suit is not required to delineate each claim limitation of the asserted patent and how the accused device infringes each limitation. *McZeal,* 501 F.3d at 1357. Likewise, a counterclaim for a declaratory judgment of invalidity, as asserted by Defendant here, will be sufficient under Rule 8 without detailing every facet of the factual assertions regarding invalidating prior art. Plaintiff contends that in its Answer Defendant failed "to state any facts as to why the '995 patent is invalid under the cited provisions" and further failed "to list any prior art that would invalidate the '995 patent." MOTION at 4. However, neither *Twombly,* nor Rule 8 require such assertions.

**\*4** In *Bell Atlantic v. Twombly,* the Supreme Court held that Rule 8 requires a Plaintiff to plead "only enough facts to state

a claim for relief that is plausible on its face." 127 S.Ct. at 1974. The Court affirmed that this standard requires only "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* at 1964 (citing *Conley,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80) (internal quotations omitted). While this sets forth a liberal standard, the Court went on to explain that the Federal Rules have not eliminated all fact pleading.

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests.

*Id.* at 1965 n. 3 (internal citations and quotations omitted). Thus, unlike Rule 9, detailed factual allegations are not required, yet the grounds for relief must be more than mere labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Id.* at 1964–65.[4]

Here, Defendant's counterclaim for declaratory judgment of invalidity of the '995 patent discloses that "[t]he claims of the '995 patent are invalid for failing to satisfy one or more of the statutory requirements for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112." ANSWER at 10. Defendant further asserts that "Teirstein has brought an infringement suit against AGA wrongfully alleging that AGA's products infringe and will continue to infringe the '995 patent" and that "[t]here is a justiciable controversy between Teirstein and AGA as to the matters asserted herein." *Id.* Incorporated by reference, Defendant also contends that "[t]he claims of the '995 patent are invalid and void for failing to satisfy one or more provisions of the patent laws." ANSWER at 6.

These allegations not only comprise a "short and plain statement of the claim" that, when taken as true, "show[ ] that the pleader is entitled to relief," but also give Plaintiff "fair

Teirstein v. AGA Medical Corp., Not Reported in F.Supp.2d (2009)

2009 WL 704138

notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 127 S.Ct. at 1964 (citing *Conley,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80) (internal quotations omitted). As Defendant points out, the invalidity counterclaim includes 1) an allegation of jurisdiction; 2) a statement that an actual case or controversy exists as a result of this suit; 3) a statement that the ′995 patent is invalid; 4) a list of the specific statutory provisions Defendant asserts compel invalidity; and 5) a demand for relief. RESP. at 6. These allegations are brief, but clear enough as to effectively put Plaintiff on notice of the legal and factual grounds for the asserted invalidity claims. *See, e.g., PA Advisors, LLC v. Google Inc.,* No. 2:07cv480, 2008 WL 4136426, *6 (E.D.Tex. Aug.8, 2008) (denying a motion to dismiss the complaint for patent infringement because the "specifics of how [defendant's] purportedly infringing device works is something to be determined through discovery") (internal quotations omitted); *Boldstar Technical, LLC c. Home Depot, Inc.,* 517 F.Supp.2d 1283, 1291 (S.D.Fl.2007) (denying a motion to dismiss a counterclaim for invalidity based on findings that the "allegations validly state claims that plaintiffs can reasonably be required to frame a response").

**\*5** Moreover, these allegations further comprise more than mere labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Twombly,* 127 S.Ct. at 1964–65. Defendant did not simply assert that the ′995 patent is invalid and then request relief. Defendant, instead, specifically listed the statutory provisions that compel the asserted invalidity and noted that the ′995 patent "fail[s] to satisfy one or more of the statutory requirements." ANSWER at 10. Such allegations are more than sufficient to give Plaintiff fair notice of what Defendant is claiming—invalidity of the ′995 patent—and the grounds upon which this claim rests—failing to satisfy one or more of the listed statutory provisions for patentability.

To require anything more of Defendant at the pleading stage would be to impose a higher burden on Defendant's claim for invalidity than Plaintiff's claim for infringement. Yet, these pleading standards are identical. *See, e.g., Woodfield,* 193 F.3d at 362 (noting that Rule 8 requires "all pleadings to be simple, concise, and direct"); *see also* FORM 30 (noting that counterclaims should be "[s]et forth ... in the same way a claim is pleaded in a complaint"). The Federal Rules do not require Plaintiff to assert facts as to why the accused products allegedly infringe, nor to specifically list the accused products. Thus, to require Defendant to state facts as to why the ′995 patent is invalid or to list invalidating prior art as

Plaintiff suggests, would be to heighten the pleading standard for an invalidity counterclaim.

Furthermore, such a requirement would undermine the purpose of the Court's Local Patent Rules. *See* LOCAL RULES, APP. M, "RULES OF PRACTICE FOR PATENT CASES" ("P.R."). During the early stages of the litigation, the Local Patent Rules require parties to serve Invalidity Contentions, which detail anticipating and obviating prior art; disclose grounds for indefiniteness; and include a claim chart regarding invalidity. P.R. 3–3. The factual allegations which Plaintiff suggests are missing from Defendant's counterclaim include the same information that the Patent Rules require parties to disclose in the Invalidity Contentions. Requiring such allegations to be included in the pleadings would turn the Invalidity Contentions required by the Local Patent Rules into an exercise in futility.

The Federal Circuit has explicitly noted that "[g]iven the simplified notice pleading system [under the Federal Rules]," some courts have adopted local patent rules to address the problem of discovering particular theories of liability. *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.,* 467 F.3d 1355, 1365–66 (Fed.Cir.2006) ("The Federal Rules replaced a system in which the issues had to be conclusively defined at the outset of litigation through the pleadings, with a system that relied on discovery and pretrial hearings to gradually identify the precise issues in dispute as more information became available."). [5] This Court's Local Patent Rules require the disclosure of certain information, in addition to what is expected to be disclosed in the pleadings, in order to compel the parties to articulate their theories of the case early in litigation. *Motorola, Inc. v. Analog Devices, Inc.,* No. 1:03cv131, 2004 WL 5633735, *1 (E.D.Tex. Apr.8, 2004) ("[t]he requirement ... that a party state it preliminary infringement [and invalidity] contentions shortly after the initial case management conference is specifically designed to require parties to crystalize their theories of the case"). Thus, the requirements of this Court's Local Patent Rules lend further support to the conclusion that the detailed factual assertions Plaintiff asserts are missing are not required under the Federal Rules. [6]

**\*6** Therefore, the Court concludes that the allegations in Defendant's counterclaim for a declaratory judgment of invalidity of the ′995 patent are sufficient under Rule 8 and *Twombly,* and the appropriate vehicles for clarification of the allegations are the disclosures mandated by the Local Patent Rules and discovery conducted under the Federal Rules.

2009 WL 704138

## II. Motion for a More Definite Statement

In the alternative, Plaintiff moves for a more definite statement of the counterclaim pursuant to Rule 12(e). MOTION at 6. Rule 12(e) provides that, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Such a motion goes beyond the lack of detail of a pleading and attacks the unintelligibility of the pleading. *PA Advisors,* 2008 WL at *7 (citation omitted). For all the reasons discussed in section I, *supra,* the Court finds that the allegations in Defendant's counterclaim for a declaratory judgment of invalidity of the '995 patent are sufficient under Rule 8 and *Twombly* and are not so vague or ambiguous that Plaintiff cannot reasonably prepare a response.

## III. Rule 12(f) Motion to Strike Defendant's Affirmative Defenses

Plaintiff contends that Defendant's first, second, third, and fourth affirmative defenses are "boilerplate allegations devoid of any of the legal or factual elements necessary to support Defendant's claims." MOTION at 3. Plaintiff argues that Defendant has "failed to plead *any* facts in support of its defenses," and therefore these defenses should be striken pursuant to Rule 12(f) as insufficient in light of *Twombly* and *Woodfield.*

Defendant responds that the first affirmative defense regarding invalidity of the '995 patent is sufficient for all the reasons that the invalidity counterclaim is sufficient. RESP. at 11. Defendant further responds that the remaining affirmative defenses provide Plaintiff with fair notice of the defense being advanced, and therefore they are sufficiently pleaded under Rule 8. RESP. at 11–13.

Rule 12(f) provides that, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As previously noted, affirmative defenses are subject to the same pleading standards as complaints under Rule 8. *Woodfield,* 193 F.3d at 362 (noting that Rule 8 requires "all pleadings to be simple, concise, and direct"). The Fifth Circuit has explicitly acknowledged that "in some cases, merely pleading the name of the affirmative defense ... may be sufficient" to give the plaintiff fair notice of the defense being advanced. *Id.*

## A. Defendant's First Affirmative Defense: Invalidity

Because affirmative defenses are subject to the same pleading standards as complaints and counterclaims, the Court finds that Defendant's first affirmative defense regarding invalidity of the '995 patent is sufficient to satisfy the requirements of Rule 8 for all the reasons noted in section 1, *supra.*

## B. Defendant's Second Affirmative Defense: Prosecution History Estoppel

**\*7** Defendant's second affirmative defense asserts that, "Teirstein's claims against AGA are barred, in whole or in part, by the doctrine of prosecution history estoppel." ANSWER at 6. This doctrine "limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 493 F.3d 1368, 1377 (Fed.Cir.2007) (citation omitted). This doctrine is not a broad category of affirmative defenses, but a specific and detailed doctrine with particular and limited application. *See K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1367 (Fed.Cir.1999) ("The courts have ... develop [ed] an array of legal limitations, formulations, and tests regarding the application of the doctrine of equivalents.... For example, prosecution history estoppel will exclude from the doctrine of equivalents any subject matter that was, by amendment or argument during prosecution, relinquished."). Because prosecution history estoppel has a particular and limited application, the Court cannot say that Defendant's third affirmative defense is insufficient as a matter of law. The allegations in Defendant's Answer are all that is necessary to put Plaintiff on fair notice of the defense being advanced such that Plaintiff may prepare a response. *Woodfield,* 193 F.3d at 362 (noting that "in some cases, merely pleading the name of the affirmative defense ... may be sufficient" to give the plaintiff fair notice of the defense being advanced).

## C. Defendant's Third Affirmative Defense: Laches and/or Equitable Estoppel

Plaintiff argues that "Defendant suggests no facts to support its broad assertions of estoppel or laches." MOTION at 5. However, as Defendant points out, Defendant admits a number of facts in its Answer that directly relate to this affirmative defense. RESP. at 12–13. On November 2, 2004, AGA admits it received an email from Teirstein claiming that AGA infringed the '995 patent and offering a license. ANSWER, ¶ 13. AGA further adds:

Teirstein v. AGA Medical Corp., Not Reported in F.Supp.2d (2009)

2009 WL 704138

> AGA admits that Teirstein ... sent more than one letter to AGA .. alleging infringement of the '995 patent, and that AGA ... sent more than one letter to Teirstein ... apprising Teirstein of the specific reasons why Teirstein's allegations of infringement were baseless. Upon information and belief, AGA ... responded to all of the letters received from Teirstein .. alleging infringement of the '995 patent. Upon information and belief, the last communication to or from Teirstein ... regarding the '995 patent was a letter dated August 23, 2006, sent by AGA's attorneys to Teirstein's attorneys, which maintained that Teirstein's allegations of infringement were baseless and that AGA would seek costs, attorneys' fees, and any other available sanctions if required to defend against Teirstein's baseless allegations in court.

*Id.,* ¶ 14. These allegations show that a delay of over three years passed between the time that Teirstein knew of AGA's allegedly infringing activities and the time that Teirstein filed suit.

**\*8** As Plaintiff points out, a successful claim of laches or equitable estoppel requires many elements. *See* REPLY at 8. However, at the pleading stage, the burden is far less; Defendant need only meet the requirements of Rule 8. The alleged facts go directly to the delay which is the basis for Defendant's laches and equitable estoppel affirmative defense. *See Twombly,* 127 S.Ct. at 1974 (noting that Rule 8 does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face").

Given that Rule 12(f) motions are generally disfavored and the challenged claim or defense should be struck only when insufficient as a matter of law, *Think All Publishing,* 564 F.Supp.2d at 665, the Court cannot say that Defendant's third affirmative defense is insufficient as a matter of law. Moreover, taking into account the factual assertions in

Defendant's Answer, Plaintiff is put on fair notice not only of the defense being advanced, but also of the factual allegations at the basis for that defense. *McZeal,* 501 F.3d at 1356 (noting that Rule 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the opposing party notice of what the claim is and the grounds upon which it rests). This is all that is necessary to put Plaintiff on fair notice of the defense being alleged such that Plaintiff may prepare a response.

### D. Defendant's Fourth Affirmative Defense: Section 287

Finally, Plaintiff asserts that Defendant's fourth affirmative defense "fails to disclose any facts relating to 35 U.S.C. § 287 which would bar recovery of damages." MOTION at 5. Section 287 sets forth a number of provisions regarding limitations on damages recoverable for infringement of an asserted patent. As Defendant points out, the communications between Teirstein and AGA related to the asserted patent are potentially relevant to a limitation on Teirstein's damages pursuant to section 287. Further, as Defendant points out, more particularized allegations regarding limited Teirstein's damages are not possible at this point in the litigation, as Teirstein has not provided any details regarding his damages. As with the previous section, the Court cannot say that Defendant's fourth affirmative defense is insufficient as a matter of law.

### IV. Motion to Strike under Rule 8(b)

Finally, Plaintiff argues that "Defendant fails to admit or deny the allegation in Paragraph 3 of Teirstein's Complaint" and asserts that "the [C]ourt should require that Defendant admit or deny the allegation." MOTION at 6. Defendant asserts that "[a]lthough AGA's direct response to paragraph 3 does not admit or deny the allegations contained therein, other portions of its Answer demonstrate AGA's admission that this is a patent infringement action." RESP. at 14.

While Defendant contends it has "effectively" admitted the allegations in other portions of its Answer, the Court notes that Rule 8(b)(6) is applicable here as well. This Rule provides, "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Thus, even if Defendant's "effective" admittance is disregarded, the allegations are deemed admitted because Defendant was required to file an Answer and the allegations were not denied.

2009 WL 704138

## CONCLUSION

**\*9** For all the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Strike, Dismiss, or For a More Definite Statement and Brief In Support Thereof be **DENIED.** Within ten (10) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten (10) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996).

**So ORDERED and SIGNED this 13th day of February, 2009.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 704138

## Footnotes

1    All further references are to the Federal Rules of Civil Procedure, unless otherwise noted.

2    The forms set forth in the appendices to the Federal Rules meet the requirements of Rule 8. Fed.R.Civ.P. 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."); *see also Twombly,* 127 S.Ct. 1977 (pointing to Form 9 as illustrating the "pleading paradigm under the new Federal Rules").

3    *McZeal* involved a *pro se* plaintiff. *See McZeal,* 501 F.3d at 1356 ("Where, as here, a party appeared *pro se* before the trial court, the reviewing court may grant the *pro se* litigant leeway on procedural matters, such as pleading requirements .").

4    The Court also retired the "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," while noting that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." 127 S.Ct. at 1968–69.

5    In *O2 Micro,* the Federal Circuit was focusing specifically on the local patent rules adopted by the Northern District of California, the district which this Court's Local Patent Rules were originally patterned after. *Computer Acceleration Corp. v. Microsoft Corp.,* 503 F.Supp.2d 819, 821 (E.D.Tex.2007) ("the Eastern District of Texas unanimously adopted the 'Rules of Practice for Patent Cases,' patterned after local rules adopted by the United States District Court for the Northern District of California"). Thus, the point is applicable here, as well.

6    Additionally, this Court has adopted a Discovery Order which mandates disclosure of "the legal theories and, in general, the factual bases of the disclosing party's claims or defenses" within thirty days after the Scheduling Conference, (Doc. No. 25), further supporting the conclusion that pleadings serve the purpose of notifying opposing parties of claims, while discovery and pretrial hearings narrowed the issues and legal theories for trial. *See O2 Micro,* 467 F.3d at 1365–66.

---

**End of Document**                                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 3413862
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

TEVA PHARMACEUTICAL INDUSTRIES, LTD.,
Teva Pharmaceuticals USA, Inc., Plaintiffs,

v.

APOTEX, INC., Apotex Corp., Defendants.

Civ. No. 07–5514 (GEB)(JJH).
|
Aug. 8, 2008.

**Attorneys and Law Firms**

Mayra Velez Tarantino, Michael E. Patunas, Lite, Depalma, Greenberg & Rivas, LLC, Newark, NJ, for Plaintiffs.

Eric I. Abraham, Hill Wallack, LLP, Princeton, NJ, for Defendants.

**MEMORANDUM OPINION**

BROWN, Chief Judge.

**\*1** This matter comes before the court upon the motion of plaintiffs Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals Inc's (collectively "Teva") to dismiss the ninth, eleventh, twelfth and thirteenth counterclaims of defendants Apotex, Inc. and Apotex Corp. (collectively "Apotex"), or in the alternative for a more definite statement (Docket No. 18). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338 and 2201. The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court will grant in part and deny in part Teva's motion to dismiss. The Court will also deny Teva's alternative motion for a more definite statement.

**I. BACKGROUND**

On November 15, 2007, Teva filed suit against Apotex alleging that Apotex infringed three of Teva's patents: US Patent Nos. 6,699,997 ("the '997 Patent"); 6,710,184 ("the '184 Patent"); 7,126,008 ("the '008 Patent"); and 7,056,942 ("the '942 Patent," collectively the "Patents in Suit"). (Compl.¶ 35.) The patents relate to processes for

the preparation of carvedilol, the active pharmaceutical ingredient in COREG®, a product sold by GlaxoSmithKline for the treatment of congestive heart failure. (*Id.* ¶ 18.)

On February 21, 2008, Apotex filed an Amended Answer, Affirmative Defenses and Counterclaims (hereinafter "Amended Answer"). The following counterclaims are at issue in this motion: (1) Apotex's ninth counterclaims for a declaration that the Patents in Suit are unenforceable due to alleged inequitable conduct by Teva in securing them; (2) Apotex's eleventh counterclaim for a violation of Section 2 of the Sherman Act; (3) Apotex's twelfth counterclaim for unfair competition; and (4) Apotex's thirteenth counterclaim for tortious interference with a prospective economic advantage.

**II. DISCUSSION**

**A. Motion to Dismiss Standard**
A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, —— – ——, 127 S.Ct. 1955, 1965–66, 167 L.Ed.2d 929 (2007) (abrogating the *Conley* standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. *Id. at 1965.* However, in light of *Twombly,* the Third Circuit has held that "[i]t remains an acceptable statement of the standard, for example that courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief'." *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) (citations omitted). The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir.1997) (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

**\*2** Federal Rule of Civil Procedure 12(e) permits a defendant to make a motion for a more definite statement "[i]f a pleading ... is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading." FED.R.CIV.P. 12(e). Such a motion "shall point out the defects complained of and the details desired." *Id.* The Third Circuit has stated that when a complaint does not provide a

defendant with notice of the facts underlying the plaintiff's claims, a "Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying [the] plaintiff's claim for relief." *Thomas v. Independence Twp.,* 463 F.3d 285, 301 (3d Cir.2006). However, whether to grant such a motion is soundly within the district court's discretion. *Clark v. McDonald's Corp.,* 213 F.R.D. 198, 232 (D.N.J.2003).

### B. Ninth Counterclaim: Declaration of Unenforceability

Abbott's counterclaim for a declaration of unenforceability is based upon the alleged inequitable conduct by Teva before the U.S. Patent and Trademark Office ("USPTO") with regards to the '997, '008 and '942 Patents. Apotex alleges that Teva did not disclose certain material documents to the USPTO, namely "any of the English language counterparts of EP 0 127 099, including U.S. Patent No. 5,01,868, U.S. Patent No. 4,985,454, U.S. Patent No. 4,824,963, and U.S. Patent No. 4,297,022." (Am. Answer ¶ 66–75.)

Teva argues that Apotex has not sufficiently alleged inequitable conduct under the heightened pleading standard of Rule 9(b). Teva contends that the USPTO examiner discovered the allegedly withheld documents and that "[a]s a matter of law, if allegedly material information is before the examiner, whether disclosed by the party or raised by the examiner on his own, the party cannot be guilty of inequitable conduct for withholding that information." (Teva Br. at 13.)

Apotex does not dispute the fact that the examiner discovered the allegedly withheld documents. However, Apotex disagrees with Teva as to the law, stating that "the fact that an intentionally withheld, material reference was independently discovered by a patent examiner does not, as a matter of law, absolve an applicant from a charge of inequitable conduct." (Apotex Br. at 16.) Apotex also argues that its "pleadings with respect to its Ninth Counterclaim for inequitable conduct meet the pleading standard of Rule 9(b) because they disclose the names of the relevant withheld prior art and the act of the alleged fraud." (*Id.* at 20.)

Teva replies that Apotex mischaracterizes the present state of the law. Specifically, Teva argues that the primary case relied upon by Apotex is no longer controlling in light of revised USPTO regulations and in any event, is distinguishable from the present case. (Teva Reply Br. at 11.)

The Court agrees with Teva.

In *Scripps Clinic & Res. Found. v. Genentech, Inc.,* 927 F.2d 1565, 1582 (Fed.Cir.1991), the Federal Circuit stated that "[w]hen a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it can not be deemed to have been withheld from the examiner." *See also Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1185 (Fed.Cir.1995) (following *Scripps* ). At least one court in this District has noted this ruling is "consistent with the amended Rule 1.56, which states that '[T]he duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office.' " *Boehringer Ingelheim Vetmedica, Inc. v. Schering–Plough Corp.,* 106 F.Supp.2d 667, 691 n. 13 (D.N.J.2000) (holding that "the penalty accompanying a successful defense of inequitable conduct is not warranted where the processes of the USPTO has not been transgressed, such as where the prior art is otherwise before the USPTO") (*quoting* 37 C.F.R. § 1.56(a) (1992)).

**\*3** Although Apotex urges the Court to hold that *A.B. Dick Co. v. Burroughs Corp.,* 798 F.2d 1392 (Fed.Cir.1986) is controlling, the Court declines to do so. The Federal Circuit in *A.B. Dick* rejected the argument that the failure to disclose certain materials to the examiner was immaterial due to the fact that the Examiner had subsequently found the undisclosed materials. In so ruling, the Federal Circuit relied, in part, upon an old version of 37 C.F.R. § 1.56(a) regarding the duty of candor owed to the USPTO. The old rule, as relied upon by the *A.B. Dick* court, stated that practitioners had a duty to "disclose to the Office information they are aware of which is material to the examination of the application." *A.B. Dick,* 798 F.2d at 1397. However, the current rule, which went into effect in January of 1992 and governs the patents in suit, states in relevant part as follows:

> The duty to disclose all information known to be material to patentability is deemed to be satisfied if, all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b) -(d) and 1.98.

37 C.F.R. § 1.56(a). Thus, the Court concludes that the reasoning of the *A.B. Dick* court is not controlling here and that Apotex's allegations do not make out a violation of the duty to disclose. [1]

Apotex also contends that "the policies underlying the law of inequitable conduct and the duty of candor indicate that this court should follow *A.B. Dick.*" (Apotex Br. at 18.) More specifically, Apotex argues that "the inequitable conduct inquiry should not turn on the search skills of a particular Examiner." (*Id.*) The Court rejects this argument as it is contrary to the policies explicitly set forth in 37 C.F.R. § 1.56(a) and in the *Scripps* and *Molins* opinions.

It is undisputed that the document allegedly withheld by Teva was found by the examiner. Therefore, in light of the fact that the alleged failure to disclose the English language counterparts of EP 0 127 099 is the only basis for Apotex's inequitable conduct counterclaim, the Court concludes that Apotex's inequitable conduct counterclaim should be dismissed with prejudice.

### C. Eleventh Counterclaim: Violation of Sherman Act 15 U.S.C. § 2—Monopolization and Attempted Monopolization

#### 1. The Noerr–Pennington Doctrine

Usually under the Noerr–Pennington Doctrine, patent infringement litigation is immune from attack under the antitrust laws. *Prof. Real Estate Investors v. Columbia Pictures,* 508 U.S. 49, 56, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (*"PRE "* ); *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1068 (Fed.Cir.1998). However, antitrust immunity may be lost under certain circumstances, including where the litigation is deemed a "sham." *PRE,* 508 U.S. at 60; *Nobelpharma,* 141 F.3d at 1068. The Supreme Court has provided a "two-part definition of 'sham' litigation":

> **\*4** First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised

on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process-as opposed to the outcome of that process-as an anticompetitive weapon.

*PRE,* 508 U.S. at 60–61 (internal quotations and citations omitted). A suit is not objectively baseless if there is probable cause to sue. *Id.* at 62 ("The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation."). "Probable cause ... requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Id.* at 62–63.

#### a. Parties' Arguments

Teva argues that Apotex has not properly alleged any facts under which Teva would lose its antitrust immunity. Specifically, Teva claims that its immunity from the antitrust laws can only be lost if its conduct constitutes one of the (1) so-called *Walker Process* fraud; (2) sham litigation; or (3) tying of the patented product to the sale of a non-patented product. (Teva Br. at 3.) Teva argues that there is no allegation of tying and that Apotex allegations are insufficient to support a claim of either the *Walker Process* fraud or sham litigation exceptions. (Teva Br. at 3–8.)

Apotex concedes that it is not alleging a *Walker Process* fraud claim. (Apotex Br. at 6 ("nowhere does Apotex's Amended Answer allege Walker–Process fraud").) Similarly, Apotex does not contend that there are any tying arrangements here. (*Id.* at 4–13.) Instead, Apotex argues that it has alleged "several other reasons why Plaintiffs do not benefit from antitrust immunity." (*Id.* at 6.) These reasons include: (1) that Teva has "asserted [the '008] patent[, which] they know to be invalid"; (2) and that Teva has "asserted [the '942] patent without a good faith belief of infringement"; and (3) "[f]inally ... the 'sham litigation' exception .... that this litigation is objectively baseless and conceals an attempt to

interfere with Apotex's business relationships." (*Id.* at 6–7.) Apotex argues that the litigation is objectively baseless with respect to all the Patents in Suit because "Plaintiffs admit that they have not assessed infringement of any of the asserted patents" and because "Apotex has ... alleged that these patents are invalid." (*Id.* at 7.) Apotex also contends that its inequitable conduct claims demonstrate that the claims are objectively unreasonable. (*Id.*)

**\*5** In its reply brief, Teva contends that Apotex's "several other reasons" are, in fact, all " 'sham' litigation claims governed by the Supreme Court's decision in" *PRE.* (Teva Reply Br. at 2.) Teva argues that Apotex's Section 2 claim must fail "because it has not alleged sufficient facts to show that Teva's lawsuit is objectively baseless." (*Id.* at 3.)[2] Specifically, Teva argues that Apotex makes only "bare legal conclusions" with one exception: Apotex's allegation that "Teva has not obtained and tested samples of the product." (*Id.* at 4; Am. Answer ¶ 91.) Teva argues that this fact is not controlling because, in its Complaint, Teva states that it was unable to obtain Apotex's API or process information and therefore was unable to test Apotex's API to determine infringement. Moreover, Teva contends that as a matter of law, the fact that it did not perform tests on Apotex's product is, by itself, insufficient to show that the suit is "objectively baseless." (*Id.*) Teva also argues that Apotex has only provided specific facts regarding the alleged invalidity of the '008 Patent and that "Apotex's bare allegation that the other patents-in-suit are invalid cannot support a 'sham' litigation claim ." (*Id.* at 6.) Finally, Teva claims that the inequitable conduct allegations, which this Court dismissed above, are "not a sufficient basis on which to assert an antitrust claim." (*Id.*)

### b. The Courts' Analysis

As an initial matter, the Court agrees with Teva that Apotex's antitrust counterclaims are all "sham" litigation claims governed by the Supreme Court's decision in *PRE.* Here, Federal Circuit law makes clear that allegations that a suit to enforce a patent was brought "with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes" is "sham" litigation. *C.R. Bard, Inc. v. M3 Systems, Inc.,* 157 F.3d 1340, 1368 (Fed.Cir.1998).[3] Thus, to the extent Apotex contends that *PRE* does not control its claims that Teva asserted "a patent they know to be invalid" and "a patent without a good faith belief of infringement," the Court disagrees.

### (1) The ʹ942 Patent

Apotex alleges that Teva asserted the ʹ942 Patent without a good faith belief that Apotex was infringing. Specifically, Apotex alleges that Plaintiffs "did not obtain and test samples of Apotex's products in order to determine whether those products infringe" the ʹ942 patent. (Am. Answer ¶ 91.) Teva's Complaint confirms that it did not obtain and test samples. (Compl. ¶ 30.) Apotex also states that "[b]y filing this lawsuit ... without conducting a basic pre-filing investigation to determine whether Apotex's products infringe this patent, Plaintiffs have asserted a patent without a good faith belief of infringement." (Am. Answer ¶ 92.) Even assuming these facts to be true, the Court cannot conclude, on the basis of these facts alone, that Teva sued without a good faith belief of infringement of the ʹ942 Patent. Apotex does not allege facts that if true, would support a finding that Teva had knowledge of non-infringement. *See C.R. Bard,* 157 F.3d at 1368 ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with *knowledge* that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes.") (emphasis added). Moreover, Apotex cites no authority that would support a conclusion that a suit is "objectively baseless" simply because Teva did not perform tests on Apotex's product. Therefore, the Court concludes that Apotex has not alleged facts sufficient to make it plausible, on this ground, that the assertion of the ʹ942 Patent is "objectively baseless."

### (2) The ʹ008 Patent

**\*6** Next, the Court concludes that Apotex does allege sufficient facts that, if true, would support a finding that Teva's assertion of the ʹ008 Patent is objectively baseless. More specifically, Apotex alleges facts that would support a finding that Teva is asserting the ʹ008 patent despite knowing that it is invalid. Apotex alleges that the ʹ008 Patent claims a process for preparing carvedilol comprising a step of reacting an epoxide ("Formula II") with an amine ("Formula III") "wherein the compound of formula III and the compound of formula II are at a molar ratio from about 1.5:1 to about 100:1." (Am. Answer ¶ 84.) Apotex alleges that the ʹ008 patent is invalid due to prior art ("the Lienert Patent") that discloses a process for preparing carvedilol using an amine:epoxide molar ratio of 2:1, well within the range claimed by the ʹ008 patent. (*Id.* ¶¶ 84–89.) Apotex alleges that Teva knows of the invalidity because Teva prosecuted

the '997 patent, which is the parent to the '008 patent.[4] (*Id.*) Apotex alleges that during the prosecution of the '997 patent, Teva amended the '997 patent, limiting the molar ratio range claimed therein to "from about 2.8:1 to about 10:1" so as to avoid the Lienert Patent. (*Id.*) Assuming these facts as true, and construing them in the light most favorable to the Apotex, the Court concludes that the Amended Answer alleges facts sufficient to support the claim that Teva asserted a patent that it knew was invalid. Other courts have found allegations of known invalidity in similar contexts to be sufficient to satisfy the objective prong of the *PRE* at the motion to dismiss stage. *See, e.g., Knoll Pharms. Co. Inc. v. Teva Pharms. USA, Inc.,* No. 01 C 1646, 2001 WL 1001117, at * 4 (N.D.Ill. Aug.24, 2001) (finding that objectively baseless prong is met where defendant in patent suit alleged that, before plaintiff filed suit, defendant sent a letter in which it notified plaintiff that the patents were invalid and unenforceable); *In re Cardizem CD Antitrust Litig.,* 105 F.Supp.2d 618, 643–44 (E.D.Mich.2000) (denying motion to dismiss antitrust claim on Noerr–Pennington grounds where claimant alleged that patent did not represent a substantive change or improvement over prior patents, but rather was prosecuted solely as a basis for litigation to delay and exclude claimant from the market).[5] Thus, at this stage of the litigation, the Court concludes that Apotex satisfies the objective prong of the test for sham litigation.

The presumption of validity that applies to an issued patent does not save Teva's motion. Although the assertion of a duly granted patent is presumed to be made in good faith, *C.R. Bard,* 157 F.3d at 1369, the presumption of validity is an evidentiary burden that can be rebutted. 35 U.S.C. § 282 ("A patent shall be presumed valid.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity"); *Asahi Glass Co., Ltd. v. Pentech Pharms., Inc.,* 289 F.Supp.2d 986, 992–93 (N.D.Ill.2003) ("the presumption of validity ... attaches to an issued patent [and] entitle [s the patentee] to defend the patent's validity in court, to sue alleged infringers, and to settle with them, whatever its private doubts, unless a neutral observer would reasonably think either that the patent was almost certain to be declared invalid, or the defendants were almost certain to be found not to have infringed it, if the suit went to judgment."). Thus, at the motion to dismiss stage, it is not controlling as to the objective prong of the *PRE* test. *Morton Grove Pharms., Inc. v. Par Pharm. Companies, Inc.,* No. 04 C 7007, 2006 WL 850873, at * 11 (N.D.Ill. March 28, 2006) (rejecting argument that presumption of validity

required dismissal of sham litigation antitrust claim on motion to dismiss).

**\*7** For these reasons the Court declines to dismiss the allegations regarding the '008 Patent on Noerr–Pennington grounds.[6]

### (3) The Remaining Patents

As to the other Patents in Suit, there are no facts alleged in the Amended Answer to support a finding that Teva's assertion of these patents is objectively baseless. Apotex provides no support, and the Court can find none, for a conclusion that a suit is objectively baseless merely because the patents would be found invalid or not infringed. *See In re Covad Communications Co. v. Bell Atlantic Corp.,* 398 F.3d 666, 677 (Fed.Cir.2005) (holding that the fact that a plaintiff's case was dismissed at summary judgment had no bearing on the question of whether the litigation was "objectively meritless"); *C.R. Bard,* 157 F.3d at 1368 ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with *knowledge* that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes.") (emphasis added). Therefore, the Court cannot conclude that the Complaint alleges facts that could plausibly demonstrate that the assertion of the remaining patents is objectively baseless due to invalidity.

Finally, in light of the fact that the Court is dismissing Apotex's inequitable conduct claims, the Court rejects Apotex's argument that Teva's suit is "objectively baseless" because of Apotex's allegations of inequitable conduct. (Apotex Br. at 7.)

For the foregoing reasons, the Court will dismiss the antitrust counterclaims to the extent they concern patents other than the '008 patent.

### 2. Sherman Act Section 2

Although Apotex alleged sufficient facts to survive, at least in part, Teva's NoerrPennington based argument, Apotex must still allege the elements of a *Section 2* claim. *PRE,* 508 U.S. at 61 ("Of course, even a plaintiff who defeats the defendant's claim to Noerr immunity by ... must still prove a substantive antitrust violation.") *see also Brotech Corp.,* White Eagle Int'l Tech. Group, Inc., No. Civ.A. 03–232, 2003 WL 22797730, at *4–5 (E.D.Pa. Nov.18, 2003) (denying dismissal of attempted

monopolization counterclaim based upon Noerr–Pennington doctrine, but dismissing counterclaim for failure to properly plead the relevant market). The Court concludes that Apotex has not done so. Section 2 provides as follows:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2. Apotex asserts both an attempted monopolization claim and a monopolization claim. Under Third Circuit law, to state a claim for monopolization, a party must allege facts sufficient to show: (1) the possession of monopoly power in a relevant market; and (2) willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident. *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 437 (3d Cir.1997). [7] To state a claim for attempted monopolization, a party must allege facts sufficient to show: (1) predatory or anticompetitive conduct; (2) specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. *Id.* at 442.

#### a. Parties Arguments

**\*8** Teva argues that Apotex has not pled facts sufficient to "satisfy the elements of a claim of monopolization and/or attempted monopolization." (Teva Br. at 8.) Specifically, Teva argues that Apotex has not sufficiently pled a relevant market. Additionally, with respect to the monopoly claim, Teva claims that Apotex has not pled monopoly power. With respect to the attempted monopoly claim, Teva claims that Apotex has not alleged facts sufficient to support a finding of specific intent or dangerous probability of success to monopolize. (*Id.* at 8– 11.)

Apotex, on the other hand, argues that it has "specifically identified the specific market that Plaintiffs are monopolizing, has described in detail the strategies Plaintiffs purposely employ in order to perpetuate this monopolization scheme, and has alleged that Plaintiffs have effectively executed these strategies and are doing so again." (Apotex Br. at 8.) Apotex accuses Teva of misrepresenting its allegations and claims that the relevant market is identified in Amended Answer as "the market for the active pharmaceutical ingredient carvedilol." (*Id.* at 8–12.) Moreover, Apotex argues that its "explanation of Plaintiffs' business, Plaintiffs' patent acquisition strategy, and exactly how Plaintiffs purposely used these patents in an anticompetitive manner to produce litigation that they use to force manufacturers of generic carvedilol product to purchase the API for those products from Plaintiffs" constitutes a sufficient allegation of Teva's specific intent and dangerous probability of success. (*Id.* at 12.) Apotex does not appear to address Teva's argument regarding the lack of market power allegations.

In its reply, Teva contends that with respect to relevant market allegations, "the Amended Answer is hopelessly vague and conflicting with respect to the relevant product market." (Teva Reply Br. at 7.) Moreover, Teva argues that the opposition brief cannot serve to amend the pleadings so as to clarify the relevant market allegations. (*Id.* at 7–8.) Teva also argues that even if the relevant product market was clearly identified in the pleadings, it is still "deficient because it fails to address interchangeability, cross-elasticity of demand, or any related factors such as price, use, or qualities." (*Id.* at 8.) With respect to the specific intent to monopolize and dangerous probability of success, Teva argues that "[i]t simply does not follow that ... Teva's business, patent acquisition strategy, and lawsuits result in either actual market power, a specific intent to monopolize, or a dangerous probability of success of monopolization." (Teva Reply Br. at 9.)

#### 3. Court's Analysis

The Amended Answer is plainly deficient in its allegations regarding the Section 2 claim. The Court agrees with Teva that the relevant market allegations are conflicting and variable. In fact, the Amended Answer refers at times to the "market for generic carvedilol products" (Am. Answer ¶¶ 94, 96, 98, 99, 100), at times to the "market for the active pharmaceutical ingredient carvedilol") (*Id.* ¶ 108) and at other times to the "market for carvedilol" (*Id.* ¶¶ 107, 109, 110). In any event, the relevant market allegations are deficient because Apotex "fails to define its proposed relevant market with reference to

the rule of reasonable interchangeability and cross-elasticity of demand." *Queen City Pizza,* 124 F.3d at 436. Moreover, Teva is correct that Apotex's brief cannot serve to amend its pleadings. *Com. of Pa. ex rel. Zimmerman v. PepsiCo., Inc.,* 836 F.2d 173, 181 (3d Cir.1988).

**\*9** The Amended Answer is deficient for the additional reason that it contains no allegations regarding market power; Apotex does not even address the issue in its opposition brief. Additionally, without proper relevant market or market power allegations, the Court cannot find anticompetitive conduct, because "[i]n order to determine whether there is a dangerous probability of monopolization, a court must inquire 'into the relevant product and geographic market and the defendant's economic power in that market.' " *Queen City Pizza,* 124 F.3d at 442 (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 459, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993)). For these reasons, the Court will dismiss the Section 2 counterclaims without prejudice.

### D. Twelfth Counterclaim: Unfair Competition
Teva argues that Noerr–Pennington immunity bars Apotex's claim for unfair competition. For the reasons discussed in the Noerr–Pennington section above, the court will dismiss, without prejudice, the unfair competition claim to the extent that it concerns the assertion of patents other than the '008 patent. Teva does not argue that the Amended Answer fails to allege fact to support the elements of an unfair competition claim. (Teva Br. at 13–14; Teva Reply Br. at 13.)

### E. Thirteenth Counterclaim: Tortious Interference With Prospective Economic Advantage
Teva argues that Noerr–Pennington immunity bars the state claim for tortious interference with prospective economic advantage. (Teva Br. at 14.) For the reasons discussed in the Noerr–Pennington section above, the court will dismiss without prejudice the tortious interference claim to the extent that it concerns the assertion of patents other than the '008 patent.

Teva also argues that Apotex does not state a claim because it "has completely failed to allege facts concerning the nature of the relationship(s) with which Teva has supposedly interfered, or that Apotex has been harmed by the alleged interference." (Teva Br. at 15.) Apotex argues that it has satisfied the pleading standard and that it "is not required to name, in its pleading, a specific prospective or continuing business relationship with which Plaintiff

interfered." (Apotex Br. at 16.) In its reply brief, Teva does not argue that Apotex must allege a specific relationship. (Teva Reply Br. at 13–14.) Instead, Teva argues that the Amended Answer fails under Rule 8(a) "to place Teva on notice of the charges against it, and permit it to file an accurate answer to these charges." (*Id.* at 14.)

The Court concludes that the Amended Answer's claim for tortious interference is sufficient under Rule 8(a). Apotex alleges that it "has a continuing, economically advantageous relationship for the supply of carvedilol for use in its carvedilol products." (Am. Answer ¶ 116.) This Court agrees with those recent opinions from this District that conclude that Rule 8(a) does not require a party to identify a specific prospective customer or contract. *See Slim CD, Inc. v. Heartland Payment Sys., Inc.,* No. 06–2256, 2007 WL 2459349, at \*4 (D.N.J. Aug.24, 2007); *Syncsort Inc. v. Innovative Routines Int'l, Inc.,* No. Civ. 04–3623, 2005 WL 1076043, at \*12 (D.N.J. May 6, 2005). Apotex further alleges that "Plaintiffs have knowingly interfered with this relationship by filing lawsuits for the purpose of barring others from beginning or continuing to supply carvedilol." (*Id.* ¶ 117.) Thus, Apotex concludes that Teva has "intentionally interfered with Apotex's present and future business interests with respect to making and selling products containing carvedilol in the United States, including Apotex's ability to realize an economic advantage therefrom." (*Id.* ¶ 119.) The Court concludes that these allegations are sufficient to provide Teva with fair notice of the claim and the grounds on which it is based. *See, e.g., Kanter v. Barella,* 489 F.3d 170 (3d Cir.2007) ("Notice pleading requires a plaintiff to provide the opponent with fair notice of a claim and the grounds on which that claim is based.").

### F. Stay
**\*10** Although Apotex's counterclaims for unfair competition and tortious interference with prospective economic advantage survive, in part, the present motion, the Court will exercise its discretion pursuant to Federal Rule of Civil Procedure 42(b) and stay any discovery, motion practice or trial concerning these counterclaims until resolution of the Teva's patent claims. *See* 8 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 42.20[5][a] (3d ed.2008) (courts have broad discretion to bifurcate claims and may act sua sponte); *Rodin Properties–Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.,* 49 F.Supp.2d 709, 721 (D.N.J.1999) ("[t]he decision ... to try [a claim] separately is left to the discretion of the trial court"). [8] The

stay here will avoid a potential waste of party and judicial resources. Therefore, to the extent they survive the present motion, Apotex's counterclaims for unfair competition and tortious interference with prospective economic advantage are stayed.

## III. CONCLUSION

For the foregoing reasons, Teva's motion to dismiss is granted in part and denied in part. Apotex's ninth counterclaim is dismissed with prejudice. Apotex's eleventh counterclaim is dismissed without prejudice. Apotex's twelfth and thirteenth counterclaims are dismissed without prejudice, except to the extent they concern the enforcement of patents other than the '008 patent. To the extent the twelfth and thirteenth counterclaims are not dismissed, they are stayed. Additionally, the Court, in its discretion, declines to grant Teva's alternative motion for a more definite statement. An appropriate form of order is filed herewith.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 3413862

## Footnotes

1   For the same reason, the Court will not conclude that *A.B. Dick* directly conflicts with *Scripps* or *Molins PLC.* Without a direct conflict, Apotex's argument that a Federal Circuit "panel is obligated to follow the earlier ruling" must fail. *See Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 765 (Fed.Cir.1998) ("Where there is direct conflict, the precedential decision is the first. Even if all comments in the decision considered here are not completely harmonious, Newell points to no actual conflict, and we see none.").

2   Teva does not argue that the claims fail the second part of the *PRE* test. Therefore, the Court need not examine the Teva's subjective motivation for bringing suit on this motion.

3   Federal Circuit law, as opposed to Third Circuit law, controls "whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws." *Nobelpharma AB v. Implant Innovation, Inc.,* 141 F.3d 1059, 1068 (Fed.Cir.1998).

4   Teva's knowledge is relevant to the "objectively baseless" inquiry because it is goes to whether Teva had "a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *PRE* 508 U.S. at 62–63; *see also C.R. Bard,* 157 F.3d at 1368 ("Conduct prohibited under antitrust law includes bringing suit to enforce a patent with *knowledge* that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes.") (emphasis added).

5   Teva's citation to *Viva Optique, Inc. v. Contour Optik, Inc.,* No. 03 Civ. 8948(LTS)(AJP), 2007 WL 4302729, at *2 (S.D.N.Y. Dec. 7, 2007) is unhelpful because in that case, Plaintiffs claim for a declaration of invalidity had previously been dismissed and the complaint was "bereft of any factual allegation that would support a finding that the patent infringement claims ... are objectively baseless." (Teva Br. at 7.) Here, invalidity is still contested and the complaint contains sufficient factual allegations with respect to the objective prong of the *PRE* test.

6   As noted above (*see* footnote 2, *supra* ), Teva does not contend that the allegations would fail under the subjective prong of the *PRE* test.

7   Unlike the determination of antitrust immunity, the substantive aspects of the antitrust counterclaims are controlled by Third Circuit law. *See Nobelpharma,* 141 F.3d at 1068.

8   Rule 42(b) states, in pertinent part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED.R.CIV.P. 42(b).

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.