# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

| | |
|---|---|
| TRUTEK CORP.,<br>Plaintiff,<br><br>v.<br><br>BlueWillow Biologics, Inc.<br>ROBIN ROE 1 through 10, gender neutral fictitious names, and ABC CORPORATION 1 through 10 (fictitious names).<br><br>Defendants. | CIVIL ACTION No. 2:21-cv-10312 |

## **DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

I, Amirali Y. Haidri, being of full age, do hereby state and declare as follows:

1. I am a citizen of the United States.

2. I earned my Bachelor of Science degree in chemical engineering from the University of Leeds in England in 1971. I graduated with honors.

3. I earned my Juris Doctorate from New York Law School in 1980. I graduated *cum laude* in the upper 15% of my class.

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

4. I earned my Master of Science degree in organic chemistry from New York University in 1983. As part of the curriculum, I received training in biochemistry.

5. I am licensed to practice as an attorney in both New Jersey and New York.

6. I am licensed to practice as a Patent Attorney before the United States Patent and Trademark Office ("USPTO"). In order to practice before this federal agency, one is required to have a university education in a USPTO approved field of science, to have knowledge of the law related to patents, and to pass a rigorous examination (often referred to as the "Patent Bar Exam."). Chemistry is a field of science that satisfies USPTO requirements. Having the approved science background is a minimum requirement for an applicant to even to sit for the examination.

7. My resume is attached hereto as Exhibit A.

8. On September 5, 2019, I filed a lawsuit[1] in the District of New Jersey on behalf of the Plaintiff, Trutek Corp. ("Trutek") in this matter, against another defendant, Matrixx Initiatives, Inc., for infringement of U.S. Patent No. 8,163,802 ("the '802 Patent"). This is the same patent that is at issue in the current lawsuit against Defendant, BlueWillow Biologics, Inc. ("BlueWillow"). The lawsuit against Matrixx Initiatives, Inc. was settled sometime around November 25, 2020.

---

[1] Trutek Corp. v. Matrixx Initiatives, Inc., DNJ Civil Case No. 3:19-cv-17647-BRM-ZNQ-PHV

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

9. Based on my work on the Matrixx lawsuit, I became very familiar with the specification and claims of the '802 Patent. Also, based on my educational background in physics, organic chemistry, polymer chemistry, biochemistry, and chemical engineering, I am very familiar with the technology associated with the invention disclosed and claimed in the '802 Patent.

10. On June 28, 2022, I was asked by counsel for Plaintiff Trutek Corp. to review an expert report titled, "Opening Expert Report Of Mansoor M. Amiji, Ph.D. On Invalidity." ("Amiji Opening Report.") The Amiji Opening Report was filed previously by Defendant as ECF 56-2. After reading the report, I expressed disagreement with all of the opinions proffered by Dr. Amiji. I was then asked to generate a rebuttal expert report. The rebuttal expert report ("Haidri Rebuttal Report") The Haidri Rebuttal Report was filed previously by Defendant as ECF 56-3..

11. The Amiji Opening Report alleged that the claims of the '802 Patent at issue in this lawsuit are invalid under 35 U.S.C. §§ 101, 112 and also are anticipated and obvious under 35 U.S.C. §§ 102, 103, respectively.

12. In his Opening Report, Dr. Amiji provided legal opinions on patent law, even though he is neither an attorney licensed in any state nor is he licensed to practice before the USPTO. Having read his reports as well as his deposition testimony, it is my opinion that Dr. Amiji does not display an adequate understanding of the statutes, rules, and official procedures upon which his opinions are based.

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

13. The Amiji Opening Report opined on the qualifications of a person having ordinary skill in the art ("PHOSITA")[2] as, "someone who had at least an M.S. degree in chemical engineering, pharmaceutical sciences, or a related field (or the equivalent) with several years of experience with pharmaceutical formulation." (ECF 56-2, pg. 28, ¶68.) This court rejected Dr. Amiji's position in favor of Plaintiff's definition as a person having earned an undergraduate degree, and who has a basic chemistry and physics background with experience as a pharmaceutical formulator. (ECF 53, pp. 2, 8-10.)

14. While preparing this declaration, I read the deposition transcript of Dr. Amiji's testimony taken on October 14, 2022. Dr. Amiji said that he considers himself to be a person of ordinary skill in the art. (Depo. Amiji 81:22 - 82:8.) Dr. Amiji's deposition[3] has been uploaded as ECF 61-3..

15. It is crucial to be clear as to who is a PHOSITA, because if the wrong individual is designated as such, the determination of enablement under 35 U.S.C. § 112 is improper. If the wrong individual is chosen as the PHOSITA, the determination of obviousness under 35 U.S.C. § 103 is improper.

16. 35 U.S.C. 112(a) (or pre-AIA 35 U.S.C. § 112, first paragraph) requires that the written description of the invention must be "**...** in such full, clear, concise, and exact terms as <u>to enable</u> any person skilled in the art **...** to make and use the same." The specification of the '802 Patent provides

---

[2] PHOSITA is an acronym for **P**erson **H**aving **O**rdinary **S**kill **I**n **T**he **A**rt.
[3] Some text on pages 78-79 was redacted at defense counsel's request.

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

ten working embodiments. Any competent pharmaceutical or chemical formulator can create a formulation from any of these embodiments as long as the ingredient concentrations fall within the designated percent ranges. An example of such a formulation, derived from the tenth embodiment, was presented to this court during the Markman hearing, and is shown in ECF 51-1, pg 20. The concentration of the ingredients may be varied as long as the amount or water in the formulation is adjusted to bring the total concentration to 100%. It is astounding that someone of Dr. Amiji's qualifications could not figure out how to prepare this example formulation using only the '802 Patent as a guide.

17. In his opening report, Dr. Amiji says, "the '802 Patent does not provide any examples that include the results of any testing of any of the disclosed formulations, let alone any guidance as to what types of tests should be conducted in order to determine whether a particular formulation would "operate in the manner" disclosed, e.g., by electrostatically inhibiting harmful particulate matter from infecting an individual through nasal inhalation." (ECF 56-2, pg. 104, ¶226.) Test results are not required for enablement. According to 35 U.S.C. § 112, a PHOSITA must merely be able to prepare the formulations (*i.e.,* " to make and use the same"). The formulator must perform his or her own experiments to test for efficacy. He or she will then adjust the ingredient concentrations to arrive at the desired efficacy. Thus, the PHOSITA has sufficient information to allow him or her to make and use the invention.

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

18. In Dr. Amiji's Opening Report (ECF 56-2), Sections IX (beginning on pg. 44), X (beginning on pg. 58), and XI beginning on (pg. 74), he opines that the claims at issue of the '802 Patent are invalid over prior patent references. However, he does not state the standard that he uses to establish invalidity. The three sets of opinions fall under the general category of "Anticipation and Obviousness." (*Id.* at pg. 44.) The "anticipation statute" (*i.e.,* 35 U.S.C. § 102) requires that a single reference must teach every element of a claim in order to anticipate the claim. Dr. Amiji agrees with this conclusion. (Depo. Amiji, 54:7-12.) He also agrees that "for a claim to be obvious over prior art, in Section 103, a combination of prior art references must be used to encompass every element of the claim." (*Id.* at 54:13 - 55:13.) However, when asked, "if a <u>single prior art reference</u> does not encompass every element of the claim, that claim cannot be invalid over that single prior art reference alone" (*Id.* at 55:14[4]). he answered, "only under the anticipation argument, but it can certainly be invalid based on the obviousness argument" (*Id.* at 55:19). This is contrary to the legal obviousness standard under 35 U.S.C. § 103. Dr. Amiji does not understand the law.

19. When Dr. Amiji opined that the claims at issue of the '802 Patent are invalid over prior art references "alone," he did not say whether they are invalid as anticipated (under § 102) or obvious (under §103). His opinions are thus vague and ambiguous with regard to this issue. Based on Dr. Amiji's misunderstanding of the correct standards for anticipation and

---

[4] Emphasis added.

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

obviousness (stated by him in his deposition at 55:19), the Defendant failed to show, by clear and convincing evidence, that the claims are invalid based on the anticipation standard.

20. 35 U.S.C. § 103 states:

> *A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention wea made.*

To invalidate a claim under § 103, one may combine two or more prior art references if and only if it would have been obvious to a PHOSITA as of the effective filing date to combine those references, **and** that said combination encompasses every element of the claim. Thus, the Defendant has the burden of proof to show that a person of <u>ordinary skill</u> would have found it obvious to combine the references. The mindset of a person of <u>extraordinary skill should not be employed</u>. However, as argued *supra,* Dr. Amiji considers himself to be a person of ordinary skill. This Court did not agree with Dr. Amiji's definition. Thus, the wrong standard was utilized to establish obviousness of the claims over the prior art. Therefore, the Defendant failed to prove, by clear and convincing evidence, that the claims of the '802 Patent are obvious over the cited prior art references.

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

21. Regarding Dr. Amiji's opinion that the claims at issue of the '802 Patent lack credible utility as required under 35 U.S.C. § 101, he misunderstands the requirements once again. Here, Dr. Amiji states:

> *... while the '802 patent does provide a laundry list of possible formulations, it does not include any data or test results for any of the formulations described, demonstrating to a person skilled in the art that there is a substantial likelihood that the claimed invention will work by "electrostatically attracting" particulate matter to a thin film applied to the nasal passages and holding the particulate matter in place through adhesion to the thin film in order to electrostatically inhibit such harmful particulate matter from infecting an individual. Nor does the '802 patent even provide any discussion or suggestion of what types of tests or procedures could be employed by a person skilled in the art to determine whether such formulations would work as described and claimed. Finally, the '802 patent also does not include any explanation or suggestion that the claimed invention is likely to work based on any similarities or analogies to other compositions or formulations that are known to work in a similar manner.* (ECF 56-2, pg. 99, ¶214.)

As argued *supra*, neither data nor test results has ever been required as a condition for patenting an invention. Patents on inventions are regularly obtained that were constructively reduced to practice and yet not reduced to actual practice prior to the effective filing date of the patent application. Also, demonstration to a PHOSITA that the invention will work as described is not a requirement of § 101. Nowhere in § 101 is a PHOSITA even mentioned. 35 U.S.C. § 101 requires that an invention be new and useful. The question to be answered is whether a method or formulation that inhibits infection in a person via inhalation of harmful

Page 8 of 11

particles would be useful. Whether a PHOSITA is able to make and use the invention is a matter to be dealt with in 35 U.S.C. § 112.

22. Regarding his opinion that the claims at issue of the '802 Patent are invalid for being directed to ineligible subject matter under 35 U.S.C. § 101 (ECF 56-2, pg. 95), Dr. Amiji once again misunderstood the issue. There is a two-pronged test for subject matter eligibility. First, one must evaluate whether the claim is directed to a process, machine, manufacture or composition of matter. If the claimed invention falls into one of those four categories, then the second prong is examined. The courts have interpreted the statutory categories to exclude laws of nature, natural phenomena, and abstract ideas. Thus, a patent cannot be obtained on Albert Einstein's famous useful equation, $E = mc^2$, because it represents a law of nature. However, a patent may be obtained for a nuclear reactor, which is a man-made manufactured item that uses this law of nature. A patent cannot be obtained for a newly discovered plant found growing in a forest. However, a patent may be obtained for a formulation in which an extract from that plant is an ingredient. All patented inventions utilize laws of nature in some manner, but do not claim the law of nature itself.

23. Claim 1 of the '802 Patent recites a method (*i.e.,* a process). Claims 2, 6, and 7 recite a formulation (*i.e.,* both a manufacture and a composition of matter). Thus, the claims at issue pass the first prong of the subject matter eligibility test of § 101. The formulation of claims 1, 2, 6, and 7 all contain a cationic agent, which establishes a positive electrostatic field

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

that attracts negatively charged harmful particles. Contrary to Dr. Amiji's assertion (ECF 56-2, pg. 95, ¶202), the '802 Patent does not claim the natural law of electrostatic attraction and repulsion itself. It merely utilizes this phenomenon, as is permitted under § 101. Thus, the second prong of the subject matter eligibility test is passed.

24. In the same ¶202, Dr. Amiji alleged that, "challenged claims of the '802 patent recite additional elements, each of those additional claim elements are either conventional steps that are well known to a POSA[5] or depend on the very same law of nature or natural phenomena." Virtually all formulations that are subject to patentability use known ingredients. Virtually all patentable processes utilize known conventional steps. Patentability arises from the unique combination of ingredients or conventional steps.

25. Notwithstanding my arguments *supra*, my expert report (ECF 56-3) serves as a rebuttal to all of the opinions proffered by Dr. Amiji in his expert report (ECF 56-2). My report provides detailed rebuttals to all of his opinions. Based on the allegations of invalidity made by Defendant's sole expert, it should be apparent that the Defendant failed to prove invalidity of the claims of the '802 Patent with clear and convincing evidence.

---

[5] POSA is Dr. Amiji's acronym for **P**erson of **O**rdinary **S**kill in the **A**rt. It is has the same meaning as PHOSITA, which is used by me in this declaration.

**DECLARATION OF AMIRALI Y. HAIDRI, ESQ.**

26. I understand that if any of my statements are knowingly false, I am subject to pains and penalties of perjury under the laws of the United States.

Dated: __March 29, 2023__

_____
Amirali Y. Haidri, Esq.

# EXHIBIT A
Resume of Amirali Y. Haidri, Esq.

**AMIRALI Y. HAIDRI**
110 HILLSIDE AVENUE, SUITE 104
SPRINGFIELD, NEW JERSEY 07081-3007
(908) 688-8700
E-MAIL AMIRALI Y HAIDRI@AOL.COM

| | |
|---|---|
| BAR ADMISSIONS: | NEW YORK (1981), NEW JERSEY(1983) AND U.S. PATENT AND TRADEMARK OFFICE (REG. NO. 29,164) U.S. DISTRICT COURTS FOR THE DISTRICT OF NEW JERSEY AND THE SOUTHERN DISTRICT OF NEW YORK CERTIFIED AS A CIVIL TRIAL ATTORNEY BY THE SUPREME COURT OF NEW JERSEY |
| MARTINDALE-HUBBELL RATING: | BV (DISTINGUISHED) |
| LISTED IN: | MARQUIS WHO'S WHO IN AMERICAN LAW |
| EDUCATION: | NEW YORK UNIVERSITY M.S. 1983 ORGANIC CHEMISTRY |
| | NEW YORK LAW SCHOOL J.D. 1980 CUM LAUDE CLASS RANK: UPPER 15% D. GEORGE LEVINE MEMORIAL AWARD FOR THE HIGHEST GRADE IN THE LAW OF REAL PROPERTY |
| | UNIVERSITY OF LEEDS, ENGLAND B.S. (HONS.) CHEMICAL ENGINEERING 1971 |

PUBLISHED OPINIONS:

1. *BENGALI V. HAVELIWALA*, 197 *N.J. SUPER.* 55 (CH. DIV. 1984)

2. *BENZ V. PIRES*, 269 *N.J. SUPER.* 574 (APP. DIV. 1994)

3. *WITTY V. FORTUNOFF*, 286 *N.J. SUPER.* 280 (APP. DIV. 1996)

4. *PONTIDIS V. SHAVELLI*, 296 *N.J. SUPER.* 420 (APP. DIV. 1997) (AS APPELLANT)

5. *OTCHY V. ELIZABETH BD. OF EDUC.*, 325 *N.J. SUPER.* 98 (APP. DIV. 1999), CERTIF. DENIED, 163 *N.J.* 79 (2000)

6. *COUNTRY-WIDE INS. CO. V. ALLSTATE INS. CO.*, 336 *N.J. SUPER.* 484 (APP. DIV.), *CERTIF. DENIED*, 168 *N.J.* 293 (2001)

7.* *FISCHER V. FISCHER,* 375 *N.J. SUPER.* 278 (APP. DIV.), *CERTIF. DENIED,* 183 *N.J.* 590 (2005)

1

    8.    SINGH V. SIDANA, 387 N.J. SUPER. 380 (APP. DIV. 2006), CERTIF. DENIED, 189 N.J. 428 (2007)

    9. *    DAVIDSON V. SLATER, 189 N.J. 166 (2007)

    10.*    JOHNSON V. SCACCETTI, 192 N.J. 256 (2007)

    11.*    JABLONOWSKA V. SUTHER, 195 N.J. 91 (2008)

    12.*    AGHA V. FEINER, 199 N.J. 50 (2009)

    13.*    HAND V. PHILADELPHIA INSURANCE COMPANY, 408 N.J. SUPER. 124 (APP. DIV.), CERTIF. DENIED, 200 N.J. 506 (2009)

    14.*    FERNANDEZ V. NATIONWIDE INS. CO., 199 N.J. 591 (2009)

    15.*    YOUSEF V. GENERAL DYNAMICS, 205 N.J. 543 (2011)

    16.*    GERE V. LOUIS, 209 N.J. 486 (2012)

    17.    DWYER V. CAPPELL, 762 F. 3D 275 (3D CIR. 2014)

    18.    LORI JO KONNER V. NEW YORK CITY TRANSIT AUTHORITY 143 AD 3D 774 (APP. DIV. 2D DEPT 2016), 39 N.Y.S. 3D 475 (2016)

    *RECIPIENT OF RECOGNITION AWARDS FROM THE N.J. STATE BAR ASSOCIATION

PUBLICATIONS:    "TRANSITION METAL CATALYZED SYNTHESIS GAS HOMOLOGATION OF CARBOXYLIC ACIDS," NEW YORK UNIVERSITY, MASTER OF SCIENCE THESIS, 1983

    "LIMITATIONS OF ACTION THAT GOVERN INSURANCE CLAIMS," 277 NEW JERSEY LAWYER MAGAZINE 38 (AUGUST 2012)

    "FORMALITIES: WHEN FORM MAY TRUMP SUBSTANCE," 301 NEW JERSEY LAWYER MAGAZINE 43 (AUGUST 2016)

PANEL SPEAKER:    "MEDICINE: PROOF OF PERMANENT INJURY" NJSBA ANNUAL MEETING AND CONVENTION, MAY 20, 2010, ATLANTIC CITY

    "INSURANCE COVERAGE BOOT CAMP" ICLE, JULY 15, 2010, EDISON, AUGUST 23, 2011, WEST ORANGE

    "CIVIL TRIAL UPDATE" NJSBA MID-YEAR MEETING AND CONVENTION, NOVEMBER 3, 2010, SCOTTSDALE, ARIZONA

|  |  |
|---|---|
|  | "HOT TIPS FOR HOT LITIGATORS" NJSBA ANNUAL MEETING AND CONVENTION, MAY 18, 2011, MAY 16, 2012, AND MAY 14, 2014, ATLANTIC CITY |
|  | "IMPORTANT THINGS TO KNOW ABOUT CASES WITH INTERNATIONAL IMPLICATIONS" NJSBA MID-YEAR MEETING AND CONVENTION, NOVEMBER 8, 2011, DUBLIN, IRELAND |
|  | "LAWYER ADVERTISING, SOLICITATION OF CLIENTS AND THE USE OF SOCIAL MEDIA" HUNTERDON COUNTY BAR ASSOCIATION, NOVEMBER 22, 2011, CLINTON |
|  | "WORKERS COMPENSATION BENCH-BAR CONFERENCE" NJSBA ANNUAL MEETING AND CONVENTION, MAY 18, 2012 ATLANTIC CITY |
|  | "HOT TOPICS IN PROFESSIONAL RESPONSIBILITY" NJSBA ANNUAL MEETING AND CONVENTION, MAY 15, 2013, ATLANTIC CITY |
|  | "THE EXTRATERRITORIALITY OF UNITED STATES PATENT AND TRADEMARK LEGISLATION" NJSBA MID-YEAR MEETING AND CONVENTION, NOVEMBER 7, 2014, PARIS, FRANCE |
|  | "INTERNATIONAL LAW AND INTELLECTUAL PROPERTY: SERVICE OF PROCESS AND DISCOVERY CONSIDERATIONS UNDER THE HAGUE CONVENTION AND TRANSNATIONAL ENFORCEMENT OF JUDGMENTS" NJICLE, DECEMBER 4, 2014, NEW BRUNSWICK, NEW JERSEY |
|  | "ETHICAL RELATIONSHIPS: HANDLING CONFLICTS IN CLIENT AND ATTORNEY RELATIONS" NJSBA ANNUAL MEETING AND CONVENTION, MAY 19, 2016, ATLANTIC CITY |
|  | "RECENT DEVELOPMENTS IN PROFESSIONAL RESPONSIBILITY AND ETHICS" NJSBA ANNUAL MEETING AND CONVENTION, MAY 18, 2017, ATLANTIC CITY |
|  | "AROUND THE SKY-THE LATEST IN AVIATION, *A WEBINAR*, NJ-ICLE, MAY 26, 2022, BROADCAST BY ZOOM |
| MODERATOR: | "STATUTE OF LIMITATIONS CONCERNS IN CRIMINAL CASES"- *A WEBINAR*, NJ-ICLE, JANUARY 24, 2013, BROADCAST FROM NEW BRUNSWICK |
| BAR RELATED ACTIVITIES: | MEMBER: MEMBER, LATER CHAIR, PANEL 6, SUPREME COURT COMMITTEE ON FEE ARBITRATION, DISTRICT XII (2001-2006) |
|  | MEMBER: SUPREME COURT COMMITTEE ON ATTORNEY ADVERTISING (FORMER VICE CHAIR 2018/2019) |
|  | MEMBER: SUPREME COURT ADVISORY COMMITTEE ON PROFESSIONAL ETHICS |

3

|  |  |
|---|---|
|  | TRUSTEE: NEW JERSEY STATE BAR ASSOCIATION (2007 TO 2013) |
|  | TRUSTEE: UNION COUNTY BAR ASSOCIATION (2002 TO 2013) |
|  | NEW JERSEY STATE BAR ASSOCIATION TRUSTEE LIAISON AT VARIOUS TIMES TO: CIVIL TRIAL BAR SECTION, HEALTH AND HOSPITAL LAW SECTION, INSURANCE LAW SECTION, INTELLECTUAL PROPERTY LAW SPECIAL COMMITTEE AND WOMEN IN THE PROFESSION SECTION (2007 TO 2013) |
|  | MEMBER (PAST AND PRESENT): NEW JERSEY STATE BAR ASSOCIATION, AMICUS STANDING COMMITTEE, DIVERSITY STANDING COMMITTEE, PROFESSIONAL RESPONSIBILITY STANDING COMMITTEE, APPELLATE PRACTICE SPECIAL COMMITTEE, AVIATION LAW SPECIAL COMMITTEE, INTELLECTUAL PROPERTY LAW SPECIAL COMMITTEE |
|  | MASTER: RICHARD J. HUGHES AMERICAN INN OF COURT |
|  | MASTER: JOHN C. LIFLAND AMERICAN INN OF COURT |
|  | MASTER: WILLIAM C. KONNER AMERICAN INN OF COURT |
|  | N.J. RULE 1:40 MEDIATOR |
|  | ARBITRATOR, MANDATORY NON-BINDING AUTOMOBILE AND PERSONAL INJURY ARBITRATION PROGRAMS OF THE MORRIS AND UNION COUNTY VICINAGES OF THE SUPERIOR COURT OF NEW JERSEY |
| ALUMNI RELATED ACTIVITIES: | SECOND VICE PRESIDENT, BRITISH SCHOOLS AND UNIVERSITIES CLUB OF NEW YORK (2005-2006), HONORARY SECRETARY (2011-2012) |
| EXPERIENCE: | (1988 TO PRESENT) SOLO PRACTITIONER; (1984 TO 1988) PARTNER, HAIDRI, GLAZER & KAMEL, PRIVATE PRACTICE CONCENTRATED IN PERSONAL INJURY, AND WORKERS' COMPENSATION PREDOMINANTLY FOR PLAINTIFFS AND PETITIONERS; HANDLED PERSONAL INJURY PROTECTION AND MEDICAL PROVIDERS' COLLECTION ACTIONS AND ARBITRATIONS; ACTED AS ARBITRATOR IN UNINSURED/UNDERINSURED MOTORIST CASES; HANDLED APPELLATE MATTERS. |
| DECEMBER 1982 TO JUNE 1984 | LEVER BROTHERS COMPANY<br>EDGEWATER, NEW JERSEY<br><u>PATENT ATTORNEY</u><br><br>REVIEWED AND EVALUATED PATENT DISCLOSURES. PREPARED AND FILED PATENT APPLICATIONS. ASSUMED RESPONSIBILITIES FOR THE PROSECUTION OF U.S. AND FOREIGN PATENT APPLICATIONS. PREPARED CONSULTING, SECRECY AND LICENSE |

4

|   |   |
|---|---|
| | AGREEMENTS, AS WELL AS INFRINGEMENT AND VALIDITY OPINIONS. |
| MAY 1981 TO DECEMBER 1982 | TEXACO DEVELOPMENT CORPORATION<br>WHITE PLAINS, NEW YORK<br><u>PATENT ATTORNEY</u><br><br>REVIEWED DISCLOSURES FROM INVENTORS FOR PATENTABILITY, EVALUATED SEARCHES AND DRAFTED PATENT APPLICATIONS, PROSECUTED U.S. AND FOREIGN CASES INCLUSIVE OF PREPARATION AND FILING OF AMENDMENTS, APPEALS, CONTINUATIONS AND FOREIGN OPPOSITIONS. |
| 1972 TO 1981 | HASELTINE AND LAKE<br>NEW YORK, NEW YORK<br><u>ASSOCIATE</u> AND <u>DIRECTOR</u> OF <u>TRADEMARK DEPARTMENT</u><br><br>PREPARED AND FILED TRADEMARK APPLICATIONS, OPPOSITIONS, CANCELLATIONS, LICENSING OF TECHNOLOGY AND RECORDING OF LICENSES, INFRINGEMENT, PASSING OFF AND UNFAIR COMPETITION ACTIONS. |
| 1971 TO 1972 | W.P. THOMPSON & CO.<br>LIVERPOOL, ENGLAND<br><u>ASSOCIATE</u><br><br>PRINCIPALLY SAME EXPERIENCE AS HASELTINE AND LAKE WITH EMPHASIS ON BRITISH PRACTICE, REGISTERED USER RECORDATIONS AND INCIDENTAL PATENT AND DESIGN MATTERS. |