UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUTEK CORP.,

     Plaintiff,

v.

BLUEWILLOW BIOLOGICS, INC.; ROBIN
ROE 1 through 10, gender neutral
fictitious names; and ABC
CORPORATION 1 through 10 (fictitious
names),

     Defendants.

_____ /

Case No. 21-10312

F. Kay Behm
United States District Judge

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION *IN LIMINE* (ECF No. 39)
AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (AS TO DAMAGES ISSUES) (ECF No. 59)**

In this patent infringement case, Plaintiff/Counter-Defendant Trutek Corp.

("Trutek") alleges that Defendant/Counter-Plaintiff BlueWillow Biologics

("BlueWillow") has infringed on a patent held by Trutek for an "electrostatically

charged multiacting nasal application product and method," U.S. Patent No.

8,163,802 (the "'802 Patent"). (ECF No. 1, PageID.2). Presently before the court

are: (1) BlueWillow's motion *in limine* to exclude Trutek's damages-related

theories or evidence (ECF No. 39); and (2) BlueWillow's motion for summary

judgment of no remedy (ECF No. 59).[1]  The parties have submitted written briefs

explaining their position on the issue of damages in this case.  (ECF Nos. 39, 43,

46, 59, 76, 80).  Pursuant to Local Rule 7.1(f)(2), the court will decide BlueWillow's

motion *in limine* and motion for summary judgment as to damages without a

hearing.  E.D. Mich. LR 7.1(f)(2).  For the reasons stated below, the court **GRANTS**

**IN PART** and **DENIES IN PART** BlueWillow's motion *in limine*; and **GRANTS IN**

**PART** BlueWillow's motion for summary judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    The '802 Patent and Infringement Allegations

The '802 Patent, entitled "Electrostatically Charged Multi-Acting Nasal

Application, Product, and Method," was issued by the United States Patent and

Trademark Office (USPTO) on April 24, 2012.  (ECF No. 1, PageID.2-3).  In

connection with the '802 Patent, this case involves over-the-counter products

that can be applied to users' nasal passages to inhibit harmful airborne particles

from causing infections through nasal inhalation.  *Id.*, PageID.3.  Specifically, the

---

[1] BlueWillow also moves for summary judgment of non-infringement and invalidity (*See* ECF No. 59).  As to the damages issues, BlueWillow argues that summary judgment of no damages is appropriate for the reasons stated in its motion *in limine*.  (ECF No. 59, PageID.1689).  Accordingly, the court will currently decide BlueWillow's motion for summary judgment as to the damages issues, and issue a separate opinion as to the infringement and validity issues.

products include chemical formulations whose ingredients create an electrostatic charge and "catch, hold, and kill" oppositely charged particles such as allergens and viruses.  *Id.*, PageID.3-4.  Trutek claims that the '802 Patent covers various gels and sprays, including the technology used in Trutek's NasalGuard® product line (the "patented NasalGuard products").  *Id.*, PageID.3.  Trutek further argues that BlueWillow's NanoBio® Protect Nasal Antiseptic Solution (the "accused NanoBio product") infringes on Claims 1, 2, 6, and 7 of the '802 Patent (the "asserted claims").  *Id.*, PageID.7.

 B. <u>Relevant Procedural History</u>

 Trutek filed this patent infringement case against BlueWillow on February 10, 2021, alleging that BlueWillow infringed the '802 Patent.  (ECF No. 1).  On May 19, 2021, BlueWillow filed their answer and a counterclaim for a declaratory judgment, denying that it infringed the '802 Patent and alleging that the '802 Patent is invalid.  (ECF No. 9).  On October 5, 2021, District Judge Stephen J. Murphy, III[2] granted in part and denied in part Trutek's motion to dismiss BlueWillow's counterclaims for declaratory judgment.  (ECF No. 15).  Specifically, Judge Murphy's order dismissed BlueWillow's non-infringement counterclaim but

---

[2] This case was initially before Judge Murphy, but was reassigned to the undersigned on February 6, 2023.

retained BlueWillow's invalidity counterclaim.  *Id.*  On June 2, 2022, Judge Murphy

denied Trutek's first motion for leave to amend the complaint to add an

infringement claim as to BlueWillow's developmental vaccine candidates.  (ECF

No. 32).  On November 17, 2022, Judge Murphy also denied Trutek's second

motion for leave to amend the complaint to add a willful infringement claim as to

BlueWillow's post-suit sales of the accused NanoBio product.  (ECF No. 50).

On March 29, 2022, Judge Murphy ordered the parties to attend a

mediation after the close of fact discovery to discuss the possibility of settlement.

(ECF No. 27).  The parties attended this mediation session on June 14, 2022, but

did not reach an agreement.  (*See* ECF No. 76, PageID.3179).  A hearing pursuant

to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) was held on

November 15, 2022, (*See* ECF No. 45), and on January 10, 2023, Judge Murphy

issued an order construing the disputed terms within the asserted claims of

the '802 Patent.  (ECF No. 53).

On September 26, 2022, BlueWillow filed the present motion *in limine*,

asking the court to exclude Trutek's damages-related theories or evidence under

Federal Rule of Civil Procedure 37(c)(1) and limit Trutek to zero (or alternatively

nominal) damages.  (ECF No. 39).  On March 28, 2023, BlueWillow filed the

present motion for summary judgment, asking the court to grant summary

judgment of non-infringement, no remedy, and invalidity under Federal Rule of

Civil Procedure 56.  (ECF No. 59).  The court will now address each motion in turn.

## II.    RELEVANT LEGAL STANDARDS

The Patent Act grants a patentee the right to exclude others from practicing

the patented invention.  35 U.S.C. § 154(a)(1).  Thus, "whoever without authority

makes, uses, offers to sell, [] sells" or imports any patented invention infringes the

patent.  35 U.S.C. § 271(a).  "In patent law, the fact of infringement establishes

the fact of damage because the patentee's right to exclude has been violated."

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403,

1406 (Fed. Cir. 1990).

### A.    Categories of Damages

In cases of infringement, Section 284 of the Patent Act provides that district

courts "shall award the claimant damages adequate to compensate for the

infringement but in no event less than a reasonable royalty for the use made of

the invention by the infringer."  35 U.S.C. § 284.  The statutory mandate for

district courts to award damages "adequate" to compensate for infringement is

designed to ensure that the patentee will receive "full compensation" for "any

damages" suffered as a result of infringement.  *Gen. Motors Corp. v. Devex Corp.*,

461 U.S. 648, 654-55 (1983).  To the extent the patentee cannot prove actual

damages, Section 284 sets the floor for a damages award at no less than a reasonable royalty. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989).

"Damages is the amount of loss to a patentee." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). For actual damages, this is a "but for" inquiry. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964)). Actual damages are generally determined based on the profits on sales that the patentee lost because of the infringement. *Id.* To prove entitlement to actual damages in the form of lost profits, the patentee must show there was a reasonable probability that, but for the infringement, the patentee would have made the infringing sales. *Id.* "The 'but for' inquiry therefore requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee would have made." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (quotation and alteration omitted).

A reasonable royalty may be based on an established royalty or a hypothetical negotiation analysis. *Rite-Hite*, 56 F.3d at 1554. In the absence of an established royalty, a reasonable royalty is based on the result of a hypothetical

negotiation between the patentee and the infringer at the time when the

infringement began.  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868-69 (Fed.

Cir. 2010).  "An established royalty is usually the best measure of a 'reasonable'

royalty for a given use of an invention because it removes the need to guess at

the terms to which parties would hypothetically agree."  *Monsanto Co. v.

McFarling*, 488 F.3d 973, 978-79 (Fed. Cir. 2007) (collecting cases).  "When a

hypothetical negotiation would have yielded a running royalty, the classic way to

determine the reasonable royalty amount is to multiply the royalty base, which

represents the revenue generated by the infringement, by the royalty rate, which

represents the percentage of revenue owed to the patentee."  *WhitServe, LLC v.

Comput. Packages, Inc.*, 694 F.3d 10, 27 (Fed. Cir. 2012).

     B.    <u>Burden of Proof</u>

     The amount of damages is a question of fact.  *SmithKline Diagnostics*, 926

F.2d at 1164.  The patentee has the burden of proving the amount of damages by

a preponderance of the evidence.  *Id.*  The availability of lost profits is a question

of law based on underlying factual findings.  *Micro Chem., Inc. v. Lextron, Inc.*, 318

F.3d 1119, 1122 (Fed. Cir. 2003).  As with the amount of damages, the patentee

has the burden of proving entitlement to lost profits by a preponderance of the

evidence.  *SmithKline Diagnostics*, 926 F.2d at 1165.  As distinguished from the

category of damages (e.g., lost profits or a reasonable royalty), district courts have discretion to choose the methodology (i.e., the accounting method) for calculating damages. *Micro Chem.*, 318 F.3d at 1122 (citing *SmithKline Diagnostics*, 926 F.2d at 1164 & n.2).

 "At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention." *ResQNet.com*, 594 F.3d at 869 (citing, *e.g.*, *Aro*, 377 U.S. at 507 ("[T]he present statutory rule is that only 'damages' may be recovered.")). "In patent cases, the burden of proving damages falls on the patentee, and the patentee must show his damages by evidence." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017) (quotations, alterations, and citations omitted). "Damages 'must not be left to conjecture by the jury. They must be proved, and not guessed at.'" *Id.* (quoting *Philp v. Nock*, 84 U.S. 460, 462 (1873)). "To prevent the hypothetical from lapsing into pure speculation," the Federal Circuit "requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing*, 185 F.3d at 1350. "Determining a fair and reasonable royalty is often a difficult judicial chore, seeming often to involve more the talents of a conjurer than those of a judge." *ResQNet.com*, 594

F.3d at 869 (quotation and alteration omitted). "Still, a reasonable royalty

analysis requires a court to hypothesize, not to speculate." *Id.*

## III. BACKGROUND ON DAMAGES IN THIS CASE

On October 28, 2021, the parties filed a joint discovery plan with a

proposed schedule for conducting discovery. (ECF No. 18). On November 3,

2021, the court entered a scheduling order adopting the discovery deadlines from

the joint discovery plan. (ECF No. 21). On March 23, 2022, the court granted

Trutek's motion to amend the scheduling order and extend discovery by forty-five

days. (ECF No. 26). Pursuant to that order, the close of fact discovery was moved

to May 16, 2022, the deadline for opening expert reports was moved to June 27,

2022, and the close of expert discovery was moved to November 14, 2022. *Id.*

### A. Discovery on Damages

The court's scheduling order established a late-2021 to mid-2022

timeframe for fact discovery and a mid-2022 to late-2022 timeframe for expert

discovery. *Id.* During fact discovery, each party directed discovery requests to

the damages issues. Among other discovery requests, Trutek and BlueWillow

responded to each other's interrogatories the week before the May 16, 2022

close of fact discovery. (*See* ECF No. 39, PageID.664). Although BlueWillow met

the 30-day deadline for responding to Trutek's interrogatories, Trutek did not

begin serving discovery requests on BlueWillow until April 8, 2022, five months

into court-sanctioned discovery, and five weeks before the May 16, 2022 close of

fact discovery.  While BlueWillow began serving discovery requests on Trutek on

February 18, 2022, Trutek not only missed the original 30-day deadline for

responding to BlueWillow's interrogatories while its extension motion was

pending, but also missed the extended 75-day deadline after the court granted its

extension motion.  *See id.*, PageID.664.

Trutek's Interrogatory No. 11 required BlueWillow to disclose financial data

for sales of the accused NanoBio product:

> For the Nanobio Protect nasal antiseptic product, which
> is currently cited in Plaintiff's Complaint, list and identify
> in detail (a) the entities to which said product was sold;
> (b) the monetary amount of sales to each entity; (c) the
> total sales for the product; (d) the unit price of the
> product sold to each entity; and (e) the cost of each unit
> sold to each entity.

(ECF No. 76, PageID.3177-78).  In response, BlueWillow informed Trutek that it

would produce the requested financial data upon the entry of a protective order:

> In addition to its General Objections, BlueWillow objects
> to the interrogatory to the extent it seeks information in
> Plaintiff's possession, custody, or control, including
> information provided in response to other discovery
> requests.

> Subject to and without waiving its objections,
> BlueWillow states that NanoBio Protect® was primarily
> sold directly to customers through Amazon and CVS, in
> addition to a small volume of sales through other limited
> distribution channels (small pharmacies and
> independent websites). Pursuant to Fed. R. Civ. P. 33(d),
> BlueWillow states that the remaining answers to this
> interrogatory may be derived or ascertained from
> business records that BlueWillow will produce upon
> entry of a protective order.

*Id*. at 3178.

For lost profits, a reasonable royalty, and any other category of damages,

BlueWillow's Interrogatory No. 10 required Trutek to disclose its damages

theories, including a damages calculation, evidence, and witnesses:

> Identify and describe in detail all damages that you seek
> to recover in this Action, including an accounting of the
> specific categories of damages claimed (e.g., lost profits,
> reasonable royalty, or any other category you claim to
> have suffered as a result of any conduct by BlueWillow),
> the amount for each category and how it was calculated,
> the legal and factual bases supporting your claim for
> damages, all documents and evidence upon which you
> rely for your calculations, and the persons most
> knowledgeable about the information requested in this
> interrogatory.

(ECF No. 39-1, PageID.694, "Plaintiff's Answers to Defendant's First Set of

Interrogatories.").  In response, Trutek notified BlueWillow that it seeks lost

profits and informed BlueWillow that it would present a lost profits calculation

through a damages expert:

> The NanoBio Protect product is no longer being sold. BlueWillow took the product off the market sometime in mid-2021. However, the start date and end date of this product's sales is unknown. Because this product infringes upon the '802 Patent, every sale of this product made by BlueWillow should have accrued to Trutek. Therefore, Plaintiff seeks the profit from every sale. The method of calculation of lost profits will be presented by an expert yet to be engaged.

*Id*., PageID.694-95; *see also* PageID.694 (In addition to the listed anticipated

witnesses, Trutek identified: "At least one additional expert to testify regarding

damages.").

Relevant to lost profits, BlueWillow's Interrogatory No. 11 required Trutek

to identify sales that Trutek lost because of the alleged infringement:

> To the extent You claim entitlement to damages on a theory of lost profits, identify each and every instance in which You contend You lost a sale as a result of the alleged infringement of a claim of the asserted patent by BlueWillow or any other person or entity, including by identifying: (1) the entity to whom You contend it lost a sale as a result of the alleged infringement; (2) the customer or potential customer to whom the sale was made; (3) the date or approximate date of the same; (4) the product offered or proposed to the customer; (5) the person(s) at the customer most knowledgeable about the proposed transaction; (6) the person(s) most knowledgeable about the proposed transaction; and (7)

> the persons most knowledgeable about the information
> requested in this interrogatory and all documents
> related thereto.

*Id.*, PageID.695.  Citing the need for the requested financial data, Trutek informed

BlueWillow that it was unable to identify lost sales:

> At present, Plaintiff has received no detailed discovery
> from Defendant regarding sales of its products.
> Therefore, Plaintiff objects to this interrogatory. It is
> unable to answer it at this time.

*Id*.

Relevant to a reasonable royalty, BlueWillow's Interrogatory No. 8 required

Trutek to disclose licensing terms from potentially comparable licenses with third-

parties:

> Describe in detail each and every instance in which You
> licensed, attempted to license, offered to license,
> suggested a license under, discussed a license under,
> entered a covenant not to sue, entered a technology
> transfer agreement, or settled a lawsuit that relates to
> the subject matter of the asserted patent or related
> patents, including by identifying the persons, places,
> dates, and material terms associated with each instance.

*Id.*, PageID.693.  In response, similar to BlueWillow with the requested financial

data, Trutek asserted confidences between Trutek and Trutek licensees and

informed BlueWillow that it would produce the requested licensing terms upon

the entry of a protective order:

> The answer to this interrogatory involves revelation of
> trade secrets by Plaintiff and revelation of confidences
> between Plaintiff and third parties. This information
> cannot be revealed absent a mutually agreed upon
> protective order by the Court. Further, the lawsuit
> between Trutek and Matrixx settled in December 2020.
> The terms of the settlement were filed with the Court
> under seal, and Plaintiff is prohibited from revealing the
> terms of settlement and/or the settlement agreement.

*Id*.

The court has not entered a protective order because the parties never raised the need for a protective order with the court.  Nonetheless, BlueWillow ultimately produced a document with the requested financial data for sales of the accused NanoBio product (the "sales document") on June 4, 2022 in advance of the fast approaching June 14, 2022 mediation and two weeks after the May 16, 2022 close of fact discovery.  (ECF No. 46-1, PageID.897, May 11, 2022 email). However, given the lack of a protective order, BlueWillow produced the requested financial data on a confidential basis and designated the sales document as "ATTORNEY'S EYES ONLY."  *Id.*  According to Trutek, this means that the sales document cannot be accessed by Trutek personnel or placed in the record.  (ECF No. 76, PageID.3179); *but see Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (explaining different secrecy standards applicable to discovery and adjudicative stages).

14

The answers to the listed interrogatories and the sales document represent the extent of completed discovery on damages. During expert discovery, the parties exchanged opening, responsive, and reply reports on the infringement and validity issues. However, Trutek did not identify a damages expert or serve an expert report on damages. While BlueWillow ultimately produced the sales document in response to Trutek's discovery requests, Trutek does not dispute BlueWillow's representation that Trutek did not produce any damages evidence in response to BlueWillow's discovery requests. Likewise, Trutek does not dispute BlueWillow's representation that the sales document is the only piece of damages evidence produced by either party. (ECF No. 39, PageID.671) (BlueWillow stating that "raw sales data" is "Trutek's only evidence of damages"). Trutek also does not dispute BlueWillow's representation that Trutek never corrected or supplemented its discovery responses. *Id.*, PageID.660 ("Trutek has not supplemented its interrogatory answers to identify damages-related theories, evidence, or witnesses").

Although Trutek alleges that it attempted to disclose a lost profits estimate through the mediator, BlueWillow disputes Trutek's version of events. (ECF No. 76, PageID.3179) ("At the mediation session, Plaintiff's counsel presented the mediator with an estimate of lost profits, and the mediator was instructed to

share that document with Defendant's counsel.").  However, according to

BlueWillow: "Contrary to Trutek's assertion, the mediator informed BlueWillow

that Trutek did not allow him to share Trutek's lost profits estimate, and Trutek

cites no evidence proving this information was ever provided to BlueWillow."

(ECF No. 80, PageID.3703).  Because Trutek did not disclose the estimate through

discovery and has not shown that BlueWillow received the estimate through the

mediator, the court will not treat the alleged disclosure attempt as a relevant

discovery event.  *See* Fed. R. Civ. P. 26(e)(1)(A) (requiring a party to "supplement

or correct" unless "the additional or corrective information has not otherwise

been made known to the other parties during the discovery process or in

writing").

      B.    <u>Trutek's Claim for Damages</u>

In its complaint, Trutek asserts a claim for an accounting of BlueWillow's

gains, profits, and advantages.  (ECF No. 1, PageID.7).  This is not a cognizable

claim for damages, as damages are compensatory and measured by the

patentee's loss rather than the infringer's gain.  *Aro*, 377 U.S. at 507.  As noted

above, during fact discovery, Trutek also notified BlueWillow that it seeks lost

profits.  By exclusion, Trutek notified BlueWillow that it does not seek a

reasonable royalty.  After informing BlueWillow that it would present a lost

profits calculation through a damages expert, Trutek did not identify a damages

expert or serve an expert report on damages.  Trutek also maintains that

"damages are calculations subject to statutory authority" and "no expert damage

testimony is required."  (ECF No. 43, PageID.795-96).

Most recently, in opposition to BlueWillow's motion for summary

judgment, Trutek states that it seeks both lost profits and a reasonable royalty,

and "[o]nce having examined Defendant's Sales Document, it became apparent

that expert testimony would not be necessary to calculate either ..."  (ECF No. 76,

PageID.3179).  To prove the amount of damages at trial, Trutek seeks to present

two things to the factfinder: (1) information in the sales document; and (2)

testimony from Trutek witnesses.  *See id.*, PageID.3199.  As to the floor for a

damages award, Trutek argues that the "number of sales" in the sales document

is "sufficient" for a reasonable royalty calculation.  *Id.*, PageID.3179-80.

Neither the sales document nor the purported testimony from Trutek

witnesses is currently in the record.  Trutek does not describe the information in

the sales document, except to represent that it demonstrates BlueWillow's sales

of the accused NanoBio product.  *Id.*, PageID.3179 ("The document was very

detailed and it provided most of the information requested in Plaintiff's

Interrogatory No. 11.").  Additionally, while making passing references to "fact

testimony" from "Trutek personnel," Trutek does not identify the Trutek

witnesses or the subjects of their purported testimony except to assert that they

are Trutek personnel rather than a damages expert and will offer fact testimony

rather than expert testimony.  *See id.*, PageID.3180.

## IV.    BLUEWILLOW'S MOTION *IN LIMINE* (ECF No. 39)

In its motion *in limine*, BlueWillow moves to exclude Trutek's damages-

related theories or evidence under Federal Rule of Civil Procedure 37(c)(1).  (ECF

No. 39, PageID.666-67).  Maintaining that Trutek has not disclosed damages

evidence pursuant to its discovery obligations, BlueWillow argues that the

requested exclusion is warranted as a discovery sanction under Rule 37(c)(1)

because the non-disclosure is not justified and has prejudiced BlueWillow.  *Id.*,

PageID.660-61).  In addition, BlueWillow moves to limit Trutek to zero (or

alternatively nominal) damages.  *Id.*, PageID.661.  For the reasons set forth below,

the court finds that the requested exclusion of Trutek's damages-related theories

or evidence is warranted, but the requested limitation on Trutek's damages is not

warranted.

A.    <u>Legal Standards</u>

Federal Rule of Civil Procedure 37(c)(1) provides that district courts may

exclude evidence that a party seeks to offer but has failed to disclose pursuant to

the party's discovery obligations under Federal Rule of Civil Procedure 26(a) and

(e).  Even "without awaiting a discovery request," Rule 26(a)(1) requires a party to

disclose the information and identify the witnesses that the party "may use to

support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  As part of these

initial disclosures, Rule 26(a)(1) requires a party seeking damages to disclose "a

computation of each category of damages claimed" and "the documents or other

evidentiary material … on which each computation is based."  Fed. R. Civ. P.

26(a)(1)(A)(iii).  Rule 26(e)(1) requires a party who learns that an initial disclosure

or a response to a discovery request is "incomplete or incorrect" to "supplement

or correct" the initial disclosure or the response "in a timely manner."  Fed. R. Civ.

P. 26(e)(1)(A).

Under Rule 37(c)(1), a party who fails to disclose information or identify a

witness as required by Rule 26(a) or (e) "is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "The

exclusion of non-disclosed evidence is automatic and mandatory under Rule

37(c)(1) unless non-disclosure was justified or harmless."  *Dickenson v. Cardiac &*

*Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004) (quotation

omitted).

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quotation omitted).

Distinguishing between motions *in limine* and motions for summary judgment, the Sixth Circuit has held that it is an abuse of discretion for district courts to resolve non-evidentiary matters raised in a motion *in limine*. *Id.* at 561, 566. The rule against resolving non-evidentiary matters *in limine* is driven by a concern for the lack of procedural safeguards that accompany motions *in limine.* *Id.* at 561 ("motions *in limine* should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards."). Among other decisions from its sister circuits, the Sixth Circuit has cited the Federal Circuit's *Meyer* decision with approval. *Id.* In *Meyer*, the district court "essentially converted [a] motion *in limine* into a motion for summary judgment." *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012). The Federal Circuit reversed

and remanded after concluding "that it was procedurally improper for the court

to dispose of [the accused infringer's] inequitable conduct defense on a motion *in*

*limine*." *Id.* "In doing so," the Federal Circuit explained, "the court did not allow

for full development of the evidence and deprived [the accused infringer] of an

opportunity to present all pertinent material to defend against the dismissal of its

inequitable conduct defense." *Id.*

B.   Relevant Facts

At the outset, the court notes that Trutek does not argue that it has

complied with its discovery obligations.  Moreover, as opposed to a late

disclosure, the issue is the *non-disclosure* of Trutek's damages-related theories or

evidence.  After filing its motion *in limine* on September 26, 2022, BlueWillow

filed its motion for summary judgment on March 28, 2023.  (ECF Nos. 39, 59).

BlueWillow's motion *in limine* put Trutek on notice that BlueWillow challenged

Trutek's compliance with its discovery obligations.

The record on summary judgment shows that, in the six months after

BlueWillow filed its motion *in limine*, Trutek has not even belatedly disclosed its

damages theories.  While Trutek represents that the sales document

demonstrates BlueWillow's sales of the accused NanoBio product, the claimed

sales only go to half of a damages calculation.  Specifically, for a lost profits

calculation, the claimed number of sales only goes to the damages base of Trutek's lost sales (i.e., the number of lost sales). Similarly, for a reasonable royalty calculation, the claimed amount of sales only goes to the damages base of BlueWillow's sales. Among other basic elements of its claim for damages, Trutek has not disclosed a claimed profit margin to be applied to Trutek's lost sales or a claimed royalty rate to be applied to BlueWillow's sales. After identifying "an expert yet to be engaged" as its only damages witness, Trutek makes passing references to "fact testimony" from "Trutek personnel" without identifying the Trutek witnesses or the subjects of their purported testimony. (*See* ECF No. 76, PageID.3179).

### C. Exclusion of Damages-Related Theories or Evidence

BlueWillow argues that Trutek lacks any justification for the non-disclosure of its damages-related theories or evidence. (ECF No. 39, PageID.670). Detailing Trutek's untimeliness in this case, including missing every deadline for responding to BlueWillow's discovery requests and the deadline for disclosing its witness list, BlueWillow argues that the non-disclosure goes to a continued failure to conduct discovery on damages. *Id.*, PageID.663-666. BlueWillow further argues that the non-disclosure is prejudicial because discovery is now closed and, therefore, nondisclosure affects their ability to respond to Trutek's damages theories and

formulate alternative damages theories.  *Id.*, PageID.670.  Under these

circumstances, BlueWillow asks the court to exclude Trutek's damages-related

theories or evidence pursuant to Rule 37(c)(1).  *Id.*, PageID.652.

Trutek makes a number of arguments against exclusion, some for the first

time in opposition to BlueWillow's motion for summary judgment, and some, as

discussed below, on non-discovery related grounds.  As to the exclusion analysis

under Rule 37(c)(1), Trutek argues that the exclusion of Trutek's damages-related

theories or evidence is not warranted because the way BlueWillow produced the

sales document "offsets" any argument that Trutek's non-disclosure has

prejudiced BlueWillow.  (ECF No. 43, PageID.794).  Trutek takes issue with

BlueWillow's production of the sales document for two reasons.  First,

maintaining that it could not make a damages calculation without the requested

financial data, Trutek argues that BlueWillow "delayed" the production of the

sales document until after the close of fact discovery.  (ECF No. 76, PageID.3180).

Second, maintaining that it could not make a lost profits calculation without input

from Trutek personnel, Trutek argues that BlueWillow "unnecessarily" designated

the sales document as attorney's eyes only.  *Id.*, PageID.3179.  According to

Trutek, BlueWillow continues to prevent Trutek personnel from accessing the

sales document.  *Id.*

To guide the exclusion analysis under Rule 37(c)(1), the Sixth Circuit has

adopted five factors for determining whether a party's non-disclosure of evidence

is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence
> would be offered; (2) the ability of that party to cure the
> surprise; (3) the extent to which allowing the evidence
> would disrupt the trial; (4) the importance of the
> evidence; and (5) the nondisclosing party's explanation
> for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748-49 (6th Cir. 2015) (quoting *Russell v.*

*Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)).  District

courts have broad discretion in applying the factors and need not apply each

factor rigidly.  *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019).

As implied by its arguments against exclusion, the exclusion analysis in this

case turns on Trutek's explanation for the non-disclosure under the fifth factor.

As to the first factor, BlueWillow will be surprised when Trutek presents

previously undisclosed damages evidence for the first time at trial.  As to the

second factor, BlueWillow cannot be expected to respond to newly disclosed

damages evidence in support of newly disclosed damages theories at trial.

BlueWillow cannot cure the surprise without reopening discovery to explore

Trutek's damages theories and formulate alternative damages theories.  Likewise,

as to the third factor, trial will be interrupted.  After discovery is reopened, the

parties will be starting discovery on damages over from the beginning.  Moreover,

discovery will include not only fact discovery, but also expert discovery to the

extent BlueWillow wishes to present alternative damages theories through a

damages expert.  Accordingly, the court finds that the first, second, and third

factors weigh in favor of exclusion.

As to the fourth factor, Trutek's damages evidence is central to its claim for

damages.  However, the Sixth Circuit has explained that importance "can cut both

ways."  *Bisig*, 940 F.3d at 220.  "The more important the proof, the greater the

effect of preclusion, but also the greater the harm in tardy disclosure."  *Id.*

(quotation omitted).  During fact discovery, Trutek identified "an expert yet to be

engaged" as its only damages witness.  (ECF No. 39-1, PageID.695).  According to

Trutek, it "became apparent" after examining the sales document that Trutek

would present a damages calculation through Trutek witnesses rather than a

damages expert.  (ECF No. 76, PageID.3180).  While maintaining that it could not

make a lost profits calculation without input from Trutek personnel, Trutek offers

no explanation for making no other efforts toward complying with its discovery

obligations as the changes to its damages evidence became known.  At the very

least, Trutek could have corrected its discovery responses to inform BlueWillow

that it would move forward with non-expert damages theories.  Similarly, Trutek

could have supplemented its discovery responses to identify the Trutek witnesses

and the subjects of their purported testimony.  Moreover, although central to its

claim for damages, Trutek's damages evidence is equally central to BlueWillow's

ability to respond to Trutek's damages theories and to formulate alternative

damages theories.  Because Trutek has not made any efforts toward disclosing its

damages evidence, the court finds that the fourth factor weighs in favor of

exclusion.

Turning to the fifth factor, BlueWillow does not dispute that it produced

the sales document after the close of fact discovery and designated the sales

document as attorney's eyes only.  (*See* ECF No. 46, PageID.888; ECF No. 46-1).

However, BlueWillow challenges Trutek's explanation for the non-disclosure of its

damages-related theories or evidence, citing email correspondence between the

parties from the May-June 2022 timeframe to argue that the real problem was

that Trutek never filed a protective order with the court.  (ECF No. 80,

PageID.3703).  The court agrees.  As noted above, Trutek and BlueWillow

responded to each other's interrogatories a week before the close of fact

discovery and noted that they would produce requested confidential information

upon the entry of a protective order.  The same week, the parties discussed a

protective order during a meet and confer.  (*See* ECF No. 46-1).  The day after the

meet and confer, BlueWillow summarized the issues raised by the parties and

stated its understanding that Trutek was going to indicate its preference on a

provision for denying access to all employees or a provision for giving access to

two employees.  *Id.*, PageID.899.  Three weeks later, after completing revisions to

the protective order, BlueWillow sought Trutek's confirmation that the protective

order was acceptable for execution by the parties and filing with the court as a

proposed stipulated protective order.  *Id.*, PageID.898.  BlueWillow stated its

belief that the protective order addressed the issues raised by the parties during

the meet and confer and was consistent with a subsequent discussion with

Trutek.  *Id.*

The next day, BlueWillow noted the approaching mediation and

volunteered to produce the requested financial data prior to the entry of a

protective order.  Pending the entry of a protective order, BlueWillow proposed

to produce the requested financial data on an outside counsel's eyes only basis.

*Id*.  Two days later, BlueWillow produced the sales document after Trutek agreed

to the proposal and confirmed that access to the sales document would be

limited to Trutek's attorneys.  *Id.*  Trutek stated that it hoped to complete edits to

the protective order in time for execution by the parties the following week.  *Id.*,

PageID.897.

It follows that Trutek's explanation for the non-disclosure of its damages-

related theories or evidence is unfounded.  As reflected by their email

correspondence and responses to each other's discovery requests, the parties

effectively stipulated to conducting discovery on a confidential basis through their

attorneys pending the entry of a protective order.  *Id.*; *see also* Fed. R. Civ. P.

29(b) (authorizing parties to stipulate that "procedures governing or limiting

discovery be modified").  The agreed-upon time for producing confidential

information was upon the entry of a protective order.  *Id.*

Accordingly, BlueWillow did not delay the production of the sales

document.  BlueWillow produced the sales document and designated it as

"attorney's eyes only" pursuant to the agreement between the parties.

BlueWillow is also not "preventing Trutek personnel from accessing" the sales

document, as Trutek was aware from the outset that their personnel could not

access the sales document until the court entered a protective order.  To the

extent Trutek could not make a lost profits calculation without input from Trutek

personnel, it was the lack of a protective order, not BlueWillow, standing in the

way of Trutek complying with its discovery obligations.  While it is not apparent

from the face of the email correspondence why Trutek never filed a protective

order with the court, it shows that BlueWillow cooperated on a mutually

agreeable protective order.  (*See* ECF No. 46-1).  And in any event, Trutek offers

no explanation for not seeking other relief from the court for giving Trutek

personnel access to the sales document.  Instead of filing a protective order,

Trutek could also have moved to de-designate the sales document or compel the

production of the requested financial data on a non-confidential basis.  Because

Trutek's explanation for the non-disclosure of its damages-related theories or

evidence is unfounded, the court finds that the fifth factor weighs in favor of

exclusion.

The court also notes that other aspects of the way Trutek conducted

discovery on damages are similarly unreasonable and additionally weigh in favor

of exclusion.  Initially, Trutek received BlueWillow's Interrogatory No. 10 and

related discovery requests three months before the close of fact discovery.  (*See*

ECF No. 39-1, PageID.694).  To the extent Trutek could not make a damages

calculation without the requested financial data, it was unreasonable for Trutek

to not begin serving discovery requests on BlueWillow until five weeks before the

close of fact discovery.  Notably, Trutek does not follow through on its delay

argument by asserting that they would have complied with the discovery

obligations had BlueWillow produced the sales document before the close of fact discovery.

Moreover, Trutek alleges that it both sells the patented NasalGuard products and licenses the '802 Patent.  (ECF No. 1, PageID.3).  Unlike the claimed number of sales and the claimed amount of sales, a claimed profit margin and a claimed royalty rate are independent of the requested financial data and implicate damages evidence solely in Trutek's possession.  As with the Trutek witnesses and the subjects of their purported testimony, it was unreasonable for Trutek to not disclose these basic elements of its claim for damages and supporting damages evidence in its own possession.  Similarly, Trutek offers no explanation for not disclosing a reasonable royalty calculation.  Trutek argues that, while "client input was necessary to determine Trutek's lost profits," "[n]othing more was necessary" for a reasonable royalty calculation.  (ECF No. 76, PageID.3179-3180).  Accordingly, to the extent Trutek could not make a lost profits calculation without input from Trutek personnel, it was unreasonable for Trutek to not disclose a reasonable royalty calculation.

Although the court has conducted the exclusion analysis under Rule 37(c)(1) and found that all five factors weigh in favor of exclusion, Trutek makes additional arguments against exclusion on non-discovery related grounds.  The

court finds Trutek's non-discovery related arguments against exclusion

unpersuasive.  First, Trutek argues that BlueWillow has waived an argument for

the requested exclusion of Trutek's damages-related theories or evidence

because they did not assert their motion *in limine* at the close of fact discovery.

(ECF No. 43, PageID.792).  Absent any legally or factually supported argument to

the contrary, the court finds that BlueWillow properly filed its motion *in limine*.

The case management order in this case required all motions *in limine* to be filed

ten days before trial.  (ECF No. 26).  BlueWillow filed its motion *in limine* well

before that time.  (*See* ECF No. 39).  From a practical standpoint, BlueWillow had

no reason to assert its motion *in limine* at the close of fact discovery.  During fact

discovery, Trutek informed BlueWillow that it would present a lost profits

calculation through a damages expert.  (*See* ECF No. 39-1, PageID.694).

Accordingly, BlueWillow filed its motion *in limine* during the timeframe for expert

discovery, after Trutek did not identify a damages expert or serve an expert

report on damages.

Second, Trutek argues that BlueWillow's motion *in limine* "functions as a

motion for summary judgment."  (ECF No. 43, PageID.792).  According to Trutek,

BlueWillow seeks the "wholesale disposition" of Trutek's claim for damages

through the "wholesale exclusion" of Trutek's damages evidence.  *Id*.  Trutek

maintains that its damages evidence is relevant and admissible under Federal

Rules of Evidence 401 and 402.  *Id.*, PageID.790-91.  Trutek argues that the court

should wait until Trutek's damages evidence is offered at trial and decide whether

exclusion is warranted by balancing the probative value and the danger of unfair

prejudice under Federal Rule of Evidence 403.  *Id.*, PageID.791.  However, as to

the requested exclusion of Trutek's damages-related theories or evidence, Trutek

is responding to a strawman argument that its damages evidence is not

admissible under Federal Rules of Evidence 401, 402, and 403.  BlueWillow does

not challenge the admissibility of Trutek's damages evidence, but instead

challenges Trutek's compliance with its discovery obligations.  With reference to

Trutek's responses to BlueWillow's discovery requests on the damages issues,

BlueWillow seeks to preclude Trutek from presenting undisclosed damages

evidence, including unidentified testimony from unidentified damages witnesses,

in support of undisclosed damages theories.  To the extent the requested

exclusion effectively precludes Trutek from seeking damages, this is only because

that which Trutek seeks to present and that which Trutek has not disclosed

pursuant to its discovery obligations are one and the same.

Third, Trutek cites Section 284 of the Patent Act to argue that its damages

theories "cannot be excluded" because they "are set forth by statute."  *Id.*,

PageID.792-93.  However, Trutek's argument mischaracterizes lost profits and a

reasonable royalty as "the damages-related theories relied on by Trutek."  *Id.*

Lost profits and a reasonable royalty are categories of damages, not damages

theories.  As distinguished from the categories of damages established by Section

284 and precedent, a party's damages theories and damages evidence go to the

amount of damages under the facts of a particular case.  Put in terms of Trutek's

discovery obligations, BlueWillow's Interrogatory No. 10 required Trutek to not

only notify BlueWillow of "the specific categories of damages claimed," but also

disclose "an accounting" thereof, including "the amount for each category and

how it was calculated" and "all documents and evidence upon which you rely for

your calculations."  (ECF No. 39-1, PageID.694-695); *see also* Fed. R. Civ. P.

26(a)(1)(A)(iii) (requiring a party seeking damages to disclose "a computation of

each category of damages claimed" and "the documents or other evidentiary

material … on which each computation is based").

Particularly in the face of contention interrogatories like BlueWillow's

Interrogatory No. 10, a plaintiff does not comply with its discovery obligations by

merely notifying the defendant that it seeks the usual categories of damages.

Both the Sixth Circuit and the Federal Circuit have affirmed the exclusion of a

plaintiff's damages theory under Rule 37(c)(1) for failure to disclose elements of

its claim for damages in response to the defendant's interrogatories. *See*

*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 367-69

(6th Cir. 2010) (affirming exclusion of plaintiff's lost profits theory for non-

disclosure of evidence of avoided costs necessary to calculate lost profits from

lost gross revenues); *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th

1358, 1370-72 (Fed. Cir. 2021) (affirming exclusion of patentee's expert-based

reasonable royalty theory for late disclosure of claimed royalty rate and

supporting evidence).

In summary, having conducted the exclusion analysis under Rule 37(c)(1),

the court finds that all five factors weigh in favor of exclusion. As opposed to a

late disclosure, the issue here is the *non-disclosure* of Trutek's damages-related

theories or evidence. The time when the lack of a protective order would have

justified a late disclosure, or BlueWillow would have been expected to cure the

surprise from a late disclosure by reopening discovery, has long passed. The court

has also considered Trutek's non-discovery related arguments against exclusion

and finds them unpersuasive. Accordingly, the court **GRANTS** BlueWillow's

motion *in limine* as to their request for the court to exclude Trutek's damages-

related theories or evidence, with the following clarification.

The court's exclusion precludes Trutek from relying on undisclosed damages evidence, including unidentified testimony from unidentified damages witnesses, in support of undisclosed damages theories.  As a general matter, while applying to the purported testimony from Trutek witnesses, the court's exclusion does not apply to the sales document and its financial data for sales of the accused NanoBio product.  In connection with discovery on damages, Trutek properly requested the financial data and obtained the sales document from BlueWillow.  Likewise, assuming BlueWillow infringes the '802 Patent, the court does not question that the information in the sales document is necessary to a damages calculation.

However, the issue for Trutek is the extent of non-disclosure.  The sales document is the only piece of damages evidence produced by either party, and Trutek has not even belatedly disclosed its damages theories or its damages evidence.  Given the extent of non-disclosure, the court's exclusion effectively precludes Trutek from seeking damages.  Assuming Trutek suffered damages remediable by a damages award, the reality is that Trutek never adequately asserted a claim for damages.  As to actual damages, although Trutek notified BlueWillow that it seeks lost profits, Trutek has not disclosed either a claimed profit margin to be applied to Trutek's lost sales or supporting damages evidence

in its own possession.  As to the floor for a damages award, although Section 284 of the Patent Act entitles Trutek to a reasonable royalty, Trutek notified BlueWillow that it does not seek a reasonable royalty.  And in any event, as with lost profits, Trutek has not disclosed either a claimed royalty rate to be applied to BlueWillow's sales or supporting damages evidence in its own possession. Because Trutek never adequately asserted a claim for damages, the court's exclusion effectively precludes Trutek from seeking damages.

To be clear, the court is imposing the sanction of exclusion of Trutek's damages-related theories or evidence, not the sanction of dismissal of Trutek's claim for damages.  *See* Fed. R. Civ. P. 37(c)(1) (authorizing sanctions "addition to or instead of" exclusion), (c)(1)(C) (authorizing "other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)"), and (b)(2)(A)(v) (listing sanction of "dismissing the action or proceeding in whole or in part").  As noted above, the issue for Trutek is the extent of non-disclosure.  Although the court's exclusion effectively precludes Trutek from seeking damages, this is only because that which Trutek seeks to present and that which Trutek has not disclosed pursuant to its discovery obligations are one and the same.

D.    Limitation on Damages

In addition to moving to exclude Trutek's damages-related theories or

evidence, BlueWillow moves to limit Trutek to zero (or alternatively nominal)

damages.  (ECF No. 39, PageID.674).  Because the court's exclusion effectively

precludes Trutek from seeking damages, the issue of whether to limit Trutek's

damages is moot.  However, for clarity to the parties, the court will address

BlueWillow's arguments below.

As noted above, BlueWillow maintains that Trutek has not conducted

discovery on damages.  However, unlike the requested exclusion, BlueWillow

does not seek a discovery sanction under Rule 37(c)(1).  Rather, BlueWillow

argues that the requested limitation on Trutek's damages is warranted because

Trutek "cannot meet its burden to establish recoverable damages" and therefore

"cannot, as a matter of law, establish damages."  *Id.*, PageID.661.  According to

BlueWillow, the lack of necessary damages evidence and required expert

testimony is dipositive of Trutek's ability to meet its burden of proving the

amount of damages.  *Id.*, PageID.668.

BlueWillow asks too much on a motion *in limine*.  "Resolution of this

issue—whether [Trutek's] evidence is insufficient as a matter of law—requires a

summary-judgment analysis."  *Louzon*, 718 F.3d at 562 (citing Fed. R. Civ. P. 56(a)

("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")).  As discussed below in the context of summary judgment, the court ultimately disagrees with Trutek's argument that the information in the sales document is sufficient for a damages calculation.  Nonetheless, Trutek is entitled to a full opportunity to be heard on its claim for damages under the procedural protections that attach on summary judgment.  *Id.* at 561-62 (collecting cases).

As to the proposition that it is appropriate to limit damages on a motion *in limine*, BlueWillow's reliance on the Sixth Circuit's *Wright* decision is misplaced in the context of a damages award in a patent infringement case.  In *Wright*, the plaintiff sought both actual damages and statutory damages for the defendant's alleged violations of the Fair Debt Collection Practices Act (FDCPA).  *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 (6th Cir. 1994) (*en banc*).  In addition to actual damages, the FDCPA provides that the plaintiff may recover up to $1,000 in statutory damages.  *Id.* at 650 (citing 15 U.S.C. § 1692k(a)).  Finding that the defendant committed fourteen of the thirty alleged FDCPA violations, the district court granted the plaintiff's motion for summary judgment on the issue of liability.  *Id.* at 649.  However, determining that the FDCPA limits statutory

damages on a per proceeding basis rather than a per violation basis, the district court granted the defendant's motion *in limine* to limit the plaintiff's statutory damages to $1,000.  *Id.*  After a divided panel reversed the district court's limitation on statutory damages, the Sixth Circuit granted rehearing *en banc* and readdressed whether the FDCPA limits statutory damages on a per proceeding basis or a per violation basis.  *Id.*  Applying the rules of statutory construction, the Sixth Circuit determined that the FDCPA limits statutory damages on a per proceeding basis.  *Id.* at 650-51.  Accordingly, the Sixth Circuit affirmed the district court's limitation on statutory damages.  *Id.* at 651.

*Wright* is distinguishable because, unlike the FDCPA and its limitation on statutory damages, Section 284 of the Patent Act provides for actual damages and sets the floor for a damages award at no less than a reasonable royalty.  35 U.S.C. § 284.  In *Wright*, whether to limit the plaintiff's statutory damages was a matter of construing the statutory language and making a legal determination concerning whether the FDCPA limits statutory damages on a per proceeding basis.  Here, whether to limit Trutek's damages is a matter of considering the evidence of record and making factual findings concerning the amount of damages and whether Trutek is entitled to lost profits.

The resolution of the above non-evidentiary matters requires a summary judgment analysis and is therefore improper on a motion *in limine*.  Accordingly, the court will **DENY** BlueWillow's motion *in limine* as to BlueWillow's request for the court to limit Trutek to zero (or alternatively nominal) damages.  Instead, the court will address BlueWillow's arguments in the context of summary judgment.

## V.     BLUEWILLOW'S MOTION FOR SUMMARY JUDGMENT (ECF No. 59)

In its motion for summary judgment, BlueWillow argues that "Trutek has wholly failed to disclose a damages calculation, identify any evidence supporting a damages theory, or disclose any expert witness that will testify as to damages" and, therefore, "exclusion of all damages evidence and theories is required."  (ECF No. 59, PageID.1689).  Specifically, BlueWillow asks the court to grant "summary judgment of no damages," including pre-suit damages.  *Id.*, PageID.59.  For the reasons set forth below, the court finds that BlueWillow is entitled to summary judgment of no damages and summary judgment of no pre-suit damages. BlueWillow's motion for summary judgment also argues that Trutek is not entitled to injunctive relief or a jury trial.  However, for the reasons set forth below, the court finds that resolution of the injunctive relief and jury trial issues requires further briefing pursuant to the schedule set forth below.

A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper

when there is "no genuine dispute as to any material fact" and the moving party

is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In deciding a

motion for summary judgment, the court must view the evidence in the light

most favorable to the non-moving party, drawing all reasonable inferences in that

party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where

the moving party has carried its burden of showing that the pleadings,

depositions, answers to interrogatories, admissions and affidavits in the record,

construed favorably to the non-moving party, do not raise a genuine issue of

material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v.

Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986)).

The court does not weigh the evidence to determine the truth of the

matter, but rather to determine if the evidence creates a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party first

discharges its burden by "'showing'—that is, pointing out to the district court—

that there is an absence of evidence to support the nonmoving party's case."

*Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (quoting *Celotex*, 477 U.S. at

325).  The burden then shifts to the non-moving party, who "must do more than

simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

non-moving party must put forth enough evidence to show that there exists "a

genuine issue for trial."  *Horton*, 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at

587).  Summary judgment is not appropriate when "the evidence presents a

sufficient disagreement to require submission to a jury."  *Anderson*, 477 U.S. at

251-52.

　　　The existence of a factual dispute alone does not, however, defeat a

properly supported motion for summary judgment—the disputed factual issue

must be material.  "The judge's inquiry, therefore, unavoidably asks whether

reasonable jurors could find by a preponderance of the evidence that the plaintiff

is entitled to a verdict—whether there is evidence upon which a jury can properly

proceed to find a verdict for the party producing it, upon whom the onus of proof

is imposed."  *Id.* at 252 (quotation and alteration omitted).  A fact is "material" for

purposes of summary judgment when proof of that fact would establish or refute

an essential element of the claim or a defense advanced by either party.  *Kendall*

*v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

B.    Damages

As set forth above, the court has excluded Trutek's damages-related

theories or evidence.  Because the court's exclusion effectively precludes Trutek

from seeking damages, the issue of whether to grant summary judgment of no

damages is moot.  However, for clarity to the parties and as an alternate basis for

the ultimate outcome of no damages, the court will address BlueWillow's

arguments below.

Assuming, *arguendo*, that Trutek adequately asserted a claim for damages,

the sales document is the only piece of damages evidence produced by either

party.  The court once again notes that the sales document is not of record.

However, for purposes of summary judgment, BlueWillow does not challenge the

admissibility of the sales document.  Moreover, the parties do not raise any

genuine disputes concerning the information in the sales document.  Although

they challenge Trutek's ability to meet its burden of proving the amount of

damages, BlueWillow does not dispute Trutek's representation that the sales

document demonstrates BlueWillow's sales of the accused NanoBio product.

Rather, BlueWillow argues that a damages calculation requires more than just

infringing sales.

BlueWillow's arguments for summary judgment of no damages center on Trutek's burden of proof.  (ECF No. 80, PageID.3703).  Citing the impermissibility of a speculative damages award, BlueWillow argues that Trutek's claim for damages fails for a lack of necessary damages evidence.  *Id.*, PageID.3704 ("it hasn't disclosed any evidence it intends to introduce at trial, and does not attempt to argue that it has.").

As to actual damages, BlueWillow argues that Trutek has not met its burden of proving entitlement to lost profits or the amount of lost profits.  (ECF No. 59, PageID.1691).  Specifically, BlueWillow points out that the sales document only goes to the damages base of Trutek's lost sales (i.e., the number of lost sales), not a profit margin to be applied to Trutek's lost sales.  *Id.*  As to a reasonable royalty, BlueWillow argues that Trutek lacks evidence that either demonstrates an established royalty or reliably supports a hypothetical negotiation analysis.  *Id.*  As an additional ground for summary judgment of no damages, BlueWillow argues that Trutek's claim for damages fails for lack of required expert testimony.  *Id.*, PageID.1665.  Specifically, BlueWillow argues that, because Trutek has not satisfied the entire market value rule, expert testimony is required to guide an apportionment analysis.  *Id.*, PageID.1690.

Without addressing its burden of proof, Trutek argues that the information in the sales document is "sufficient" for a damages calculation.  (ECF No. 76, PageID.3179).  As to a lost profits calculation, Trutek cites the "sales information" in the sales document.  *Id.*  As to a reasonable royalty calculation, Trutek cites the "number of sales" in the sales document.  *Id.*, PageID.3179-3180.  "Based on the information in Defendant's Sales Document," Trutek argues, "speculation and conjecture will not play a role in the calculation."  *Id.*, PageID.3181.  Without elaboration, Trutek argues that summary judgment of no damages is not appropriate because there are genuine disputes concerning "all of the facts material to a determination of whether damages were properly pled."  *Id.*, PageID.3183.

As an initial matter, although agreeing with BlueWillow on other points, the court finds BlueWillow's expert testimony argument unpersuasive.  As noted above, BlueWillow argues that because Trutek has not satisfied the entire market value rule, expert testimony is required to guide an apportionment analysis.  The entire market value rule is the exception to the rule of apportionment.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977-78 (Fed. Cir. 2018).  BlueWillow's argument assumes that apportionment is required in this case, but BlueWillow does not connect its argument to a discussion of the '802

Patent, the asserted claims, the patented NasalGuard products, or the accused

NanoBio product.  For example, BlueWillow does not explain that the patented

NasalGuard products include both patented and unpatented features, or that the

accused NanoBio product includes both infringing and non-infringing features.

*See*, *e.g.*, *MLC*, 10 F.4th at 1373 (explaining that apportionment is required "when

the accused technology does not make up the whole of the accused product").

As to a requirement for expert testimony on apportionment, Section 284 of

the Patent Act expressly makes consideration of expert testimony optional to a

damages award.  *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir.

2003) (explaining that Section 284 "is clear that expert testimony is not necessary

to the award of damages, but rather '*may* [be] receive[d] … as an aid'") (quoting

35 U.S.C. § 284) (alteration and emphasis in original).  Likewise, BlueWillow does

not cite any decisions where a court has held that the lack of expert testimony on

apportionment is sufficient grounds to justify summary judgment of no damages.

Rather, the decision cited by BlueWillow stands for the proposition that, when

apportionment is required, the failure of a party's damages expert to reliably

perform an apportionment analysis is grounds for exclusion.  *Niazi Licensing Corp.

v. St. Jude Med. S.C.*, 2020 U.S. Dist. LEXIS 167562, at *27 (D. Min. Sept. 14, 2020)

(on a motion to exclude expert testimony, explaining that "the parties dispute whether [the patentee's damages expert] reliably applied apportionment").

Turning to the summary judgment analysis, the court notes that Trutek's arguments are generally unsupported. Trutek does not cite any legal authority or discuss any legal standards except to argue that, assuming BlueWillow infringes the '802 Patent, Trutek is entitled to a reasonable royalty under Section 284 of the Patent Act. 35 U.S.C. § 284. As to BlueWillow's sales of the accused NanoBio product, Trutek does not describe the information in the sales document except to represent that it demonstrates the number of sales, the amount of sales, and the customers to whom the sales were made. (ECF No. 76, PageID.3179). As best understood by the court, Trutek's arguments assume that the number of BlueWillow's sales of the accused NanoBio product represents the number of Trutek's lost sales of the patented NasalGuard products. However, Trutek does not discuss the actual or the hypothetical market except to repeat the denied allegation that BlueWillow sold the accused NanoBio product in direct competition with the patented NasalGuard products. (*See* ECF No. 1, PageID.6; ECF No. 9, PageID.76).

The court will first address lost profits. Trutek has the burden of proving "but for" causation between BlueWillow's sales of the accused NanoBio product

and Trutek's lost sales of the patented NasalGuard products.  *Rite-Hite*, 56 F.3d at

1545.  The Federal Circuit has adopted the *Panduit* test as "a useful, but non-

exclusive" way to prove entitlement to lost profits.  *Id.*  To satisfy the *Panduit* test,

the patentee must prove: "(1) demand for the patented product; (2) absence of

acceptable non-infringing substitutes; (3) manufacturing and marketing capability

to exploit the demand; and (4) the amount of the profit it would have made."  *Id.*

(citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th

Cir. 1978)).  Proving the *Panduit* factors permits the inference that, but for the

infringement, the patentee would have made the infringing sales, and shifts the

burden to the infringer to show that the inference is unreasonable for some or all

of the lost sales.  *Id.*

Standing alone, the sales document does not represent the required

"sound economic proof" to demonstrate a single *Panduit* factor.  *Grain

Processing*, 185 F.3d at 1350.  Most obviously, as to the fourth *Panduit* factor, the

sales document only goes to the damages base of Trutek's lost sales, not a profit

margin to be applied to Trutek's lost sales.  Accordingly, the court finds that

Trutek cannot meet either its burden of proving entitlement to lost profits or its

burden of proving the amount of lost profits.

Assuming BlueWillow infringes the '802 Patent, Section 284 of the Patent

Act entitles Trutek to a reasonable royalty.  35 U.S.C. § 284.  "The statute

guarantees patentees a reasonable royalty even when they are unable to prove

entitlement to lost profits or an established royalty rate."  *Riles v. Shell Expl. &*

*Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002).  The Federal Circuit has adopted

the *Georgia-Pacific* factors as a "comprehensive (but unprioritized and often

overlapping) list of relevant factors" for a reasonable royalty determination.

*ResQNet.com*, 594 F.3d at 869 (citing *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F.

Supp. 1116, 1120 (S.D.N.Y. 1970)).

Section 284 "requires the district court to award damages 'in an amount no

less than a reasonable royalty' even if [the patentee] has no evidence to proffer."

*Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (quoting *Dow*

*Chem.*, 341 F.3d at 1381).  Even after rejecting the damages theories offered by

the patentee and its damages expert, district courts must consider the *Georgia-*

*Pacific* factors and award whatever reasonable royalty the record will support.

*Dow Chem.*, 341 F.3d at 1382 & n.4.

On summary judgment, district courts "may only award a zero royalty for

infringement if there is no genuine issue of material fact that zero is the only

reasonable royalty."  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir.

2014).  In its *Apple* decision, the Federal Circuit identified two situations where a zero royalty might be the only reasonable royalty.  First, under the hypothetical negotiation analysis, "a record could demonstrate that, at the time of infringement, the defendant considered the patent valueless and the patentee would have accepted no payment for the defendant's infringement."  *Id.*  Second, "in a case completely lacking any evidence on which to base a damages award, the record may well support a zero royalty award."  *Id.*

Here, the sales document is Trutek's only piece of damages evidence. While this case does not involve a complete lack of damages evidence, a hypothetical negotiation analysis would inevitably be speculative.  Similar to lost profits, the sales document only goes to the damages base of BlueWillow's sales, not a royalty rate to be applied to BlueWillow's sales.  As to the *Georgia-Pacific* factors, the information in the sales document would only inform a hypothetical negotiation analysis to the extent supporting damages evidence demonstrated an established or otherwise nonspeculative baseline royalty rate.  Contrary to Trutek's argument, at least as to a royalty rate, speculation and conjecture would be the only factors in a reasonable royalty calculation.  Accordingly, the court finds that Trutek cannot meet its burden of proving the amount of a reasonable royalty.

The court notes that Trutek cites Section 284 to argue that it is not only "entitled to a reasonable royalty," but also "entitled to damages." (ECF No. 43, PageID.794-95). As to damages, Trutek's reliance on Section 284 is misplaced. Trutek's argument confuses the fact of damages, which is established by the fact of infringement, with the amount of damages, which the patentee has the burden of proving. *Lindemann Maschinenfabrik*, 895 F.2d at 1406. Depending on the record, a "reasonable" royalty does not necessarily mean a "non-zero" royalty. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020). "The statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *Id.* (rejecting argument that Section 284 "require[s] an award of damages greater than zero in all cases where the jury finds infringement"); *see also Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981) ("The statute requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute.").

Assuming, *arguendo*, that Trutek adequately asserted a claim for damages, the only piece of damages evidence produced by either party, the sales document demonstrating BlueWillow's sales of the accused NanoBio product, does not

support a nonspeculative damages award.  As to either the amount of lost profits

or the amount of a reasonable royalty, Trutek cannot meet its burden of proving

the amount of damages.  Accordingly, the court will **GRANT** BlueWillow's motion

for summary judgment of no damages.

      C.     <u>Pre-Suit Damages</u>

      In addition to moving for summary judgment of no damages, BlueWillow

moves for summary judgment of no pre-suit damages.  (ECF No. 59, PageID.1692).

To recover damages for infringement occurring prior to filing suit, Section 287(a)

of the Patent Act requires the patentee to notify the infringer of infringement.  35

U.S.C. § 287(a).  In the absence of actual notice to the infringer, a patentee who

makes, offers for sale, or sells articles covered by the patent must provide

constructive notice to the public by marking the patented articles with the patent

number.  *Id.*  Section 287(a) extends to persons making, offering for sale, or selling

patented articles "for or under" the patentee.  *Id.*  The marking requirement

therefore applies to both the patentee and the patentee's licensees.  *Maxwell v. J.

Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (citing 35 U.S.C. § 287(a)).  The

Federal Circuit has construed Section 287(a) to entitle the patentee to damages

from the time it began marking its products in compliance with the marking

requirement.  *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir.

1993).  Section 287(a) requires that "once marking has begun, it must be

substantially consistent and continuous in order for the party to avail itself of the

constructive notice provisions of the statute."  *Id.*

Compliance with the marking requirement is a question of fact.  *Maxwell*,

86 F.3d at 1111.  The Federal Circuit has held that Section 287(a) is a limitation on

damages, not an affirmative defense.  *Arctic Cat Inc. v. Bombardier Recreational*

*Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  Accordingly, the patentee has

the burden of pleading and proving compliance with the marking requirement.

*Id.*  The infringer has the initial burden of production to put the patentee on

notice of specific unmarked articles it believes are covered by the patent.  *Id.* at

1368.  Once the infringer meets its burden of production, the patentee has the

burden of proving that the unmarked articles do not practice the patented

invention.  *Id.*

Trutek alleges that it both sells the patented NasalGuard products and

licenses the '802 Patent.  (ECF No. 1, PageID.3).  As to unmarked articles,

BlueWillow submits a declaration stating that in January 2023, two different

products purchased from Matrixx, a Trutek licensee from a separate patent

infringement case that settled in November 2020, were marked with other patent

numbers but not the '802 Patent number.  (ECF No. 59-3, PageID.1888,

Declaration of Liane M. Peterson).

Trutek does not dispute BlueWillow's representation that Trutek's only

marking evidence is testimony from its technical expert on infringement, Edward

A. Lemmo, Ph.D., and its technical expert on validity, Amirali Y. Haidri, Esq.

Lemmo testifies that: "The patent number of the '802 Patent is clearly marked for

every unit sold in the United States."  (ECF No. 59-4, PageID.2040-41, Plaintiff's

Opening Technical Report).  Similarly, Haidri testifies that: "All products sold in

the United States had the '802 Patent number printed on the packaging."  (ECF

No. 59-5, PageID.2184, Plaintiff's Expert Report of Amirali Y. Haidri, Esq.).  Trutek

does not dispute BlueWillow's argument that the expert testimony is conclusory

and lacks factual support.  When asked for the basis for his testimony in his

deposition, Lemmo explained that he purchased a patented NasalGuard product

in 2020 and saw that it was marked with the '802 Patent number, but

acknowledged that he does not know whether the patented NasalGuard products

were marked with the '802 Patent number prior to his purchase.  *Id.*,

PageID.2311.

Maintaining that it has met its burden of production, BlueWillow argues

that summary judgment of no pre-suit damages is appropriate because Trutek has

not met its burden of proving compliance with the marking requirement.  (ECF

No. 59, PageID.1692).  Specifically, BlueWillow points out that the expert

testimony only goes to Trutek marking a single patented NasalGuard product in

2020, not Trutek consistently marking all patented NasalGuard products.  *Id.*,

PageID.1694.  Moreover, BlueWillow points out that the expert testimony only

goes to Trutek marking the patented NasalGuard products, not Trutek licensees

marking other patented products.  *Id.* at PageID.1692.  BlueWillow argues that

Trutek has not met its burden of proving compliance with the marking

requirement because the expert testimony does not demonstrate that Trutek and

Trutek licensees consistently marked substantially all patented products with the

'802 Patent number.  *Id.*, PageID.1694.

Without factual support, Trutek maintains it has marked "every" patented

NasalGuard product with the '802 Patent number since 2013.  (ECF No. 76,

PageID.3181).  Similar to the amount of damages, to prove compliance with the

marking requirement at trial, Trutek seeks to present "fact testimony" from a

"Trutek employee-representative."  *Id.*, PageID.3182.  Tacitly acknowledging that

the expert testimony does not demonstrate this point, Trutek maintains that

marking on "every" patented NasalGuard product can "only be shown" through

the purported testimony from Trutek witnesses. *Id.* Trutek does not address whether Trutek licensees have marked other patented products.

As discussed above, the court's exclusion of Trutek's damages-related theories or evidence focuses on undisclosed damages evidence. However, the above exclusion analysis under Rule 37(c)(1) applies equally to undisclosed marking evidence. Once again, that which Trutek seeks to present and that which Trutek has not disclosed pursuant to its discovery obligations are one and the same. During fact discovery, in connection with discovery on damages, BlueWillow directed interrogatories to Trutek's compliance with the marking requirement. (*See* ECF No. 39-1, PageID.696-97). For both Trutek and Trutek licensees, BlueWillow's Interrogatory Nos. 12 and 13 required Trutek to disclose information about the timeframes when all patented products were marked with the '802 Patent number. *Id.* In response, as with the requested licensing terms, Trutek asserted confidences between Trutek and Trutek licensees and informed BlueWillow that it would produce the requested marking information upon the entry of a protective order. (*Id.*, PageID.696-98). By definition, information about the timeframes when all patented products were marked with the '802 Patent number concerns matters of public notice. To the extent Trutek could not disclose other items without revealing the asserted confidences, it was

unreasonable for Trutek to not disclose the requested marking information and supporting marking evidence in its own possession.

And in any event, independent of the exclusion of undisclosed marking evidence, the purported testimony from Trutek witnesses does not preclude summary judgment.  For compliance with the marking requirement, Trutek has the burden of proving that Trutek and Trutek licensees consistently marked substantially all patented products with the '802 Patent number.  For two reasons, the purported testimony does not demonstrate compliance with the marking requirement or create a genuine dispute on this point.  First, the purported testimony is neither evidence nor of record.  *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party to support factual assertions by "citing to particular parts of materials in the record").  Second, as with the expert testimony, the purported testimony only goes to Trutek marking the patented NasalGuard products.  As noted above, Trutek does not address whether Trutek licensees have marked other patented products.

The only marking evidence of record, the expert testimony, does not demonstrate that Trutek and Trutek licensees consistently marked substantially all patented products with the '802 Patent number or create a genuine dispute on this point.  Because BlueWillow has met its burden of "pointing out" the "absence

of evidence" for Trutek to meet its burden of proving compliance with the

marking requirement, *Celotex*, 477 U.S. at 325, the court finds that BlueWillow is

entitled to summary judgment of no pre-suit damages.  Accordingly, the court will

**GRANT** BlueWillow's motion for summary judgment of no pre-suit damages.

      D.    Other Remedies

In addition to moving for summary judgment of no damages and summary

judgment of no pre-suit damages, BlueWillow moves for summary judgment that

Trutek is not entitled to injunctive relief and summary judgment that Trutek is not

entitled to a jury trial.  (*See* ECF No. 59, PageID.1695-98).  The court notes that

Trutek does not respond to BlueWillow's arguments.  (*See* ECF No. 76).  However,

the court is mindful that BlueWillow has raised many issues in its motion for

summary judgment, including not only the above damages issues, but also

infringement and validity issues.  *See supra* n.1.  Having resolved the above

damages issues in BlueWillow's favor, the court anticipates that the injunctive

relief and jury trial issues might be moot, and if not, that Trutek might wish to

explain its position on these other issues.  As well, to the extent resolution of the

injunctive relief and jury trial issues is necessary following this opinion and order,

the court desires to have the benefit of Trutek's position.

Accordingly, the court finds that resolution of the injunctive relief and jury trial issues requires further briefing.  With respect to these other remedies, the court **ORDERS** the parties to proceed as follows.  Within fourteen (14) days of this opinion and order, the parties shall meet and confer to discuss whether the injunctive relief and jury trial issues are moot in light of this opinion and order.  Within seven (7) days of the meet and confer, the parties shall contact the court's Special Master Christopher G. Darrow and inform the Special Master of the result of the meet and confer.  Under the supervision of the Special Master, the parties shall prepare and file a joint status report on the injunctive relief and jury trial issues, including, to the extent necessary, a proposed schedule for further briefing.

## VI.    CONCLUSION

For the reasons stated in this opinion and order, the court: (1) **GRANTS IN PART** and **DENIES IN PART** BlueWillow's motion *in limine*; and (2) **GRANTS IN PART** BlueWillow's motion for summary judgment.

**SO ORDERED**.

Date: September 19, 2023            s/ F. Kay Behm
                                   F. Kay Behm
                                   United States District Judge